# McDermott
# Will&Emery

Boston  Brussels  Chicago  Düsseldorf  Houston  London  Los Angeles  Miami  Milan
Munich  New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

www.mwe.com
+1 202 756 8000

June 13, 2011

**BY ELECTRONIC FILING**

The Honorable Joseph C. Spero
United States District Court
   for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

**ORDER**

Re:    *Transperfect Global, Inc., et al. v. Motionpoint Corporation*, Case No. CV-10-02590 CW
       Joint Letter to the Court Regarding the Parties' Second In-Person Meet and Confer

Dear Judge Spero:

On Tuesday, June 7, 2011, lead trial counsel for MotionPoint, Joel M. Freed, attended an in-person meet-and-confer with new lead trial counsel for TransPerfect, Doug Lumish, about a discovery dispute over the proper interpretation of the Order of this Court regarding review of native source code. This joint letter is the result of that meeting.

## I.    MATTERS THAT REMAIN IN DISPUTE

The sole issue in dispute is the software allowed on the stand-alone source code review computer for use in connection with MotionPoint's extracting, reviewing, and analyzing the source code in native form.

## II.    DETAILED SUMMARY OF EACH PARTY'S FINAL SUBSTANTIVE POSITION

### A.    MotionPoint

#### 1.    Introduction

MotionPoint originally requested the native version of TransPerfect's source code on February 9, 2011. TransPerfect responded with vacillation. TransPerfect stated that they would

consider production, and at one point even agreed to produce the native code. TransPerfect then reneged on its agreement and completely refused to the native production. MotionPoint was forced to bring a motion, and TransPerfect was required to produce its code in native format, but by then TransPerfect had successfully delayed the commencement of MotionPoint's review of the native code for many months. The present discovery dispute arises from TransPerfect's further imposition of delay by now refusing to install and allow use by MotionPoint's expert of commercial software supplied by him for his use in extracting, reviewing, and analyzing the source code in native form.

### 2.     Background

On May 6, 2011, this Court adopted MotionPoint's position of entitlement to access to source code in native form that can be extracted, reviewed, and analyzed by its expert. The Court Ordered the production of the native source code on the conditions as set forth on pages 7-8 of the Joint Letter resulting from the first in person meet and confer, which Order was further implemented as an Addendum to the Protective Order. Pursuant to the Order and the Addendum, MotionPoint's technical expert provided TransPerfect's counsel with software. TransPerfect then installed that software on the stand-alone source code review computer in the office of TransPerfect's counsel. This software included Understand, as well as other standard commercial software that MotionPoint's expert supplied on a disc for installation and his use in extracting, reviewing, and analyzing the source code in native form.

On May 26, 2011, a little over a week after MotionPoint's expert began his review—and created work product results from that review as permitted by the governing Orders—TransPerfect sent a letter refusing to permit further use of that software and further access to the stand-alone computer, stating that use of any software other than Understand was a violation of the Court's Order and the Addendum. MotionPoint's counsel responded, stating that

TransPerfect was entitled to continue to inspect the commercial software provided by MotionPoint's expert.  MotionPoint's counsel further noted that the Order and Addendum not only permits extraction and review, but also analysis, and do not contain any requirement that the commercial software he is using be explained.  TransPerfect, however, continued to refuse access to the source code computer at Orrick's office.

At that point, MotionPoint proceeded under the Standing Order regarding discovery disputes, demanding an in person meet and confer on this issue.  Shortly thereafter there was a change in lead counsel acting on behalf of TransPerfect, with Orrick being replaced by Kasowitz, Benson, Torres & Friedman LLP.  The in person meet and confer took place on June 7, 2011.  At the meeting, TransPerfect's new lead counsel continued to maintain TransPerfect's position that no software other than Understand could be used by MotionPoint's expert, and offered as a "compromise" position the availability of inspection at Kasowitz's San Francisco office of a new stand-alone computer with only Understand installed, and without the "work product" folder from the stand-alone computer at Orrick's Menlo Park office, which contains working files from MotionPoint's expert's prior native source code review to date.  The stated concern offered by TransPerfect's new lead counsel was that TransPerfect did not know how MotionPoint's expert intended to use the commercially available software he provided and therefore concluded it might be used, even if unintentionally, to alter the source code on the stand-alone computer.

