DOUGLAS E. LUMISH (Bar No. 183863)
dlumish@kasowitz.com
JEFFREY G. HOMRIG (Bar No. 215890)
jhomrig@kasowitz.com
JOSEPH H. LEE (Bar No. 248046)
jlee@kasowitz.com
L. OKEY ONYEJEKWE JR. (Bar No. 250354)
oonyejekwe@kasowitz.com
JOSEPH B. SHEAR (Bar No. 262222)
jshear@kasowitz.com
Kasowitz, Benson, Torres & Friedman LLP
101 California Street, Suite 2300
San Francisco, California 94111
Telephone (415) 421-6140
Facsimile (415) 398-5030

STEVEN D. CHIN (*pro hac vice*)
schin@kaoswitz.com
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Telephone (212) 506-1907
Facsimile (212) 500-3407

Attorneys for Plaintiffs
TransPerfect Global, Inc.;
TransPerfect Translations International, Inc.; and
Translations.com, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TRANSPERFECT GLOBAL, INC., TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC., AND TRANSLATIONS.COM, INC.,<br>Plaintiffs/Counterclaim Defendants,<br>v.<br>MOTIONPOINT CORPORATION,<br>Defendant/Counterclaim Plaintiffs. | Case No. CV 10-02590 CW<br><br>**TRANSPERFECT'S MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**<br><br>**Date: October 27, 2011**<br>**Time: 2:00 P.M.**<br>**Dept.: Courtroom 2**<br>**Judge: Honorable Claudia Wilken** |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 27, at 2 p.m., or as soon thereafter as counsel may be heard, before the Honorable Claudia Wilken in Courtroom 2 on the 4th Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, plaintiff and counterclaim defendants TransPerfect Global, Inc., TransPerfect Translations International, Inc., and Translations.com, Inc. (collectively "TransPerfect") will and hereby do move the Court, pursuant to Patent Local Rule 3-6, for an order granting TransPerfect leave to amend its January 14, 2011 invalidity contentions. Good cause exists for leave to amend because TransPerfect undertook a diligent prior art search before serving its invalidity contentions, TransPerfect acted diligently in amending its preliminary invalidity contentions, there is no prejudice to MotionPoint Corporation ("MotionPoint"), and the public interest in addressing patent invalidity challenges on the merits justifies leave to amend.

TransPerfect's Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jacob A. Snow, the Declaration of L. Okey Onyejekwe Jr., the Declaration of Douglas E. Lumish, and the proposed order submitted herewith, all papers and pleadings on file in this action, such other evidence and argument as may be presented at or before the hearing on this motion, and all matters of which the Court may take judicial notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

TransPerfect respectfully requests that the Court grant it leave to amend its invalidity contentions in the form attached as Exhibit 1 to the Declaration of L. Okey Onyejekwe Jr. ("Onyejekwe Decl."), to reflect additional prior art TransPerfect discovered between March and September of 2011 and additional bases for section 112 invalidity derived from MotionPoint's March 2011 proposed claim constructions. Attached as Exhibit 2 to the Onyejekwe Decl. is a document showing the changes compared with TransPerfect's preliminary invalidity contentions, served in this matter on January 14, 2011.

## I. INTRODUCTION

TransPerfect respectfully seeks the Court's leave to make modest amendments to its preliminary invalidity contentions. These amendments are intended for two purposes: 1) to include prior art materials discovered *after* the preliminary contentions were served, and 2) to address claim construction positions disclosed by MotionPoint *after* the preliminary contentions were served. Predictably, MotionPoint opposes these amendments, insisting that the prior art materials should have been discovered earlier and that the amendments are prejudicial. Both arguments fail on this record.

