DOUGLAS E. LUMISH (Bar No. 183863)
dlumish@kasowitz.com
JEFFREY G. HOMRIG (Bar No. 215890)
jhomrig@kasowitz.com
JOSEPH H. LEE (Bar No. 248046)
jlee@kasowitz.com
L. OKEY ONYEJEKWE JR. (Bar No. 250354)
oonyejekwe@kasowitz.com
JOSEPH G. SHEAR (Bar No. 262222)
jshear@kasowitz.com
Kasowitz, Benson, Torres & Friedman LLP
101 California Street, Suite 2300
San Francisco, California 94111
Telephone (415) 421-6140
Facsimile (415) 398-5030

STEVEN D. CHIN (*pro hac vice*)
schin@kaoswitz.com
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Telephone (212) 506-1907
Facsimile (212) 500-3407

Attorneys for Plaintiffs
TransPerfect Global, Inc.;
TransPerfect Translations International, Inc.; and
Translations.com, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TRANSPERFECT GLOBAL, INC., TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC., AND TRANSLATIONS.COM, INC.,<br>      Plaintiffs/Counterclaim Defendants,<br>v.<br>MOTIONPOINT CORPORATION,<br>      Defendant/Counterclaim Plaintiffs. | Case No. CV 10-02590 CW<br><br>**DELCARATION OF JACOB SNOW IN SUPPORT OF TRANSPERFECT'S MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**<br><br>Date:<br>Time:<br>Dept.:<br>Judge: |

I, Jacob Snow, declare:

1. I am an associate attorney at Orrick, Herrington & Sutcliffe LLP ("Orrick"), which was previously counsel for plaintiffs TransPerfect Global, Inc., TransPerfect Translations International, Inc., and Translations.com, Inc. ("TransPerfect") in this action. Unless stated on information and belief, I make this declaration based on my own personal knowledge, and if called as a witness, I could and would competently testify to the matters set forth herein.

2. In May of 2010, TransPerfect began a worldwide search for internet-based translation and localization products, services prior art. The scope of the search included United States patents and applications, foreign patents and applications, non-patent publications, public internet content and products in public use that relate to the field of automated translation and localization on a network.

3. In December of 2010, TransPerfect retained Landon IP, a professional prior art search firm, which conducted additional prior art searching.

4. The initial prior art search returned nearly 400 relevant references that predated the MotionPoint patents and potentially invalidated the MotionPoint patents either alone or in combination with other references.

5. TransPerfect investigated several of the hundreds of references in the *2000 Compendium of Translations Software* and identified numerous potentially invalidating products and services. A publicly available copy of the *2000 Compendium of Translations Software* is attached hereto as Exhibit 1.

6. By January 2010, TransPerfect was able to locate sufficient documentation to determine that the WizArt, WorldLingo, and SYSTRAN prior art products and services likely invalidated the asserted claims of the MotionPoint patents. TransPerfect identified these products and services in its original invalidity contentions. A true and correct copy of TransPerfect's original invalidity contentions is attached hereto as Exhibit 2.

7. Despite the fact that the initial prior art search turned up evidence of numerous translation products that were available prior to the critical date of the MotionPoint patents,

locating those software-based products and determining exactly how they functioned before the critical date of MotionPoint's patents has been difficult and time consuming. For example, the WebPlexer product was identified in the Lakritz I and Lakritz II patents included in TransPerfect's preliminary contentions, however TransPerfect had not obtained comprehensive information describing the features and functionality of the WebPlexer commercial product prior to serving its invalidity contentions.

8. On January 14, 2011, TransPerfect served preliminary invalidity contentions citing 86 prior art references—including 70 patents, 11 publications, and 5 documents evidencing internet-based translation and localization products. TransPerfect also served 67 separate claim charts detailing with specific citations where each limitation of the asserted patents appeared in the prior-art reference, and produced the prior art references that it had incorporated into its analysis.

9. Orrick, as counsel for TransPerfect, spent over 500 hours reviewing prior art and preparing its invalidity contentions. Orrick spent nearly another 200 hours continuing its diligent search and review of the prior art from the time of serving the original invalidity contentions in January until its proposed amendment in May 2011.

10. TransPerfect continued its prior-art search after serving its invalidity contentions. As a result, counsel for TransPerfect became aware of additional prior-art patents and publications, and additional evidence of prior-art products in use or on sale before the critical date of the MotionPoint Patents. Between January and May of 2011, TransPerfect discovered additional material related to the WizArt, WorldLingo, and SYSTRANLinks products already cited in its invalidity contentions. TransPerfect also discovered material relating to the proxy-based translation and localization products and technology developed by NetMask Internet Technologies, TheOne Technology Group ("TheOne"), LogoVista, WebPlexer, and Websphere.

