K ASOWITZ, B ENSON, T ORRES & F RIEDMAN LLP

333 TWIN DOLPHIN DRIVE ▪ SUITE 200

REDWOOD SHORES, CALIFORNIA 94065

(650) 453-5170

FACSIMILE: (650) 453-5171

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK

December 20, 2011
**BY ELECTRONIC FILING**

The Honorable Joseph C. Spero
United States District Court
 for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *TransPerfect Global, Inc., et al. v. MotionPoint Corp.*, Case No. CV-10-02590 CW
      Joint Letter to the Court Regarding the Parties' Fifth In-Person Meet-and-Confer

Dear Judge Spero:

On December 15, 2011, lead counsel for TransPerfect and MotionPoint met in person at the Silicon Valley office of Plaintiffs' counsel, Kasowitz, Benson, Torres & Friedman LLP, to discuss (1) whether MotionPoint should search the attachments to emails on its servers prior to review by TransPerfect to determine what attachments appear reasonably calculated to lead to admissible evidence and are not already produced and (2) whether MotionPoint should provide TIFF and OCR the text of its emails and its attachments without TransPerfect identifying which emails and attachments reasonably appear pertinent to this case.

Because those matters were not resolved during the meet-and-confer and remain in dispute, TransPerfect brings this motion seeking relief from the Court.

**I.    DETAILED SUMMARY OF EACH PARTY'S FINAL SUBSTANTIVE POSITION**

   **A.    TransPerfect**

This letter addresses two disputes that arise from MotionPoint's attempt to push its discovery obligations onto TransPerfect. For the reasons discussed below, the Court should compel MotionPoint to fulfill its obligations.

   **1.    MotionPoint's Inadequate Production of Documents**

1

K ASOWITZ ,  B ENSON ,  T ORRES  &  F RIEDMAN  LLP

333 TWIN DOLPHIN DRIVE ▪ SUITE 200

REDWOOD SHORES, CALIFORNIA 94065

(650) 453-5170

FACSIMILE: (650) 453-5171

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK

  MotionPoint has refused to conduct a thorough search for responsive attachments to emails that it has produced in this case, and TransPerfect respectfully requests that the Court compel it to do so. As raised in the last letter to the Court, (D.I. 103), MotionPoint recently conducted a document dump of over 1.4 million emails from its central server. In its last letter to the Court, TransPerfect sought relief addressing MotionPoint's failure to analyze the responsiveness of these documents in any manner before producing them. While reviewing these emails, TransPerfect discovered that MotionPoint did not produce a **single** attachment to any of those 1.4 million emails. Moreover, MotionPoint has neither stated nor produced any reason to believe that it has conducted any reasonable and comprehensive search of the attachments to its emails. In addition, MotionPoint has neither stated nor provided any reason to believe that any of the custodians actually searched the attachments to their emails, or if they did, whether that search was done in a systematic and reasonable manner as opposed to at the whim of each custodian. When TransPerfect asked MotionPoint to conduct a search for responsive attachments, it refused to do so.[1]

  Instead, MotionPoint insisted that TransPerfect review each and every one of the 1.4 million emails, many of which MotionPoint has admitted are "non-pertinent," and identify, based solely on the contents of the email and the filename of the attachment, those attachments that MotionPoint should produce. At that point, MotionPoint would consider whether to actually search for and produce those documents. This proposal turns the e-discovery process on its head.

  Rather than have MotionPoint reasonably search for and produce responsive documents, as contemplated by the Federal Rules of Civil Procedure and the Joint Case Management Statement, MotionPoint is demanding that TransPerfect perform a review of one set of documents in an attempt to determine whether another set of documents might be responsive. By shirking its discovery responsibilities, MotionPoint's proposal is likely to deprive TransPerfect of responsive documents and forces TransPerfect to undertake the burden of performing relevance reviews for both parties.[2] In many situations, very little can be determined about the content of an attachment simply from the contents of the email and the title of the attachment. For example, if an email states, "Please let me know if this works for you," and the

---

[1] Concerningly, MotionPoint indicated that it has not stored any attachments to outbound emails, including for those emails sent since the filing of this lawsuit. MotionPoint has confirmed that it does store attachments for all inbound emails, but is refusing to search those.

[2] MotionPoint's argument that TransPerfect has not yet identified any "pertinent" attachments in the recently dumped production misses the point. The issue is not whether TransPerfect could identify some responsive attachments, but rather whether MotionPoint's refusal to perform a reasonable search for attachments deprives TransPerfect of responsive documents and information. As discussed above, MotionPoint's refusal is highly likely to lead to that result..

