KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

A NEW YORK LIMITED LIABILITY PARTNERSHIP

333 TWIN DOLPHIN DRIVE, SUITE 200

REDWOOD SHORES, CA 94065

650-453-5170

FAX 650-453-5171

DOUGLAS E. LUMISH
DIRECT DIAL: 650-453-5410
DLUMISH@KASOWITZ.COM

ATLANTA
HOUSTON
MIAMI
NEW YORK
NEWARK
SAN FRANCISCO

May 17, 2012

**VIA HAND DELIVERY**

The Honorable Joseph C. Spero
United States District Court
  for the Northern District of California
450 Golden Gate Avenue
Courtroom G – 15th Floor
San Francisco, CA 94102

      Re:    TransPerfect Global, Inc. et al. v. MotionPoint Corporation
               Civ. No. 10-02590 (CW)(JCS)

Dear Judge Spero:

      We are counsel to plaintiffs TransPerfect Global, Inc., TransPerfect Translations International, Inc., and Translations.com Inc. (collectively, "Plaintiffs" or "TransPerfect") in the above-referenced matter (the "Action"). We write to advise the Court that, based on information brought to TransPerfect's attention this week, we intend, expeditiously, to move to disqualify McDermott Will & Emery LLP ("McDermott"), counsel to defendant MotionPoint Corporation ("Defendant" or "MotionPoint"). Specifically, for the past twelve months, McDermott has been concurrently representing MotionPoint, TransPerfect and TransPerfect's co-owners, Phil Shawe and Liz Elting, which constitutes a direct conflict of interest pursuant to California Rule of Professional Conduct 3-310. These conflicts arose in 2011 when Carlyn McCaffrey joined McDermott's partnership from Weil, Gotshal where she represented TransPerfect, Mr. Shawe, and Ms. Elting. That representation has continued after Ms. McCaffrey joined McDermott. Despite the fact that depositions are scheduled today, tomorrow and for the next week, and that McDermott's participation in those depositions would require it to depose its own client and so result in substantial prejudice to TransPerfect, Mr. Shawe and Ms. Elting, Defendant has refused our requests for a temporary stay of these depositions until this issue is resolved by the Court. Accordingly, we respectfully request, on an emergent basis, that Your Honor grant TransPerfect a stay of discovery pending this Court's determination on the motion to disqualify.

      The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254-255 (1936); see also

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Hon. Joseph C. Spero
May 17, 2012
Page 2

<u>Alzheimer's Inst. of Am. v. Elan Corp. PLC</u>, 2011 U.S. Dist. LEXIS 147471, *5 (N.D. Cal. Dec. 22, 2011) (same). In determining whether a stay is appropriate, generally, the court must weigh "the possible damage which may result from granting the stay, the hardship to the parties if the suit is allowed to proceed, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." <u>Alzheimer's</u>, 2011 U.S. Dist. LEXIS 147471, at *6 (citations and quotations omitted). Where, however, an attorney is alleged to be concurrently representing and adverse to a client, "the mere allegation of such an attorney-client conflict of interest is sufficient to stay discovery until the district court resolves the issue of conflict of interest." <u>Williams v. Kopco, Inc.</u>, 162 F.R.D. 670, 672 (D. Kan. 1995); <u>see also</u> <u>Augustine v. Family Serv. Soc'y</u>, 1997 U.S. Dist. LEXIS 13535 (S.D.N.Y. Sept. 4, 1997) (granting motion to stay discovery pending resolution of motion for disqualification where "continued representation of defendant in this matter may result in the use of plaintiff's confidential information against him"); <u>Cauderlier & Assocs. v. Zambrana</u>, 2006 U.S. Dist. LEXIS 46789 (D.D.C. July 12, 2006) (granting stay of discovery pending resolution of motion for order requiring counsel to withdraw due to conflict).

The salient facts here demonstrate that permitting McDermott to continue in this action will substantially prejudice TransPerfect, Mr. Shawe and Ms. Elting. McDermott, counsel to Defendant in this action, is (and since April 2011 has been) counsel to TransPerfect, as well as to TransPerfect's co-owners, Mr. Shawe and Ms. Elting, on various financial matters of concern to them. As noted above, this representation began when Ms. McCaffrey transferred to McDermott from Weil in 2011. Indeed, as recently as February 2012, McDermott represented TransPerfect in connection with the preparation of a TransPerfect shareholders' agreement and a buy-sell agreement. McDermott remitted its bills for that work (and all other work for TransPerfect, Mr. Shawe and Ms. Elting) to TransPerfect and was paid directly by TransPerfect for rendering such services. In these matters, TransPerfect has been represented by, and has a longstanding relationship with, Carlyn S. McCaffrey, a partner in McDermott's New York office, as well as other McDermott attorneys. The legal services performed by McDermott and its attorneys for TransPerfect have allowed McDermott to obtain confidential information concerning TransPerfect's finances and corporate structure, Mr. Shawe's and Ms. Elting's roles and interest in TransPerfect, private information relating to Mr. Shawe's assets and investments, including detailed information regarding his foreign holdings, personal bank accounts, real estate holdings and all assets of significant value, and other similar matters. TransPerfect's corporate structure is inextricably linked with Mr. Shawe and Ms. Elting, who co-own the company, and its finances are highly relevant to this Action. Indeed, MotionPoint's contention that the representations are "wholly unrelated" is belied by the fact that it has sought discovery concerning the corporate structure and corporate finances throughout the case. A copy of the March 22, 2012 invoice reflecting McDermott's preparation of the shareholders' agreement and the buy-sell agreement, along with a check from TransPerfect to McDermott reflecting payment of that invoice, is attached as Exhibit A hereto.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Hon. Joseph C. Spero
May 17, 2012
Page 3

