# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Munich
New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Philip Ou
Attorney at Law
pou@mwe.com
650.815.7434

May 18, 2012
**BY ELECTRONIC FILING**

The Honorable Joseph C. Spero
United States District Court
    for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

*Re:*     *TransPerfect Global, Inc., et al v. MotionPoint Corporation*
          Case No. CV-10-02590 CW (JCS)
          Response Letter to May 17, 2012 Letter Requesting Stay (Dkt No. 129)

Dear Judge Spero:

We are counsel to Defendant MotionPoint Corporation ("MotionPoint" or "Defendant") in the above reference matter (the "Action") and write in response to the May 17, 2012 letter (Dkt No. 129) (the "Kasowitz Letter") filed yesterday by Kasowitz Benson Torres & Friedman ("Kasowitz"), counsel for Plaintiffs TransPerfect Global, Inc., TransPerfect Translations International, Inc. and Translations.com (collectively "Plaintiffs" or "TransPerfect").

The Kasowitz Letter is replete with errors and comes over a year after the alleged conflict was known to TransPerfect, tactically coinciding with the eve of the close of discovery and with continued heel-dragging by TransPerfect on promises to comply with its discovery obligations.

McDermott does not represent and has not represented TransPerfect.  McDermott has done estate planning work on behalf of Philip Shawe and Elizabeth Elting, the co-CEO's of TransPerfect.  Carlyn McCaffrey, a former partner at Weil Gotshal & Manges ("Weil") and now with McDermott, provided estate planning services to Mr. Shawe and Ms. Elting before joining McDermott.  She asked Mr. Shawe and Ms. Elting if each wanted to move their estate planning work to McDermott where she was relocating.  They both agreed.

After transitioning to McDermott, Ms. McCaffrey sent Mr. Shawe and Ms. Elting engagement letters.  No letter was sent to TransPerfect.  Indeed, the engagement letters specifically disclaimed representation of any other person or entity affiliated with Mr. Shawe or Ms. Elting.  At no point has McDermott done any work on behalf of TransPerfect, and McDermott's invoices to Mr. Shawe and Ms. Elting provide confirmation of that.  *See,e.g.,* Kasowitz Letter, Exh. A [Dkt. 129-1].

U.S. practice conducted through McDermott Will & Emery LLP.

**275 Middlefield Road Suite 100 Menlo Park California 94025-4004  Telephone: 650.815.7400  Facsimile: 650.815.7401   www.mwe.com**

Even while at Weil, Ms. McCaffrey never performed any work on behalf of TransPerfect. She did, however, provide estate planning advice to Ms. Elting, which included the preparation of certain estate planning documents, as well as a buy-sell agreement to address Ms. Elting's estate planning concerns.   To Ms. McCaffrey's knowledge, the draft agreement was never executed.

While the Kasowitz letter refers to "TransPerfect's shareholder's agreement and a buy-sell agreement," there in fact was only the single, unexecuted buy-sell agreement drafted for Ms. Elting's estate planning purposes.  The agreement is identified in "Matter 0012" of the invoice as "Shawe Elting Buy Sell Agreement".   McDermott in no way represented TransPerfect in preparing that agreement.  No confidential information concerning TransPerfect's finances was received in connection with it.  Other than revising the unexecuted buy-sell agreement, the only work performed by McDermott for Mr. Shawe or Ms. Elting has been to provide other estate planning services for Mr. Shawe.

The Kasowitz Letter incorrectly asserts that McDermott remitted its invoices to TransPerfect.  All of McDermott's invoices involving Mr. Shawe's estate planning were to Mr. Shawe.  The March 22, 2012 invoice dealing with the Shawe Elting Buy-Sell Agreement was to Mr. Shawe and Ms. Elting.  That the invoices were mailed to Mr. Shawe at his business address does not transform the personal estate planning work into a representation of TransPerfect.

The conflict allegations will be more fully addressed once the tactical disqualification motion is directly before the Court.   The suggestion in the Kasowitz Letter that either McDermott or MotionPoint does not want expeditious handling of those allegations is also incorrect.  To the contrary, both McDermott and MotionPoint look forward to an expedited briefing schedule to resolve that matter as quickly as possible.

But there is no need for a stay and certainly no reason for any delay that would cause movement of the scheduled trial date.  MotionPoint should not be prejudiced by additional delay beyond that which has already come about as a result of TransPerfect's unilateral refusals and failures to go forward with depositions and to provide long promised but unfulfilled supplemental document production and interrogatory responses.

That said, because of the *de facto* stay that TransPerfect has already granted itself, MotionPoint should in any event be accorded a scheduling adjustment giving it a reasonable time window for completion of outstanding discovery.

To the extent that Your Honor is available for and would like a prompt telephone conference to discuss the foregoing, lead counsel for MotionPoint will make every effort to be available at Your Honor's convenience.

Respectfully Submitted,
 MCDERMOTT WILL & EMERY LLP


 /s/      Joel M. Freed
 JOEL M. FREED
 ANTHONY R. DE ALCUAZ (SBN 65599)
 PHILIP OU (SBN 259896)
 ALEXANDER OTT (admitted *pro hac vice)*

 *Attorneys for Defendant/Counterclaim
 Plaintiff MotionPoint Corporation*

Dated:  May 18, 2012