Counsel for MotionPoint explained that at this point the expert has not been designated as a testifying expert and as such his use of the software to extract, review, and analyze the source code is currently protectable work product (not to mention that it would take a deposition to fully explain in detail how one with his technical skill would extract, review, and analyze the native source code).  Furthermore, upon consultation with its expert, MotionPoint's counsel learned and

informed TransPerfect's counsel that any feared change in the source code could be effectively monitored and detected by use of a well-known technique called "checksum."

### 3.      There is No Risk of Prejudicial Code Alteration

TransPerfect is mistakenly concerned that the code can be tampered with, albeit unintentionally, by additional software over and above Understand.  First of all, any software, including Understand, could potentially alter the code.  The software requested by MotionPoint's expert does not materially increase the potential risk of accidental changes to the code. Moreover, there is no legitimate risk that MotionPoint's expert would intentionally attempt to alter the code.  And with regard to potential accidental alteration, as the creator of the source code TransPerfect knows full well what capabilities the OneLink software has or does not have, and has complete access to the original code which it could use to show any alteration. Furthermore, by use of the well-known checksum technique, TransPerfect can effectively monitor even the possibility of unintended changes the code.

The Court's Order and Addendum make it plain that MotionPoint is entitled, notwithstanding TransPerfect's past (and now ongoing) intransigence, to extract, review, and analyze the source code in native form.  The commercial source code review software supplied by MotionPoint's expert is reasonably appropriate for him to do that.  For instance, at least significant portions of the OneLink source code was originally created in a Linux operating environment.  MotionPoint's expert will use software to simulate it, and in doing so will also determine what parts of the source code are *actually* invoked during use.  Also, because TransPerfect has supplied multiple different iterations of the code, the commercial software provided by MotionPoint's expert will be used to determine which files go with which version.

In any event, to allay any fears of even accidental alteration of the source code, MotionPoint's proposed compromise includes reliance on the checksum technique as a precaution.  A checksum, which is a unique identifier based on the content of the data, can be created initially from the original code as well as the source code files every time they are printed from the source code computer.  The checksum from the printed source code can then be compared to the master checksum to confirm that no alterations have been made.

### 4.      TransPerfect's Proposed Compromise is Insufficient

During the meet and confer TransPerfect's new counsel continued to incorrectly maintain that any use of software other than Understand was prohibited, but offered to produce the executables (*.EXE files) of the OneLink software.  However, those executables actually *hide* the information that would reveal what portions of the code are invoked during execution, *i.e.*, the executables will not show the relationship between the OneLink operations and the source code that runs them.  Thus, TransPerfect's compromise would prevent MotionPoint from obtaining the very information to which it is entitled and which its original motion was designed to subject to scrutiny.

### B.      TransPerfect

Having won an inch, MotionPoint now seeks to take a mile.  The parties' prior dispute was decided by the Court in MotionPoint's favor, and resulted in a stipulated Addendum to the Protective Order submitted by both sides.  That Addendum explicitly permits only the native source code, and only the software necessary for the source code to be "extracted, reviewed, and analyzed," to be loaded onto the source code computer.  D.I. 63 p. 1.  As explained below, the record establishes that the parties understood this to mean that a single program such as LINT or Understand would be permitted on the source code computer.  Indeed, MotionPoint's motion

papers treated LINT or Understand as synonyms of the requested "extract, review, and analyze" functionality.  But, despite this agreement, MotionPoint now seeks to add eight other programs, including editors, compilers, and a "virtual machine," that could be used to change and recompile TransPerfect's code and to perform myriad other operations with no record of what was done.[1]  This goes well beyond the normal approach to source code production and imposes needless risk on TransPerfect.  Accordingly, TransPerfect respectfully asks the Court to deny MotionPoint's request to add software to the computer beyond Understand.