As recognized by the structure of the Patent Local Rules, MotionPoint's infringement positions set the playing field for TransPerfect's invalidity contentions—they identify the set of asserted claims and shed light on what MotionPoint believes falls within the scope of the asserted claims. But while the parameters of and deadline for serving preliminary invalidity contentions assume some level of reasonability on the part of the patentee, MotionPoint exerted no self-control in framing its contentions in this case. Indeed, MotionPoint's four patents in this case contain 142 claims and its infringement contentions assert *each and every one* of those 142 claims. To prepare its responsive preliminary invalidity contentions, TransPerfect retained a professional prior art search firm and, in addition, devoted hundreds of hours to locating potential prior art and analyzing the hundreds of references that were found for each of the 142 asserted claims. TransPerfect ultimately included in its contentions 86 references that bear on the invalidity of the patents-in-suit, but did not have the opportunity to follow up on every possible prior art lead within the timeframe for serving its preliminary contentions. This is natural in any patent case—hence, the preliminary nature of the P.L.R. 3-3 contentions—but was compounded here by the fact that TransPerfect's hundreds of hours of work were spread across 142 asserted claims, rather than across a more reasonable number. Indeed, the sheer volume of the asserted claims requiring analysis made it almost certain that TransPerfect's original disclosure would require supplementation as discovery proceeded. TransPerfect indicated as much in its preliminary contentions and continued its search for relevant prior art.

TransPerfect's continued search yielded several prior art commercial products—and

documents, publications, and patents related to them—that provide further proof that the claims of MotionPoint's patents are invalid. Moreover, when the parties exchanged claim construction positions in February, after preliminary contentions had been served, it became clear that MotionPoint seeks to construe a number of claim terms in ways that were not apparent from its infringement contentions and would broaden its asserted claims to cover subject matter that is neither described nor enabled in the MotionPoint patents' specifications.

TransPerfect disclosed these prior art products (including related documents) and its additional enablement and written description arguments promptly upon their discovery, and even provided MotionPoint with a proposed amendment in May 2011 that encompassed the amendments known at that time. Furthermore, there is more than ample time under the current case schedule for any additional discovery warranted by these amendments—fact discovery does not close until December 14, 2011, expert discovery does not commence until February 2012 and opening claim construction briefs are not due until April 2012. Accordingly, MotionPoint has, and has already had, ample time to analyze the amended contentions before the close of fact discovery, and to address these modest amendments during expert discovery and claim construction. Finally, the overwhelming public interest in having invalidity challenges decided on the merits justifies leave to amend to include the newly-discovered, relevant prior art. For these reasons, TransPerfect respectfully asks the Court to grant TransPerfect leave to amend its invalidity contentions.

## II. <u>STATEMENT OF FACTS</u>

On July 29, 2010, MotionPoint served its Answer and Counterclaims alleging that TransPerfect infringed U.S. Patent Nos. 7,580,960; 7,584,216; 7,627,479; and 7,627,817. D.I. 10. On November 30, 2010, MotionPoint served its infringement contentions asserting each of its 142 claims against TransPerfect. (Onyejekwe Decl., Exh. 3.)

### A. <u>TransPerfect's Preparation of Preliminary Invalidity Contentions</u>

TransPerfect's prior art search regarding these 142 asserted claims encompassed a worldwide search for patents and publications and an industry-wide search for evidence of internet-based translation and localization products, services, and other practices that predated the

patents-in-suit. (Declaration of Jacob Snow ("Snow Decl.") at ¶ 2.) TransPerfect retained a professional prior art search firm, Landon IP, and conducted additional prior art searching through its outside counsel. (Snow Decl. at ¶ 3.) During this comprehensive search, TransPerfect identified approximately 400 prior-art references that potentially invalidated MotionPoint's patents. (Snow Decl. at ¶ 4.) In turn, some of these references cite to other potentially invalidating practices, products and services, which required additional time for TransPerfect to locate and analyze for purposes of invalidity. The *2000 Compendium of Translations Software*, for example, cites numerous potentially invalidating products and services, which TransPerfect investigated. (Snow Decl. at ¶ 5; *see also* Snow Decl. Exh. 1.)