11. During the time period following service of TransPerfect's original invalidity contentions, the parties exchanged initial claim construction positions. Prior to TransPerfect serving its contentions, MotionPoint took the position that it would not propose any terms for

construction and that all terms should be afforded their plain and ordinary meanings. However, in its March 9, 2011 Preliminary Claim Construction Statement, MotionPoint provided specific constructions that it labeled "ordinary meanings" for numerous claim terms. Attached hereto as Exhibit 3 is a true and correct copy of the parties' Joint Claim Construction Statement. Attached hereto as Exhibit 4 is a true and correct copy of a letter from MotionPoint to my colleague Jacob Heath dated January 28, 2011 and attached MotionPoint's Submission Re: Proposed Claim Terms For Construction. MotionPoint refused to suggest any claim terms for construction.

12. On May 10, 2011, TransPerfect served its proposed amendments to its invalidity contentions and asked MotionPoint to stipulate to the amendments. Attached hereto as Exhibit 5, is a true and correct copy of the May proposal.

13. As the result of a continued diligent search, in April of 2011, I first became aware of the NetMask.it! product. NetMask.it! is a proxy-based translation and localization product from Netmask (El-Mar) Internet Technologies, an Israeli company. "On-the-Fly Proxy-Based Localization & Customization," a publicly available copy of a presentation from NetMask (El-Mar) Internet technologies is attached hereto as Exhibit 6. This document indicates that the NetMask.it! product was on sale and in use in the United States prior to the critical date of the MotionPoint patents, and as such is prior art.

14. As the result of a continued diligent prior art search, in March 2011, I first became aware of three PCT applications that were filed by TheOne.com and owned by TheOne Technology group, WO 01/80036 ("Sheng I"), WO 01/93089 ("Sheng II"), and WO 02/073464 ("Sheng III"), which do not appear to have resulted in issued patents, and each of which anticipate MotionPoint's asserted claims.

15. In April 2011, I further became aware that TheOne Technology Group actually sold a website translation and localization product prior to the critical date of the MotionPoint Patents. The product appears to incorporate the same or similar technology as described in Sheng I, Sheng II, and Sheng III. After further investigation of TheOne Technology Group, I became aware that TheOne Technology Group was purchased by an Asian company in 2001 and no

longer exists. As a result, TransPerfect has continued to face substantial difficulty in locating additional evidence of TheOne's features and technical implementation. Attached hereto as Exhibit 7 is a publicly available article, "AccuWeather and The One Technology Group Enter Agreement For Global Translation Services," dated July 11, 2001. The article describes website localization and translation transaction services being provided by TheOne Technology Group in 2001.

16. On May 16, 2011, counsel for TransPerfect met and conferred with counsel for MotionPoint regarding the proposed Amended Invalidity Contentions. During the meet and confer, MotionPoint's counsel declined to consent to the proposed amendments. MotionPoint argued that the amendments were improper because they were based on publically available information. MotionPoint did not, however, state on that call that TransPerfect had not been diligent in preparing its invalidity contentions. Additionally, the only prejudice MotionPoint claimed was that the amendments required MotionPoint to reevaluate all of the prior art "as a whole."

17. Attached hereto as Exhibit 8 is a true and correct copy of a letter that I sent on May 17, 2011 to counsel for MotionPoint after the parties met and conferred regarding TransPerfect's Amended Invalidity Contentions. In that letter, I specifically requested that MotionPoint provide the basis for any contention that TransPerfect had not been diligent. Attached hereto as Exhibit 9 is a true and correct copy of a letter that I received on May 18, 2011 from MotionPoint's counsel after the parties met and conferred regarding TransPerfect's Amended Invalidity Contentions. MotionPoint did not respond to the detailed analysis in my letter, and in particular did not articulate any basis for a contention that TransPerfect had not been diligent.

18. During a telephonic hearing on MotionPoint's motion to compel, Counsel for TransPerfect notified MotionPoint and the Court that it would need to amend its Invalidity Contentions. Attached hereto as Exhibit 10 is true and correct copy of the transcript of the telephonic hearing on May 6, 2011. Dkt. No. 61.

19. As the result of a continued diligent prior art search, in April 2011, I first became aware of U.S. Patent No. 6,665,642, "Transcoding System and Method for Improved Access by User with Special Needs," by D. Kanevsky dated December 16, 2003. Attached hereto as <u>Exhibit 11</u> is a correct copy, as provided by the United States Patent Office, of U.S. Patent No. 6,665,642.

20. The WebPlexer product was identified as an embodiment in the Lakritz I, II, and III patents disclosed in TransPerfect's original invalidity contentions. As discovery continued, TransPerfect obtained some additional, limited information regarding the WebPlexer product in March 2011 and disclosed WebPlexer as an obviousness reference in its May 2011 disclosure. However, TransPerfect had not uncovered comprehensive evidence describing the specific technical functionality of the WebPlexer product by the time of its May 2011 disclosure to MotionPoint.

Executed this 23rd day of September, 2011, at Menlo Park, California.

_____
Jacob A. Snow