2

K ASOWITZ ,  B ENSON ,  T ORRES  &  F RIEDMAN  LLP

333 TWIN DOLPHIN DRIVE ▪ SUITE 200

REDWOOD SHORES, CALIFORNIA 94065

(650) 453-5170

FACSIMILE: (650) 453-5171

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK

attachment is titled "Special_Report_for_Ellen_5-3-05.xls," there is not enough information for TransPerfect to determine if the attachment would be relevant or not. *See* MPT-00631552. MotionPoint's demand that TransPerfect somehow determine whether the contents of attachments are relevant without having access to the documents is unreasonable and inconsistent with its discovery obligations.

As a result, TransPerfect seeks that this Court order MotionPoint to conduct a reasonable search of its attachments. This search could either be performed using a set of keywords reasonably developed to return responsive documents, by a relevance review, or some combination of the two. Such a review is consistent with MotionPoint's long-standing discovery obligations in this case, as well as the Joint Case Management Statement. *See* D.I. 43 at 2 ("Each party will then conduct a reasonably diligent search of those reasonably accessible sources identified by the key custodians to likely include relevant ESI responsive to discovery requests.").

### 2. MotionPoint Should TIFF and OCR Its Emails and Attachments

Contravening the parties' express agreement, MotionPoint failed to TIFF and OCR the 1.4 million emails that it has produced in this case. TransPerfect respectfully asks the Court to compel MotionPoint to produce in TIFF format with OCR at least those emails within that set that are responsive to TransPerfect's requests for production. As set forth in the Joint Case Management Statement, the parties agreed to produce documents in TIFF format with OCR of the text. *See* D.I. 43 (Jnt. Case Mgmt. Stmt.) at 2 ("The Parties agree that production of electronically-stored information will be made in black and white single page TIFF-format, including OCR of text to the extent possible, and will include suitable files for loading the images into standard database programs such as Concordance or Summation."). Despite recently invoking this agreement to insist that TransPerfect produce documents in TIFF/OCR format, which TransPerfect did, MotionPoint now refuses to abide by the parties' agreement. Specifically, with respect to the 1.4 million emails already produced, MotionPoint has refused to produce them in TIFF format with OCR of the text. MotionPoint has further indicated that, to the extent that this Court orders the search and production of attachments to those emails, it will not produce those documents in TIFF format with OCR of text.

This failure, in addition to violating the parties' express agreement, places a significant and unwarranted burden on TransPerfect. In essence, TransPerfect is being asked to conduct the relevance review that MotionPoint should have conducted in the first place. Furthermore, the failure to TIFF and provide OCR increases the cost of review for TransPerfect, and forces TransPerfect to choose between either (1) facing increased review costs or (2) paying for the documents to be converted to TIFF and OCR format itself. For instance, the emails produced by MotionPoint generally consist of HTML. The failure to produce these in TIFF with OCR means that text used to perform searches on these documents contain a significant amount of formatting information, which decreases the efficiency of the search databases and results in certain search

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

333 TWIN DOLPHIN DRIVE ▪ SUITE 200

REDWOOD SHORES, CALIFORNIA 94065

(650) 453-5170

FACSIMILE: (650) 453-5171

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK

terms showing up in every document. In fact, many of these emails consist of more formatting information than actual text. The inclusion of this formatting information also decreases the effectiveness of proximity searching, as formatting information is inserted between the substantive text. In addition, in order to actually view the document, a separate program, such as Internet Explorer has to be used, rather than simply using a review tool, such as Concordance to view the information. This adds a significant amount of time to the review process and disables the integrated functionality of the review software.

As a result, MotionPoint seeks to force TransPerfect to pay the costs for TIFF and OCR for both parties—since TransPerfect has been complying with the agreement while MotionPoint has not. In addition, MotionPoint's position would require TransPerfect to identify those documents that it considers the most pertinent, thus revealing TransPerfect's litigation strategy and work product. Thus, MotionPoint's proposed solution solves nothing—it would simply impose all the burden and costs for both parties on TransPerfect.[3]