Pursuant to California Rule of Professional Conduct 3-310(C)(3), unless McDermott "*fully discloses the conflict* and obtains a waiver in writing," it "cannot simultaneously represent two clients that are adverse to each other, *even where the adversity arises in two unrelated matters*." Fujitsu Ltd. v. Belkin Int'l, Inc., 2010 U.S. Dist. LEXIS 138407 (N.D. Cal. Dec. 22, 2010) (emphasis added). Such a circumstance implicates "the attorney's duty of loyalty." State Farm Mut. Auto.ins. Co. v. Fed. Ins. Co., 72 Cal. App. 4th 1422, 1431 (Cal. App. 5th Dist. 1999). Therefore, "[w]hen evaluating whether a law firm may concurrently represent two clients, *even on unrelated matters*, it is presumed that the duty of loyalty has been breached and counsel is automatically disqualified." Concat LP v. Unilever, PLC, 350 F.Supp.2d 796, 819 (N.D. Cal. 2004). Indeed, "it is the attorney who is charged with the responsibility of performing conflict checks upon accepting a new client. The client is under no such obligation." State Farm, 72 Cal.App. 4th at 1435. Thus, conflicts of interest involving concurrent representations cannot be impliedly waived. See Blecher & Collins, P.C. v. Northwest Airlines, 858 F. Supp. 1442, 1455 (C.D. Cal. 1994). Consequently, while the record establishes that McDermott's representation of TransPerfect, Mr. Shawe and Ms. Elting is directly related to this Action in light of the discovery and relief sought by MotionPoint, even if the matters were unrelated, it would be irrelevant because the heart of the issue concerns McDermott's breach of its undivided duty of loyalty to its clients. Concat, 350 F.Supp.2d at 819.

McDermott's response to this issue has been to attempt to shift blame to Mr. Shawe and Ms. Elting, arguing that they knew about the concurrent representation and so waived McDermott's conflicts. But, McDermott clearly failed to obtain the required informed written consent from TransPerfect, Mr. Shawe or Ms. Elting in April 2011, when Ms. McCaffrey moved to McDermott, or at any subsequent point. In April 2011, Ms. McCaffrey obtained only file transfer forms from Mr. Shawe and Ms. Elting, authorizing the transfer of their files to McDermott. These forms, however, were sent by Ms. McCaffrey on her personal letterhead, not McDermott letterhead, and made no mention of conflicts generally or the specific conflicts that exist here and for which express written consent is required. Further, neither TransPerfect, Mr. Shawe nor Ms. Elting has any record or recollection of receiving an engagement letter from McDermott, and McDermott has produced only engagement letters dated after the file transfer forms and that, despite having sections for Mr. Shawe and Ms. Elting to sign, conspicuously lack any such counter-signatures. Moreover, these letters contain only boilerplate, generic language and fail to identify or explain the details of the conflicts or provide any information specifying how the conflicts are detrimental to the interests of Mr. Shawe, Ms. Elting or TransPerfect. In short, they fall far short of the rigid disclosure requirements for informed consent under California Rule of Professional Conduct 3-310, which mandates that a valid conflicts waiver must inform the client in writing of "the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client." See California Rule of Professional Conduct 3-310(A).

Immediately upon TransPerfect discovering it, we advised McDermott of the conflict by letter dated May 15, 2012 and requested that McDermott explain why it should not be required to

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Hon. Joseph C. Spero
May 17, 2012
Page 4

withdraw from the Action. Later that same day, we requested MotionPoint's consent to a stay of discovery pending further investigation. McDermott refused any stay, and although its investigation was incomplete, asserted that scheduled depositions should nonetheless proceed. Given these circumstances, TransPerfect postponed a deposition scheduled for May 16 to await a more substantive response from McDermott and sought McDermott's consent to present this issue jointly to the Court on an emergent basis. On May 16, McDermott provided copies of the document transfer notices and unsigned retention letters discussed above and confirmed that it had not located a retention agreement signed by Mr. Shawe, Ms. Elting, or TransPerfect, or any other executed document containing a written waiver. Asserting that these documents are sufficient to justify its continued representation of MotionPoint in this Action against its clients, McDermott again refused to agree to a stay. We thus again wrote to McDermott on May 16, 2012, advising McDermott that their response was unacceptable and that any further discovery would prejudice TransPerfect, Mr. Shawe and Ms. Elting, as clients of McDermott, and that TransPerfect intended to seek emergency relief from the Court to postpone the remaining depositions and other pending discovery. The parties' correspondence, including the unsigned retention letters and other materials from McDermott, is attached as Exhibit B hereto.

In sum, McDermott, which represents TransPerfect, Mr. Shawe and Ms. Elting, has taken positions adverse to TransPerfect, Mr. Shawe and Ms. Elting in this Action. Moreover, even assuming this conflict was waivable, which is not the case, McDermott has produced no document(s) demonstrating that TransPerfect, Mr. Shawe or Ms. Elting provided informed written consent to waive the conflicts. Accordingly, we respectfully request this Court stay discovery in this matter pending a determination on the motion to disqualify to avoid any further prejudice to Plaintiffs.

Respectfully submitted,

Douglas E. Lumish

Enclosures

cc: Joel Freed, Esq. (w/encl.)