> **1.     The Parties Agreed And The Court Ruled That Understand, LINT, Or a Similar Program Could Be Installed; Not Nine Programs And Not Any "Commercially Available" Software**

Over and again during the prior dispute over the format of the code, MotionPoint made clear that it was seeking only the source code in its native format plus either LINT or Understand as a tool to extract, review and analyze that code.  In its April 1, 2011 motion to compel, the relief MotionPoint requested expressly asked only for these two things:  "MotionPoint thus respectfully requests the Court to order TransPerfect to produce its source code in its native format as a source code repository, that can be extracted, reviewed, and analyzed by standard commercial source code review software, such as LINT or Understand."  D.I. 53 p. 7; *see also id.* at 2.  In this way, MotionPoint explicitly tied the desired functionality (extracting, reviewing, and analyzing) to either LINT or Understand alone, and said nothing about adding editors, compilers,

---

[1] The programs MotionPoint provided for installation on the source code computer include:  (1) Understand; (2) five versions of a program called Eclipse (which allows for editing of source code files); (3) Acrobat Professional 10 (used to view and create PDF files); (4) Cygwin (a Linux command line application that allows Linux scripts and applications to be run within Windows); (5) Java Runtime Environment (used by Eclipse); (6)  Komodo Edit (an open source tool for editing source code files); (7) Merge 2010 (used to compare directories); (8) TreeSize Professional (creates graphs and reports on drive space utilization); and (9) VirtualBox (allows for another operating system to be run within Windows).

virtual machines, or any of the other programs MotionPoint now seeks to add.

Subsequently, in the April 29, 2011 Joint Letter to the Court, MotionPoint again referenced only LINT and Understand and framed "the sole issue in dispute" as "whether TransPerfect will produce a 'complete extract' of its OneLink source code repository that can be <u>extracted, reviewed, and analyzed</u> by standard commercial source code review software, such as <u>LINT or Understand</u>."  D.I. 58 p. 3.  MotionPoint referenced LINT or Understand in this same way two more times in that Joint Letter.  *See id.* at 1-2 and 7.

During the hearing on this dispute, the Court held that it would adopt MotionPoint's compromise.  D.I. 61 p. 7.  Accordingly, the parties negotiated an Addendum to the Stipulated Protective Order which stated as follows:

> The parties shall produce their respective source code on the conditions set forth below,
>
> 1. … a copy of the source code for MotionPoint's product (that has already been produced) that can be extracted, reviewed and analyzed by standard commercial source code review software, such as LINT or Understand[.]

D.I. 63 at 1.  Here again, <u>nothing</u> was said about any of the other programs MotionPoint now seeks to add.  The Court entered the proposed stipulation without amendment.  D.I. 63.

### 2. The Additional Eight Programs MotionPoint Seeks To Add Are Not Required For Extracting, Reviewing And Analyzing TransPerfect's Code and Impose Significant And Needless Risk To TransPerfect

TransPerfect's code is presently available for inspection on a computer that also has Understand installed.  In response to TransPerfect's repeated requests before and during the meet-and-confer, MotionPoint has offered no explanation why Understand is not sufficient for extracting, reviewing and analyzing the source code as required by the Addendum, and why it believes it needs eight additional programs.  Nor does it make any attempt in this Letter to explain these points or establish the need for eight additional programs.  Indeed, MotionPoint has not even stated in this Letter that Understand does not perform these functions.  Of course, it

does, as is illustrated by MotionPoint's representations to the Court during the prior motion.

Moreover, the specific programs MotionPoint seeks to add are problematic on their face. The Eclipse, Java Runtime Environment, and Komodo edit programs are designed to permit programmers to edit source code.  There is no reason for MotionPoint to change TransPerfect's code in this case, and it has offered no explanation for why it purports to need this functionality. VirtualBox and Cygwin both relate to creating a "virtual machine" on the source code computer, which is akin to adding an entirely new operating system on the machine and all of the many functions that attend a new operating system.

Further still, the use of an uncontrolled virtual machine completely bypasses the Protective Order which includes provisions for making TransPerfect's counsel aware of what programs are being installed and used on the source code machine.  Virtual machines could include nearly any software on them, commercial or non-commercial, and TransPerfect would have no idea what programs were being used or what was being done to its source code with such programs.  Such software could include web servers, databases, and a host of other programs that could be used to copy or transmit TransPerfect's code, again with no way for TransPerfect to know it happened.  This violates both the letter and the spirit of the Protective Order and Addendum which are designed to provide MotionPoint with the discovery it actually needs while also protecting TransPerfect's source code from needless risk of disclosure or copying.  Similarly, MotionPoint has offered no explanation as to why it wants Acrobat on the source code computer, and making .pdf copies of TransPerfect's source code is not permitted by the Protective Order nor reasonably necessary in this case.  And MotionPoint has offered no explanation for why it purports to need the Merge and TreeSize Professional programs either.