Some of the prior art (e.g., patents and publications) consists of self-contained references that could simply be analyzed and charted. But information about the features and functions of other prior art, such as commercial products, was not so readily obtained and required more intensive investigation. For example, TransPerfect was able to locate sufficient documentation to determine that WizArt, WorldLingo, and SYSTRANLinks are highly relevant to the invalidity of the MotionPoint patents and include them in its preliminary contentions. (Snow Decl. at ¶ 6, Exh. 2.) But, even with these products, TransPerfect faced difficulty locating information describing their features and function and so was not able to gather all available materials concerning these prior art commercial products. (Snow Decl. at ¶ 7.) And information about other systems now known to TransPerfect was not discovered until after the preliminary contentions were served. As one example, the WebPlexer product was mentioned in several prior art patents included in TransPerfect's preliminary contentions, but TransPerfect was not able to obtain documents describing the features and functionality of that commercial product before preliminary contentions were served, despite its efforts to do so. (Snow Decl. at ¶ 7.)

TransPerfect analyzed the more than 400 prior art references discovered during its search and, on January 14, 2011, served preliminary invalidity contentions citing 86 prior art references—including 70 patents, 11 publications, and 5 documents evidencing internet-based translation and localization products. (Snow Decl. at ¶ 8.) With those contentions, TransPerfect also served 67 separate claim charts detailing with specific citations where each limitation of the

asserted patents appeared in the prior-art reference. TransPerfect also produced the prior art references that it had incorporated into its analysis. (Snow Decl. at ¶ 8.)

### B. TransPerfect's Continued Searching Yielded Additional Invalidating Prior Art (January-May 2011)

Given the limited time frame TransPerfect had to conduct its prior art search analysis, and the 142 claims that MotionPoint forced it to cover, TransPerfect anticipated that some prior art, especially prior art related to commercial products, remained to be discovered. Accordingly, TransPerfect continued its prior art search after serving its preliminary contentions. (Snow Decl. at ¶ 9.) Between January and May of 2011, TransPerfect discovered additional material related to the WizArt, WorldLingo, and SYSTRANLinks products already cited in its invalidity contentions. TransPerfect also discovered material relating to the proxy-based translation and localization products and technology developed by NetMask Internet Technologies, TheOne Technology Group ("TheOne"), LogoVista, WebPlexer, and Websphere. (Snow Decl. at ¶ 10.)

During this time period, the parties also exchanged initial claim construction positions. Although MotionPoint took the position *before* preliminary invalidity contentions were served that it would not propose any terms for construction and that all terms should be afforded their plain and ordinary meanings, in its March 9, 2011 Preliminary Claim Construction Statement, MotionPoint provided specific constructions that it labeled "ordinary meanings" for numerous claim terms. (Snow Decl. at ¶ 11; Snow Decl., Exh. 3.) Because MotionPoint's proposed constructions for these terms are inconsistent with the written descriptions set forth in its patents-in-suit, and because the claims would not be enabled if these terms were so defined, MotionPoint's claim construction disclosure gave rise to new bases for invalidity under 35 U.S.C. § 112, ¶1 that could not have been asserted in TransPerfect's preliminary contentions.

### C. TransPerfect Promptly Disclosed These New Invalidity Bases To MotionPoint

On May 10, 2011, TransPerfect served its proposed amendments on MotionPoint, along with a document showing the changes that the amendments would make to TransPerfect's

preliminary contentions. (Snow Decl. at ¶ 12, Exh. 5.) The updated contentions included the following categories of amendments:[1]

- **Additional Materials Regarding Previously Disclosed Prior Art:** TransPerfect's proposed amendments include citations to additional materials supporting its preliminary contentions concerning the WizArt, WorldLingo, and SYSTRANLinks products. TransPerfect located these additional materials between March and May 2011 and disclosed them promptly to MotionPoint. Moreover, these additional materials merely supplement the evidence cited in the preliminary disclosure without changing the analysis, and do not themselves require amendment. Though not required to do so, TransPerfect included them in its updated disclosure in an abundance of caution to ensure that MotionPoint had full knowledge of the information of which TransPerfect is now aware.

- **Newly Discovered Prior Art Anticipating The MotionPoint Patents**:

    - The NetMask.it! Product: NetMask.it! is a prior art proxy-based translation and localization product from NetMask (El-Mar) Internet Technologies, an Israeli company. (Snow Decl. at ¶ 13) In April 2011, TransPerfect discovered evidence showing that the NetMask.it! product incorporates the elements of MotionPoint's asserted claims. (Snow Decl. at ¶ 13.)