Finally, MotionPoint's attempt to blame TransPerfect for its production of "non-pertinent" emails to justify its refusal to comply with the Joint Case Management Statement is misplaced. First, it was MotionPoint that demanded that TransPerfect provide a list of search terms and refused to edit those search terms in any way, rather than develop its own search methodology. Then, it was MotionPoint that simply dumped over a million emails without reviewing them for responsiveness or informing TransPerfect that the search terms were returning admittedly non-pertinent emails. Compounding this, MotionPoint chose to continue using these search terms, even after TransPerfect explicitly demanded that it cease. *See* Nov. 23, 2011, Email from J. Shear to A. Ott ("While MotionPoint continues to blame TransPerfect for somehow forcing it to perform this search and production, this email should make it clear—TransPerfect has no interest in MotionPoint continuing with this behavior and again requests that MotionPoint cease all such efforts. Rather, MotionPoint should, as TransPerfect has long requested, engage in a reasonable search of its email production."). MotionPoint cannot now credibly justify its failure to comply with the Joint Case Management Statement by pointing to its own decision to dump admittedly non-pertinent documents on TransPerfect.

**B.      MotionPoint**

From TransPerfect's summary above, it appears that TransPerfect seeks to use the current motion as an excuse to rehash the motion before the Court during the December 2, 2011

---

[3] MotionPoint's proposed compromise also does not provide any guarantees—MotionPoint may simply object to TransPerfect's list as being too broad.

K ASOWITZ , B ENSON , T ORRES & F RIEDMAN  LLP

333 TWIN DOLPHIN DRIVE ▪ SUITE 200

REDWOOD SHORES, CALIFORNIA 94065

(650) 453-5170

FACSIMILE: (650) 453-5171

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK

hearing.[4]

The only disputes properly before the Court at this time are how to allocate the burden of handling any further looking into e-mail attachments desired by TransPerfect and how to allocate the TIFF and OCR tasks that TransPerfect wants undertaken.

TransPerfect is now in possession of over one and a half million e-mails as a result of its demand that an overly broad search be conducted. Those e-mails are searchable by TransPerfect. Yet, although TransPerfect speculates that some attachments[5] might be pertinent to the case, TransPerfect has yet to point to a single e-mail to back up that speculation. If TransPerfect would review the e-mails and list what it believes to be pertinent attachments that it cannot locate elsewhere in the searchable production it already has, MotionPoint can then seek to locate them in its database (assuming that the list is reasonable in the first place). That is plainly the direct way to locate and retrieve what, *if any*, of such attachments are reasonably calculated to lead to admissible evidence.

But TransPerfect declines to do any preliminary work with the e-mails it demanded be produced, asserting that, instead, some wider net must be cast around the attachments. However,

---

[4] TransPerfect complains that MotionPoint's custodians carried out their respective searches individually, but it is those very custodians who have knowledge of the organization and content of the files in their possession and were appropriate persons to conduct the searches.

[5] When MotionPoint's sales email database stores attachments to inbound e-mails, it does so separately from the e-mails themselves. Files that MotionPoint attaches to its emails from its system in locations already searched by MotionPoint are not separately stored by the email database.

5

K ASOWITZ , B ENSON , T ORRES & F RIEDMAN L L P

333 TWIN DOLPHIN DRIVE ▪ SUITE 200

REDWOOD SHORES, CALIFORNIA 94065

(650) 453-5170

FACSIMILE: (650) 453-5171

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK

that assertion should be rejected. The pertinence, if any, of the attachments arises out of the e-mail, so a net disassociated with consideration of the e-mails makes little sense except as an exercise to impose burden and expense on MotionPoint.

Likewise with the TIFF and OCR exercise that TransPerfect wants to impose on MotionPoint. TransPerfect's refusal to identify a reasonable number of emails and attachments that it believes are pertinent to this case (and thus arguably necessitate reproduction in TIFF with OCR text) is telling. MotionPoint has been and remains more than willing to TIFF and OCR a reasonable number of emails and attachments identified by TransPerfect as pertinent to this case, but MotionPoint should not have to bear the unreasonable burden and high cost of converting all of the emails—pertinent or not—from their native form into TIFF and OCR format.

TransPerfect references the parties' agreement (in the Joint Case Management Statement) to produce in TIFF, but that agreement does *not* contemplate TIFF in every circumstance no matter how unreasonable, and in fact explicitly allows for non-TIFF production in the event that doing so is either "unreasonable or impractical due to the type of electronic document (i.e., large excel files)", a section that TransPerfect itself cited in the single instance that MotionPoint requested that certain documents be re-produced.[6] TransPerfect's request that all of the over one and a half million emails be re-produced in TIFF, without any narrowing by TransPerfect to

---

[6] Although TransPerfect seeks to make out a tit-for-tat case, in the single instance where MotionPoint requested TransPerfect to produce in a different form files already produced in another form, MotionPoint did so *only* because the files as produced by TransPerfect could not be reviewed by *any* review software in the format produced.