Additionally, MotionPoint argues that TransPerfect can merely use a checksum technique

to ensure after-the-fact that its source code has not been altered.  This is unsatisfactory for at least two reasons.  First, running a checksum after MotionPoint's experts have completed their work does nothing to ensure that the code was not changed at key points in the process—it ensures, at most, that the code was returned to its original state.  And second, if MotionPoint does not intend to change TransPerfect's code, then why does it want editors and compilers that are designed to do just that?  Absent a legitimate explanation for this, TransPerfect should not be compelled to subject its code to needless risk.

Finally, MotionPoint's assertion that "the commercial software provided by MotionPoint's expert will be used to determine which files go with which version" lacks merit.  TransPerfect has supplied its source code files in directories named by the date of the version of the code, such that each iteration of the code is already clearly identified.  Thus, it is self-evident which files goes with which version based on the directory structure.

### 3. MotionPoint's Concern That Executables "Hide" Information is Meritless

TransPerfect has agreed to provide representative examples of executable files of its source code.  MotionPoint objects that such executables "will not show the relationship between the OneLink operations and the source code that runs them."  This is incorrect.  TransPerfect would provide executables that would match the source code versions that have been produced.  As such, the executables would represent how the source code functions.

## III.  DESCRIPTION OF EACH PARTY'S PROPOSED COMPROMISE

### A.  MotionPoint

MotionPoint believes that TransPerfect is obligated to install commercially available software provided by MotionPoint's expert and to transfer the already existing "work product" folder from the source code review computer at Orrick's Menlo Park office to the new source

code review computer at Kasowitz's San Francisco office.  In addition, as a compromise to allay any fears about changes to the source code during review, MotionPoint proposes the following:

1.      TransPerfect shall create master checksum(s) on the native source code at the outset of MotionPoint's expert's review at Kasowitz's San Francisco office.

2.      MotionPoint's expert shall create a checksum from every source code file printed out by the source code computer during his review.

3.      Either party may compare the checksums created associated with printed code with the master checksum(s) created by TransPerfect.

4.      In addition to providing one or more CDs and / or DVDs for installation on the standalone computer, an extra copy of the CDs or DVDs will be provided to TransPerfect to do with as it pleases, provided they are not used to access the work of MotionPoint's expert.

5.      If MotionPoint's expert is later designated as a testifying expert, TransPerfect may then use the software to access the work of MotionPoint's expert with the duplicate CDs or DVDs containing the commercial software used by him in extracting, reviewing, and analyzing the source code in native form.

      **B.      <u>TransPerfect</u>**

TransPerfect proposes the following compromise:

1.      The source code computer, with Understand loaded on it, is already available for inspection commensurate with the process set out in the Protective Order and Addendum.

2.      If MotionPoint agrees that Merge and TreeSize Professional will be used merely to compare directories and measure disk space, they may be loaded onto the code computer.

3.      If requested, TransPerfect will provide for inspection a machine running representative samples of executable versions of the produced source code.

Sincerely,

McDERMOTT WILL & EMERY LLP                    KASOWITZ, BENSON, TORRES &
                                              FRIEDMAN LLP


/s/ Alexander Ott                             /s/ L. Okey Onyejekwe Jr.
ANTHONY DE ALCUAZ (SBN: 65599)                DOUGLAS E. LUMISH (Bar No. 183863)
PHILIP OU (SBN: 259896)                       JEFFREY G. HOMRIG (Bar No. 215890)
JOEL M. FREED                                 JOSEPH H. LEE (Bar No. 248046)
ALEXANDER OTT (admitted *pro hac vice*)       L. OKEY ONYEJEKWE JR. (Bar No. 250354)

*Attorneys for Defendant/Counterclaim*        *Attorneys for Plaintiffs/Counterclaim Defendants*
*Plaintiff MotionPoint Corporation*           *TransPerfect Global, Inc.; TransPerfect*
                                              *Translations International, Inc.; and*
                                              *Translations.com, Inc.*

Dated: June 13, 2011


IT IS HEREBY ORDERED THAT the Court adopts Motionpoint's compromise
listed on page 9-10 of the Joint Letter.

Dated:  June 14, 2011



- 11 -

I hereby attest pursuant to General Order 45.X.B. that concurrence in the electronic filing of this document has been obtained from the other signatories.

Dated: June 13, 2011                              /s/ Alexander Ott_____
                                                        [Name of Filer]