    - TheOne Technology Group's localization practices and PCT applications: TheOne sold and offered for sale proxy-based, internet-based, localization products and services beginning at least as early as 2000, but TransPerfect has experienced substantial difficulty locating evidence of TheOne's features and technical implementation. (Snow Decl. at ¶ 15.) In March 2011, TransPerfect learned that the TheOne had filed three PCT Applications (WO 01/80036-Sheng I, WO 01/93089-Sheng II, and WO 02/073464-Sheng III) each of which anticipates the MotionPoint asserted claims. (Snow Decl. at ¶ 14.) In April 2011, TransPerfect discovered a 2001 article indicating that TheOne offered proxy-based translation services before the critical date as well as other information regarding the TheOne's products which incorporate the same or similar technology as described in Sheng I, Sheng II, and Sheng III. (Snow Decl. at ¶ 15)

- **Newly Discovered Obviousness References:** TransPerfect's continued searching also yielded additional references that were listed as obviousness references in the May 2011 updated disclosure, including the WorldLingo, WebPlexer, and Kanevsky references (which are identified as anticipatory references in the August 2011 proposed amendment, for the reasons discussed below).

- **Additional §112¶1 Bases For Invalidity:** Based on the claim construction positions MotionPoint disclosed in March 2011, TransPerfect added enablement and written description contentions concerning the following additional claim terms:
    - "Crawling a/an website"
    - "Synchronized with the accessed content"
    - "Synchronizing content"
    - "Via a publicly available network path;" "via following publicly accessible links;" "via following publicly accessible links;" "via following publicly accessible links;" "publicly accessible path on the internet"

[1] The May 2011 updated contentions contained other proposed amendments that TransPerfect has elected not to pursue.

- "Web server"
- "Parsing"
- "Specification"

The parties met and conferred about TransPerfect's proposed amendments on May 16, 2011. (Snow Decl. at ¶ 16.) MotionPoint refused to stipulate to the amendments on the ground that the prior art relied upon in the amendments was "publicly available." (Snow Decl. at ¶ 16.) MotionPoint also claimed it would be prejudiced because it would now have to reevaluate all of the prior art "as a whole." (Snow Decl. at ¶ 16.) In an effort to narrow the issues before the Court, TransPerfect provided a detailed analysis of MotionPoint's objections and asked MotionPoint to reconsider its position. In response, MotionPoint sent a one-line letter (without responding to TransPerfect's analysis) refusing to stipulate to any of the proposed amendments. (Snow Decl. at ¶ 17, Exhs. 8 and 9.)

During an in-person Meet and Confer concerning the production of TransPerfect's source code, held on June 7, 2011, TransPerfect's counsel again asked MotionPoint to stipulate to its proposed amendments. Again, MotionPoint refused. (Declaration of Douglas E. Lumish ("Lumish Decl.") at ¶ 2.)

**D. <u>Case Developments And The Discovery Of Additional Prior Art Materials (May-September 2011)</u>**

In June 2011, TransPerfect retained new litigation counsel to manage this case going forward. In addition to familiarizing themselves generally with the invalidity issues in this case, including the 86 references disclosed with its original invalidity contentions as well as the 67 claim charts, TransPerfect's new litigation counsel analyzed the May 2011 proposed amendments. This was, in part, to address MotionPoint's objections, and more generally to confirm whether TransPerfect should proceed with all of the proposed amendments disclosed therein and whether additional investigation into prior art was warranted in an effort to ensure that the requested amendments were as comprehensive as possible, without being unnecessarily duplicative. (Onyejekwe Decl. ¶ 5.)

Following completion of this analysis, TransPerfect decided not to pursue several of the amendments identified in its May 2011 updated disclosure. (Onyejekwe Decl. at ¶ 6.)