K ASOWITZ , B ENSON , T ORRES & F RIEDMAN LLP

333 TWIN DOLPHIN DRIVE ▪ SUITE 200

REDWOOD SHORES, CALIFORNIA 94065

(650) 453-5170

FACSIMILE: (650) 453-5171

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK

those emails that it believes are pertinent, is clearly unreasonable.

TransPerfect's newly minted excuse for refusing to narrow its TIFF and OCR request to what is pertinent is that doing so would force it into "revealing TransPerfect's litigation strategy and work product". That rings hollow and exposes what appears to be the actual litigation strategy—make work and expense for MotionPoint notwithstanding the issue of pertinence. MotionPoint should not be required to accept burdens and costs associated with non-pertinent documents just so TransPerfect can preserve its view that mere identification of what it would like to TIFF and OCR is an invasion into its litigation strategy and work product.

## II. DESCRIPTION OF EACH PARTY'S PROPOSED COMPROMISE

### A. TransPerfect

TransPerfect's proposed compromise concerning the production of attachments is as follows: MotionPoint should conduct a reasonable search of the attachments to emails on its central email servers and produce the attachments returned by that search. MotionPoint should develop a reasonable methodology for conducting this search, such as a targeted keyword search, where the list of search terms reflects testing of the responsiveness rates returned by those keywords. As an alternative, MotionPoint could simply review the attachments as a whole to determine responsiveness.

TransPerfect's proposed compromise concerning the TIFF and OCR of the text is as follows: MotionPoint should produce in TIFF format with OCR at least those emails in its 1.4-million-email production that are responsive to TransPerfect's requests for production. With respect to the any production of email attachments or other future production of documents, MotionPoint will produce those in TIFF format with OCR of the text pursuant to the Joint Case Management Statement.

### B. MotionPoint

TransPerfect should review the e-mails and provide a reasonable list of what it believes to be pertinent attachments that it cannot locate elsewhere in the searchable production provided to

K ASOWITZ , B ENSON , T ORRES & F RIEDMAN LLP

333 TWIN DOLPHIN DRIVE ▪ SUITE 200

REDWOOD SHORES, CALIFORNIA 94065

(650) 453-5170

FACSIMILE: (650) 453-5171

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK

TransPerfect by MotionPoint. MotionPoint should then seek to locate them in its database. Disputes over the reasonableness of the list should be submitted to the Court for resolution.

TransPerfect's should identify a reasonable number of emails and attachments that it believes are pertinent to this case for MotionPoint to TIFF and OCR text. Disputes over the reasonableness should be submitted to the Court for resolution.

Sincerely,

| KASOWITZ, BENSON, TORRES & FRIEDMAN LLP | McDERMOTT WILL & EMERY LLP |
|---|---|
| /s/ Joseph B. Shear | /s/ Alexander Ott |
| DOUGLAS E. LUMISH (Bar No. 183863)<br>JEFFREY G. HOMRIG (Bar No. 215890)<br>JOSEPH H. LEE (Bar No. 248046)<br>L. OKEY ONYEJEKWE JR. (Bar No. 250354)<br>JOSEPH B. SHEAR (Bar No. 262222) | ANTHONY DE ALCUAZ (SBN: 65599)<br>PHILIP OU (SBN: 259896)<br>JOEL M. FREED<br>ALEXANDER OTT (admitted *pro hac vice*) |
| *Attorneys for Plaintiffs/Counterclaim Defendants*<br>*TransPerfect Global, Inc.; TransPerfect Translations International, Inc.; and Translations.com, Inc.* | *Attorneys for Defendant/Counterclaim Plaintiff MotionPoint Corporation* |

Dated: December 20, 2011

8

K ASOWITZ , B ENSON , T ORRES & F RIEDMAN LLP

333 TWIN DOLPHIN DRIVE ▪ SUITE 200

REDWOOD SHORES, CALIFORNIA 94065

(650) 453-5170

FACSIMILE: (650) 453-5171

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK

I hereby attest pursuant to General Order 45.X.B. that concurrence in the electronic filing of this document has been obtained from the other signatories.

Dated: December 20, 2011          /s/ Joseph B Shear.
                                    [Name of Filer]