TransPerfect also discovered additional prior art, as well as the additional materials discussed below, which further describe the prior art previously disclosed in TransPerfect's preliminary invalidity contentions. Indeed, TransPerfect has uncovered dozens of additional references that establish the invalidity of MotionPoint's patents-in-suit. (Onyejekwe Decl. at ¶ 7) TransPerfect does not seek to incorporate into its contentions all of these references, but, instead, seeks leave only to add a relatively small number of the more important ones. Specifically, in addition to the May 2011 amendments identified above, the September 2011 proposal includes the following amendments:

- **<u>Newly Discovered Prior Art</u>**:
  - <u>Additional NetMask.it! Materials</u>: In the course of investigating NetMask's commercial product, TransPerfect discovered in June 2011 additional materials relating to this prior art system, including U.S. Patent No. 6,601,108 ("Marmor"), which the NetMask product appears to embody, at least in part. (Onyejekwe Decl. at ¶ 8) The Marmor '108 patent provides an independent basis for invalidity of the MotionPoint patents.
  - <u>LogoVista Products and Patent Application</u>: In June 2011, after interviewing a former LogoVista developer, TransPerfect discovered information concerning LogoVista's Personal and Pro Multilingual Translation Systems—proxy-based, internet-based translation tools. (Onyejekwe Decl. at ¶ 9) Though the *2000 Compendium of Translations Software* mentions LogoVista, this was the first substantive description of the relevant features of the LogoVista product that TransPerfect was able to uncover. (Onyejekwe Decl., ¶ 9) In addition, TransPerfect used the information contained in these materials to discover, also in June 2011, a PCT application, of which LogoVista appears to be an embodiment ("PCT/US98/15219--Modular Language Translation System").
  - <u>Newly Discovered Obviousness References</u>**:** Between May and September, TransPerfect discovered several additional prior art references that further support the conclusion that the MotionPoint patents are invalid as obvious.
- **<u>Anticipation Prior Art That Was Previously Disclosed As Obviousness Art</u>**
  - <u>The WebPlexer Product</u>: WebPlexer is a translation and localization product that is an embodiment of at least some of the technology claimed in several prior art patents disclosed in TransPerfect's preliminary invalidity contentions (specifically, Lakritz I, II, and III). (Onyejekwe Decl. at ¶ 10.) But as of the time those contentions were served, TransPerfect had not been able to uncover documents describing the specific functionality of the WebPlexer product. TransPerfect obtained limited information regarding the WebPlexer product in March 2011 and disclosed WebPlexer as an obviousness reference in its May 2011 disclosure. (Snow Decl. at ¶ 20.) In August 2011, through the production of documents responsive to a subpoena to David Lakritz, TransPerfect obtained new information about WebPlexer that support it as an anticipatory reference. (Onyejekwe Decl. at ¶ 10.)

- <u>The WorldLingo Products and Patents</u>: In June 2011, TransPerfect discovered additional material related to the WorldLingo Translation Tools, also proxy-based translation products, after a diligent search. (Onyejekwe Decl. at ¶ 11.) Though TransPerfect originally offered WorldLingo as an obviousness reference in its proposed amendment in May, the discovery of additional art related to WorldLingo demonstrated that it, too, anticipated several of the asserted claims. In July 2011, TransPerfect also discovered U.S. Patent No. 7,171,348 ("Scanlan IV"), as well as International Applications PCT/AU02/00184 ("WorldLingo PCT I") and PCT/AU02/00249 ("WorldLingo PCT II"), which on information and belief, describe additional aspects of the WorldLingo Translator Tools. (Onyejekwe Decl. at ¶ 11.)

- <u>MotionPoint's Pre-Critical Date Products</u>: Through its ongoing investigation, TransPerfect discovered in August 2011 additional material that suggests that MotionPoint sold or offered for sale a product(s) embodying its patents more than year prior to the filing of the asserted patents. (Onyejekwe Decl. at ¶ 12.)

- <u>U.S. Patent No. 6,665,642</u>: In April 2011, TransPerfect discovered U.S. Patent No. 6,665,642, ("Kanevsky") and disclosed it as an obviousness reference in its May 2011 proposed amendment. (Snow Decl at ¶ 19.) In July 2011, while investigating a product called "WebSphere," which again, was an early proxy-based translation tool that may also invalidate the asserted claims, and which may embody claims from Kanevsky, TransPerfect determined that the disclosure in Kanevsky is, in fact, anticipatory art, particularly under MotionPoint's apparent claim constructions. (Onyejekwe Decl., ¶ 13.)

TransPerfect prepared its September 2011 proposed amendments, disclosed them to MotionPoint, and requested consent for the amendment. MotionPoint refused, essentially on the same grounds. (Onyejekwe Decl. at ¶ 14, Exhs. 4 and 5.) As discussed below, TransPerfect has good cause for amending its preliminary invalidity contentions to incorporate the newly discovered prior art and section 112 grounds for invalidity.

## III. <u>ARGUMENT</u>

The Patent Local Rules are not a "straitjacket into which litigants are locked from the moment their contentions are served" early in the case. *Tessera, Inc. v. Advanced Micro Devices, Inc.*, 2007 WL 1288199, *2 (N.D. Cal. Apr. 30, 2007). Instead, there is "a modest degree of flexibility, at least near the outset." *Id*. A party may amend its invalidity contentions under Patent L.R. 3-6 upon a timely showing of good cause—*i.e.*, a showing that the moving party has exercised diligence in discovering the prior art and updating its contentions. *Tessera*, 2007 WL 1288199 at *2; *Halo Elecs., Inc. v. Bel Fuse Inc.*, 2010 WL 3489593, *2 (N.D. Cal. Sept. 3, 2010); *Streak Products, Inc. v. Antec, Inc.*, 2010 WL 3515752, at *1 (N.D. Cal. Sept. 8, 2010); *Sunpower Corp. Sys's v. Sunlink Corp.*, 2009 WL 1657987, *1 (N.D. Cal. June 12, 2009). In

determining good cause, courts will also consider the timeliness of the amendments, the motivations of the moving party, the prejudice to the nonmoving party, and the public interest in deciding patent invalidity challenges on the merits rather than procedural technicalities. *Avago Techs. General IP Pte Ltd. v. Elan Microelectronics Corp.*, 2007 WL 1449758, *1 (N.D. Cal. May 15, 2007). Good cause exists for leave to amend TransPerfect's invalidity contentions, as discussed below.

### A. <u>TransPerfect Exercised Diligence In Developing Its Invalidity Contentions</u>

In determining whether to allow amendment of invalidity contentions, courts consider whether a party exercised diligence in searching for prior art. *See Streak Products, Inc.*, 2010 WL 3515752, at *2; *Zoltar Satellite Alarm Sys's, Inc. v. Motorola, Inc.*, 2008 WL 913326, *1 (N.D. Cal. Apr. 2, 2008). In this case, TransPerfect expended substantial efforts to locate and analyze prior art before it served its preliminary contentions. In addition to retaining a professional prior art search firm, TransPerfect spent over 500 hours reviewing patents, publications and industry practices related to internet-based translation and localization to prepare its preliminary contentions. (Snow Decl. at ¶ 9.) TransPerfect's prior litigation counsel then spent an additional 200 hours, searching for, reviewing, and evaluating the additional references it proposed in its proposal in May. (Snow Decl. at ¶ 9.) But this search was hampered by the sheer volume of asserted claims and the difficulty of identifying and gathering evidence concerning some prior art, especially documents and information related to commercial products. In fact, to the extent there is any lack of diligence here, it lies with MotionPoint's failure to exercise the restraint to narrow its asserted claims to a more reasonable number of claims, which has necessarily diluted TransPerfect's substantial efforts to locate and analyze prior art. Predictably, given these circumstances, after serving its initial invalidity contentions, TransPerfect subsequently located both: (1) additional information regarding art disclosed its initial invalidity contentions, and (2) a number of additional, material prior-art references.

In refusing to consent to TransPerfect's proposed amendment, MotionPoint argued during the parties' meet and confer that the public availability of the additional references bars the proposed amendments. (Snow Decl. at ¶ 16.) But this argument proves too much. Applying

MotionPoint's logic, a party could never demonstrate good cause where the additional prior art was publicly available. Patent Local Rule 3-6 expressly contemplates otherwise, allowing amendments based upon the "recent discovery of material prior art despite a diligent search...." And this Court has recognized the same flaw in MotionPoint's argument, having granted leave for parties to amend invalidity contentions to include later-found public prior art references. *See, e.g.*, *Tessera, Inc.*, 2007 WL 1288199 at *1 (granting leave to amend invalidity contentions to include additional public prior art references discovered after service of the initial contentions). *Id*.

TransPerfect's request for leave to amend its contentions to include section 112 defenses is timely as well. As explained above, these defenses came to maturity *after* MotionPoint made its claim construction positions known, which did not occur until after TransPerfect served its preliminary invalidity contentions.

### B. TransPerfect's Proposed Amendments Are Timely

Good cause also exists because TransPerfect seeks to amend its invalidity contentions in a timely fashion. Amendments to invalidity contentions have been found timely in cases where substantial time for discovery remains, as is the case here. *Tessera, Inc.*, 2007 WL 1288199 at * 2. In *Tessera*, this Court held that the defendants were diligent in seeking leave to amend by filing their invalidity contentions well in advance of the expert discovery deadline and claim-construction briefing. *Id.* The facts here are at least as compelling as those in *Tessera*. This case is in its early stages. Aside from exchanging documents, neither side has taken depositions or engaged in other substantial discovery efforts. (Onyejekwe Decl. at ¶ 16.) And because the fact discovery period has been extended to December 14, 2011, nearly three months still remain for fact discovery. D.I. 84. More significantly, expert reports are five months away, while claim construction and trial are 7 months and 12 months away, respectively. *Id*. Further still, MotionPoint was provided with the bulk of the proposed amendments months ago and has thus had an opportunity to analyze and assimilate them even before this motion was filed. (Snow Decl. at ¶ 12, Exh. 5.) It was thus aware that TransPerfect intended to amend its preliminary contentions—and was aware of most of the specific amendments—when it proposed the current

case schedule. After the TransPerfect patents were added to the case, the Court gave the parties leeway to set the revised schedule. (Onyejekwe Decl. at ¶ 16 and Exh. 6 at 6.) Had MotionPoint believed that additional time was warranted, it could have asked (and can still ask) for a longer discovery period, to which TransPerfect would not have objected.

Nor does TransPerfect's decision to file one consolidated motion in September, rather then successive motions in May and September, change this analysis. Under the Patent Local Rules, each amendment to a party's contention must be approved by the Court. To avoid burdening the Court with multiple, successive motions to amend, TransPerfect simply consolidated a narrowed set of May 2011 amendments with additional amendments disclosed in September. But because the May 2011 amendments were disclosed to MotionPoint in May, this consolidation did not delay at all MotionPoint's ability to begin its analysis of, and response to, these references. TransPerfect has preserved sufficient time for MotionPoint to evaluate the proposed amendments. In light of the above, TransPerfect's proposed amendments are timely.

### C. <u>TransPerfect's Proposed Amendments Are Not Motivated By Gamesmanship</u>

TransPerfect's proposed amendments result from its ongoing factual development of its case and investigation into the prior art. TransPerfect has consistently maintained that it may need to amend its invalidity contentions to reflect additional prior art references discovered during its ongoing search. (TransPerfect's Initial Invalidity Contentions, Snow Decl. at ¶ 6; Exh. 2.) TransPerfect notified MotionPoint on May 10, 2011 that it would amend its invalidity contentions, and it had previously raised the issue during the Court's May 6, 2011 hearing on MotionPoint's motion to compel TransPerfect's source code in native format. (Snow Decl. ¶ 18; Exh. 10 at 4:25-5:5.) TransPerfect attempted to avoid this dispute altogether by serving its amended contentions followed by a meet and confer conference and subsequent letter to MotionPoint. (Snow Decl. at ¶ 16 and at ¶17; Exh. 8.) TransPerfect once again raised the issue at the parties' June 7, 2011 source code dispute in-person meet and confer among lead counsel, where MotionPoint again refused. (Lumish Decl. at ¶ 2.) On September 12, TransPerfect served the current proposed amended contentions and claim charts on MotionPoint, and at MotionPoint's request provided a description of the proposed modifications and additional claim charts.

(Onyejekwe Decl. ¶ 15; Exhs. 4 and 5 (9/12/11 email/9/13/11 email).) Again, MotionPoint continued to refuse to consent. (Onyejekwe Decl. at ¶¶ 18-19; Exh. 7 (9/19/11 MotionPoint response email); Exh. 8 (9/21/11 TransPerfect email). In short, TransPerfect proposed amendment to its invalidity contentions is in good faith.

**D. <u>MotionPoint Will Not Suffer Any Prejudice</u>**

During the parties' May 16, 2011 meet and confer, MotionPoint could not articulate any specific prejudice, other than having to reevaluate the prior art "as a whole." (Snow Decl. at ¶ 16.) Nor did MotionPoint identify any other supposed prejudice in any of the parties' subsequent discussions or correspondence. As explained above, several of the amended contentions simply reflect additional information regarding prior art that had already been disclosed by TransPerfect in its initial invalidity contentions. And with nearly three months remaining until the close of fact discovery, five months until claim construction and dispositive motions, and 12 months until trial, MotionPoint has ample time to analyze the relevant art and take whatever factual discovery it deems appropriate.

Indeed, as this Court acknowledged in *Golden Hour Data Sys., Inc.*, three months of fact discovery provides ample time to consider amended invalidity contentions:

> [A]s noted above, HSI's amended contentions do *not* leave Golden Hour with little time to conduct discovery, as an additional three months remain in the fact discovery period. As expert discovery has not yet begun, Golden Hour's experts will have the opportunity to consider the amended contentions.

*Golden Hour Data Sys., Inc. v. Health Servs. Integration, Inc.*, 2008 WL 2622794 at *4(N.D. Cal. July 1, 2008) (emphasis in original); *see also Tessera, Inc. v. Advanced Micro Devices, Inc.*, 2007 WL 1288199, at *2 (N.D. Cal. April 30, 2007) ("Here, Defendants seek to amend their invalidity contentions well in advice of the deadline for any expert reports that may be effected and briefing on claim construction."). Given the modest scope of the amendments, the fact there are nearly three months remaining for fact discovery, that expert discovery extends months beyond that, and that MotionPoint was apprised of the majority of TransPerfect's proposed amendments in May of 2011, MotionPoint will not suffer any prejudice.

**E. <u>The Overwhelming Public Interest In Deciding Invalidity On The Merits Justifies Leave To Amend</u>**

Resolving invalidity challenges on their merits—rather than on technicalities or procedural issues—strongly supports granting leave to amend. *Streak Prods., Inc.*, 2010 WL 3515752 at * 3; *Golden Hour Data Sys., Inc.*, 2008 WL 2622794 at *4; *Acco Brands, Inc.*, 2008 WL 2168379 at *2; *Zoltar Satellite Alarm Sys., Inc.*, 2008 WL 913326 at *3; *Halo Electrs., Inc.*, 2010 WL 3489593 at *2; *Avago Techs. Gen. IP Pte Ltd.*, 2007 WL 1449758 at *2. Granting leave to amend will further a resolution of invalidity on the merits. Thus, TransPerfect respectfully requests that the Court grant leave to amend.

## IV. <u>CONCLUSION</u>

Given TransPerfect's diligence, its timely amendments in good faith, the absence of prejudice to MotionPoint, and the overwhelming public interest in resolving invalidity challenges on the merits, the Court should grant TransPerfect leave to amend its invalidity contentions in the form attached as Exhibit 1 to the Declaration of L. Okey Onyejekwe Jr.

Dated: September 22, 2011

/s/ Douglas E. Lumish
Douglas E. Lumish
Jeffrey G. Homrig
Steven D. Chin (*pro hac vice*)
Joseph H. Lee
L. Okey Onyejekwe Jr.
Joseph B. Shear
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Attorneys for Plaintiffs TransPerfect Global, Inc.; TransPerfect Translations International, Inc.; and Translations.com, Inc.