CHARLES K. VERHOEVEN (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
AMY H. CANDIDO (Bar No. 237829)
amycandido@quinnemanuel.com
EMMA E. MANN-MEGINNISS (Bar No. 286656)
emmamann-meginniss@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4624
Tel:  (415) 875-6600; Fax: (415) 875-6700

ROBERT W. STONE (Bar No. 163513)
robertstone@quinnemanuel.com
MEGHAN BORDONARO (Bar No. 269236)
meghanbordonaro@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Tel:  (650) 801-5000; Fax: (650) 801-5100

RICHARD W. ERWINE (*pro hac vice*)
richarderwine@quinnemanuel.com
MATTHEW D. ROBSON (*pro hac vice*)
matthewrobson@quinnemanuel.com
GREGORY C. WYCKOFF (*pro hac vice*)
gregorywyckoff@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd  Floor
New York, New York 10010
Tel:  (212) 849-7000

Attorneys for Defendant/Counterclaim-Plaintiff
MotionPoint Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| TRANSPERFECT GLOBAL, INC., TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC., AND TRANSLATIONS.COM, INC.,<br><br>           Plaintiffs/Counterclaim-<br>           Defendants,<br><br>    vs.<br><br>MOTIONPOINT CORPORATION,<br><br>           Defendant/Counterclaim-<br>           Plaintiff. | CASE NO. CV 10-02590 CW (JCS)<br><br>**MOTIONPOINT'S MOTIONS IN LIMINE** |

# TABLE OF CONTENTS

**Page**

I.   MOTION *IN LIMINE* NO. 1 TO PRECLUDE ALL REFERENCES TO THE
     REEXAMINATIONS OF MOTIONPOINT'S PATENTS PURSUANT TO
     FEDERAL RULES OF EVIDENCE 402 AND 403 ........................................................ 1

    1.   Evidence Concerning Concurrent Reexamination Proceedings Is
          Irrelevant Under Federal Rule of Evidence 402 ............................................ 1

    2.   The Probative Value Of Such Evidence Does Not Outweigh The
          Prejudicial Impact Under Federal Rule of Evidence 403 ............................... 2

II.  MOTION *IN LIMINE* NO. 2 TO PRECLUDE ALL REFERENCES TO THE
     ALLEGED TRESPASS ON TRANSPERFECT PROPERTY BY UNKNOWN
     PERSONS ....................................................................................................................... 3

III. MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE SUGGESTING THAT
     MOTIONPOINT ATTEMPTED TO LEARN ABOUT ITS COMPETITORS
     THROUGH SUBTERFUGE ....................................................................................... 4

IV.  MOTION *IN LIMINE* NO. 4 TO PRECLUDE EVIDENCE AND ARGUMENT
     RELATING TO WIZTOM FOR THE WEB VERSION 4 WHITE PAPER
     BECAUSE IT DOES NOT QUALIFY AS A "PRINTED PUBLICATION"
     UNDER 35 U.S.C. §§ 102(B) OR (A) ........................................................................ 5

V.   MOTION *IN LIMINE* NO. 5 TO PRECLUDE EVIDENCE AND ARGUMENT
     CONCERNING THE JUJITSU PRESENTATION BECAUSE IT FAILS TO
     QUALIFY AS PRIOR ART UNDER ANY SUB-SECTION OF 35 U.S.C. § 102 ............ 7

VI.  MOTION *IN LIMINE* NO. 6 TO PRECLUDE EVIDENCE OR SUGGESTIONS
     THAT MOTIONPOINT FAILED TO DISCLOSE PRIOR ART TO THE PATENT
     OFFICE ........................................................................................................................... 7

VII. MOTION *IN LIMINE* NO. 7 TO PRECLUDE EVIDENCE AND ARGUMENT
     RELATING TO WIZTOM AND WEBBUDGET BECAUSE THEY FAIL TO
     QUALIFY AS PRIOR ART UNDER 35 U.S.C. § 102(G) .......................................... 8

    A.   WizTom was not Invented in the United States ........................................ 9

    B.   WebBudget was not Invented in the United States ................................... 9

VIII. MOTION *IN LIMINE* NO. 8 TO PRECLUDE UNCORROBORATED
     EVIDENCE AND ARGUMENT RELATING TO IDIOM WORLDSERVER ............... 10

    A.   Claims that WorldServer Did Not Require WorldTags to Crawl a Website
          are Based on Uncorroborated Oral Testimony and Lack Foundation .................... 11

    B.   Claims that WorldServer Performed "Crawling" Over the Internet are Based
          on Uncorroborated Oral Testimony and Lack Foundation ..................................... 11

IX.   MOTION *IN LIMINE* NO. 9 TO PRECLUDE UNAUTHENTICATED
      PRINTOUTS FROM ARCHIVE WEBSITE ................................................... 12

X.    MOTION *IN LIMINE* NO. 10 TO PRECLUDE TRANSPERFECT'S RELIANCE
      ON THE DOCTRINE OF EQUIVALENTS AS UNTIMELY AND
      SUBSTANTIVELY DEFICIENT....................................................................... 14

XI.   MOTION *IN LIMINE* NO. 11 TO PRECLUDE DR. CLARK FROM PROVIDING
      INFRINGEMENT OPINIONS AT TRIAL ON CERTAIN MEANS-PLUS-
      FUNCTION LIMITATIONS ........................................................................... 18

XII.  MOTION *IN LIMINE* NO. 12 TO PRECLUDE TRANSPERFECT FROM
      RAISING SECONDARY CONSIDERATIONS OF NON-OBVIOUSNESS .................. 20

XIII. MOTION *IN LIMINE* NO. 13 TO PRECLUDE EVIDENCE OR REFERENCE TO
      THE RELATIVE WEIGHT OF VARIOUS METHODS OF MEASURING A
      REASONABLE ROYALTY RATE FOR PURPOSES OF PATENT DAMAGES ......... 21

XIV.  MOTION *IN LIMINE* NO. 14 TO PRECLUDE ARGUMENT BY
      TRANSPERFECT AS TO WILLFUL INFRINGEMENT.................................. 22

XV.   MOTION *IN LIMINE* NO. 15 TO PRECLUDE EVIDENCE OF OR REFERENCE
      TO ELIZABETH ELTING ........................................................................... 24

XVI.  AGREED MOTION IN LIMINE NO. 16 TO PRECLUDE ALL REFERENCE TO
      THE DISQUALIFICATION OF MCDERMOTT, WILL & EMERY LLP...................... 24

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4   *1st Medial, LLC v. Electronic Arts, Inc.,*
        694 F.3d 1367 (Fed. Cir. 2012) ............................................................................8
5
6   *Acoustical Design, Inc. v. Control Elecs. Co.,*
        932 F.3d 939, 942 (Fed. Cir.) ...............................................................................1
7   *Afga Corp. v. CREO Prods. Inc.,*
        451 F.3d 1366 (Fed. Cir. 2006) ............................................................................8
8
9   *Apotex USA, Inc. v. Merck & Co., Inc.,*
        254 F.3d 1031 (Fed. Cir. 2001) ............................................................................9
10  *Aquatex Ind., Inc. v. Techniche Solutions,*
        479 F.3d 1320 (Fed. Cir. 2007) ..........................................................................18
11
12  *B. Braun Medical Inc., v. Abbott Laboratories,*
        124 F.3d 1419 (Fed. Cir. 1997) ..........................................................................19
13  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.,*
        682 F.3d 1003, 1006-07 (Fed. Cir. 2012) ......................................................22, 23
14
15  *Callaway Golf Co. v. Acushnet Co.,*
        576 F.3d 1331 (Fed. Cir. 2009) ............................................................................2
16  *Chamilia LLC v. Pandora Jewelry LLC,*
        85 U.S.P.Q. 2d 1169 (S.D.N.Y. 2007) ...............................................................13
17
18  *Cordance Corp. v. Amazon,*
        623 F. Supp.2 (D.Del. 2009) ..............................................................................23
19  *Cordis Corp. v. Boston Scientific Corp.,*
        2010 WL 331792 (D.Del. 2010) .........................................................................23
20
21  *Creagri, Inc. v. Pinnaclife Inc., LLC,*
        2012 WL 5389775 (N.D.Cal. 2012) ...................................................................16
22  *Dow  Chemical Co. v. Mee Industries, Inc.,*
        341 F.3d 1370 (Fed. Cir. 2003) ..........................................................................10
23
24  *Genentech v. Amgen,*
        289 F.3d 761 (Fed. Cir. 2002) ............................................................................15
25  *General Elec. Co. v. Joiner,*
        522 U.S. 136 (1997) ............................................................................................18
26
27  *Graham v. John Deere Co.,*
        383 U.S. 1 (1965) ................................................................................................20

28

Hewlett-Packard Co. v. Mustek Sys., Inc.,
340 F.3d 1314 (Fed. Cir. 2003) ........................................................................17

Hoechst Celanese Corp. v. BP Chemicals, Ltd.,
78 F.3d 1575 (Fed. Cir. 1996) ...........................................................................1

In re Homestore.com, Inc., Securities Litigation,
347 F. Supp. 2d 769 (C.D.Cal. 2004) ...............................................................12

Honeywell Intern., Inc. v. Universal Avionics Sys. Corp.,
347 F. Supp. 2d 129 (D. Del. 2004) ..........................................................17, 18

iLOR LLC v. Google, Inc.,
631 F.3d 1372 (Fed. Cir. 2011) ........................................................................22

InterTrust Tech.'s Corp. v. Microsoft Corp.,
2003 WL 223120174 (N.D.Cal. 2003) .............................................................15

Internet Specialities West, Inc. v. ISPWest,
2006 WL 4568796 (C.D.Cal. 2006) ..................................................................13

Kimberly-Clark Corp. v. Johnson & Johnson,
745 F.2d 1437 (Fed. Cir. 1984) ..........................................................................9

Lacks Industries, Inc. v. McKechnie Vehicle Components USA, Inc.,
322 F.3d 1335 (Fed. Cir. 2003) ........................................................................11

Lear Siegler v. Sealy Mattress Co. of Mich., Inc.,
873 F.2d 1422 (Fed. Cir. 1989) ........................................................................18

Lucent Technologies, Inc. v. Gateway, Inc.,
580 F.3d 1301 (Fed. Cir. 2009) ........................................................................21

MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.,
2004 WL 5363616 (N.D.Cal. 2011) ..................................................................15

Malta v. Schulmerich Carillons, Inc.,
952 F.2d 1320 (Fed. Cir. 1991) ........................................................................17

Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,
2010 WL 583960 (N.D.Cal. Feb. 16, 2010) .....................................................22

Mycogen Plant Science, Inc. v. Monsanto Co.,
243 F.3d 1316 (Fed. Cir. 2001) ..........................................................................9

Myspace, Inc. v. Graphon Corp.,
732 F. Supp. 2d 915 (N.D. Cal. 2010) ...............................................................8

Network Commerce, Inc. v. Microsoft Corp.,
422 F.3d 1353 (Fed. Cir. 2005) ........................................................................17

Norian Corp. v. Stryker Corp.,
363 F.3d 1321 (Fed. Cir. 2004) ..........................................................................6

*Novak v. Tucows Inc.*,
    2007 U.S. Dist. LEXIS 21269 (E.D.N.Y. Mar. 26, 2007) ..........................................13

*Odetics v. Storage Tech. Corp.*,
    185 F.3d 1259 (Fed. Cir. 1999) ..........................................................................19

*In re Omeprazole Patent Lit.*,
    536 F.3d 1361 (Fed. Cir. 2008) ............................................................................7

*OptimumPath, LLC v. Belkin Intern., Inc.*,
    2011 WL 1399257 (N.D.Cal. 2011)..............................................................15, 16

*Oracle America, Inc. v. Google Inc.*,
    2012 WL 1189898 (N.D. Cal. 2012)......................................................................3

*Presidio Components Inc. v. Americal Technical Ceramics Corp.*,
    2009 WL 3822694 (S.D. Cal. 2009) ......................................................................3

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    2008 WL 5411564 (N.D.Cal. 2008)......................................................................16

*Ruiz v. A.B. Chance Co.*,
    234 F.3d 654 (Fed. Cir. 2000) ..........................................................................20

*In re Seagate Techs., Inc.*,
    497 F.3d 1360 (Fed. Cir. 2007) ....................................................................22, 23

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
    2010 WL 457142 (E.D.Tex. 2010) ......................................................................17

*Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
    620 F.3d 1305 (Fed. Cir. 2010)............................................................................23

*Solvay SA v. Honeywell Intern., Inc.*,
    622 F.3d 1367 (Fed. Cir. 2010) ............................................................................9

*Speedplay, Inc. v. Behop, Inc.*,
    211 F.3d 1245 (Fed. Cir. 2000) ..........................................................................19

*St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, M.D., LLC*,
    2006 WL 1320242 (M.D. Fla. May 12, 2006) ......................................................13

*TWM Mfg. Co. v. Dura Corp.*,
    789 F.2d 895 (Fed. Cir. 1986) ..........................................................................21

*Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*,
    2004 WL 2367740 (N.D. I11. Oct. 15, 2004) ......................................................13

*Transamerica Live Ins. Co. v. Lincoln Nat. Life Ins. Co*,
    597 F. Supp. 2d 897 (N.D. Iowa 2009) ..................................................................3

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)............................................................................23

*Verlander v. Garner*,
    348 F.3d 1359 (Fed. Cir. 2003) .......................................................................22

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
    2011 WL 4079223 (N.D. Cal. 2011) ................................................................3

*Wady v. Provident Life and Accident Ins. Co. of America*,
    216 F. Supp. 2d 1060 (C.D.Cal. 2002) ...........................................................12

*Woodland Trust v. Flowertree Nursery, Inc.*,
    148 F.3d 1368 (Fed. Cir. 1998) .......................................................................10

### <u>Statutes</u>

35 U.S.C. § 102 ........................................................................................................7

35 U.S.C. §§ 102(a) ...........................................................................................5, 6

35 U.S.C. §§ 102(b) ...........................................................................................5, 6

35 U.S.C. section 102(g)(2) .............................................................................8, 10

FRCP 403 .................................................................................................................5

Fed. R. Evid. 401 ....................................................................................................7

Fed. R. Evid. 402 ..........................................................................................1, 2, 4, 7

Fed. R. Evid. 403 ...........................................................................................1, 4, 7

Fed.R.Evid. Rule 901 ............................................................................................13

Fed.R.Evid. 901(a) ................................................................................................12

Patent Local Rules. Patent Local Rule 3-1 ........................................................16

Patent Local Rules. Patent Local Rule 3-1(c) ....................................................16

Patent Local Rules. Patent Local Rule 3-1(e) ...............................................15, 16

**I.    MOTION *IN LIMINE* NO. 1 TO PRECLUDE ALL REFERENCES TO THE REEXAMINATIONS OF MOTIONPOINT'S PATENTS PURSUANT TO FEDERAL RULES OF EVIDENCE 402 AND 403**

The Court should preclude TransPerfect from offering evidence relating to or referencing the pending reexamination proceedings for MotionPoint's asserted patents; such evidence is not relevant under Federal Rule of Evidence 402 and is highly prejudicial to MotionPoint under Federal Rule of Evidence 403.

In parallel with this litigation, TransPerfect initiated *inter partes* reexamination of MotionPoint's asserted patents in March of 2012.  Those reexamination proceedings are ongoing and no final office actions have issued.  The non-final rejections relied upon by TransPerfect are preliminary in nature and have no bearing on this action.

> ### 1.    Evidence Concerning Concurrent Reexamination Proceedings Is Irrelevant Under Federal Rule of Evidence 402

The Court should preclude TransPerfect from referencing the reexamination proceedings and the examiner's initial rejections because such evidence is not relevant under Rule 402. Preliminary decisions and actions by the PTO in the course of a reexamination proceeding are not probative of invalidity.  For example, in *Hoechst Celanese Corp. v. BP Chemicals, Ltd.*, 78 F.3d 1575 (Fed. Cir. 1996), the Federal Circuit held that evidence that the patent examiner had granted a reexamination request was not relevant to show that the patent was invalid or the infringer's infringement was not willful.  *Id.* at 1584.  In that case, defendant BP requested reexamination of the asserted Celanese patent six months before trial, and the proceedings went forward concurrently.  *Id*.  BP argued that the examiner's grant of its reexamination request was evidence of "the closeness of the question" of the patent's validity, supporting its position that its infringement was not willful.  *Id*.  The Federal Circuit rejected this argument because "the grant by the examiner of a request for reexamination is not probative of unpatentability" and "does not establish a likelihood of patent invalidity.  *Id.* (citing *Acoustical Design, Inc. v. Control Elecs. Co.*, 932 F.3d 939, 942 (Fed. Cir.), *cert. denied*, 502 U.S. 863 (1991)).  So too, here, evidence that TransPerfect's requests for reexamination of the MotionPoint patents were granted is not probative of the validity of MotionPoint's patents, nor  are other references or evidence relating to those

ongoing proceedings relevant.  Moreover, where, as here, reexamination proceedings are ongoing and no final office action has issued, the examiner's initial, non-final rejections are non-binding and not relevant to the jury's independent deliberations on the factual issues underlying TransPerfect's invalidity defenses.  Thus, the Court should preclude any reference to the ongoing reexamination proceedings under Rule 402.

2.      *The Probative Value Of Such Evidence Does Not Outweigh The Prejudicial Impact Under Federal Rule of Evidence 403*

To the extent evidence relating to the ongoing reexamination proceedings has any probative value, that evidence should nevertheless be precluded to avoid unfairly prejudicing MotionPoint and confusing the jury.  In *Callaway Golf Co. v. Acushnet Co.,* 576 F.3d 1331 (Fed. Cir. 2009), *cert. denied*, 130 S. Ct. 1525 (2010), the Federal Circuit upheld a district court's exclusion of evidence of parallel, non-final *inter partes* reexamination proceedings because those proceedings were not binding and the evidence would be "really confusing" to the jury.  *Id*. at 1342.  In that case, defendant Acushnet sought to introduce evidence that during the course of the reexamination proceedings, before trial, the examiner rejected each claim of the asserted patents, relying on essentially the same prior art that Acushnet would rely on at trial.  *Id*.  The Federal Circuit agreed that the evidence was properly excluded, and held:

> The non-final re-examination determinations were of little relevance to the jury's independent deliberations on the factual issues underlying the question of obviousness.  In contrast, the risk of jury confusion if evidence of the non-final PTO proceedings were introduced was high.  The district court did not abuse its discretion in concluding that the prejudicial nature of evidence concerning the ongoing parallel reexamination proceeding outweighed whatever marginal probative or corrective value it might have had in this case.

*Id.* at 1343.

Other district courts have repeatedly held that evidence concerning ongoing reexamination proceedings is inadmissible because the potential for prejudice and jury confusion far outweighs the probative value of such evidence. For example, the District Court for the Northern District of Iowa excluded evidence of pending reexamination proceedings, noting that such evidence is not probative of validity, and finding that "there is simply no 'good purpose' here for which such

evidence could be offered." *Transamerica Live Ins. Co. v. Lincoln Nat. Life Ins. Co*, 597 F. Supp. 2d 897, 907-908 (N.D. Iowa 2009).  Likewise, the District Court for the Southern District of California excluded all evidence relating to ongoing reexamination proceedings pursuant to Federal Rule of Evidence 403, finding that the proceedings were incomplete and had "very little probative value," while "the prejudicial effect as well as potential for jury confusion is great." *Presidio Components Inc. v. Americal Technical Ceramics Corp.*, 2009 WL 3822694, *1-3 (S.D. Cal. 2009). Especially where, as here, the reexamination proceedings are *non-final* and *not binding*, the prejudicial potential of such evidence substantially outweighs its relevance.  *See id.*; *compare Oracle America, Inc. v. Google Inc.*, 2012 WL 1189898, *3 (N.D. Cal. 2012) (Alsup, J.) (admitting evidence of final examiner rejections but noting that "the initiation of reexamination and the customary first office action prove little); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 2011 WL 4079223 (N.D. Cal. 2011) (Spero, J.) (admitting evidence that patent survived a reexamination challenge over the prior art asserted in the litigation).

Allowing the jury to hear that MotionPoint's patents have been called into question by the PTO may influence the jury's application of the presumption of validity or lead the jury to defer to the examiner's perceived expertise rather than evaluating the facts independently.  The risk for juror confusion and the potential for prejudice to MotionPoint substantially outweighs any probative value that the examiner's initial, non-binding findings may have.  Accordingly, the Court should preclude TransPerfect from referencing or offering evidence relating to the ongoing reexaminations of MotionPoint's patents.

## II. MOTION *IN LIMINE* NO. 2 TO PRECLUDE ALL REFERENCES TO THE ALLEGED TRESPASS ON TRANSPERFECT PROPERTY BY UNKNOWN PERSONS

MotionPoint moves to exclude evidence or reference to the alleged trespass of TransPerfect's West Palm Beach, Florida office on or around March 7, 2012.  During a number of depositions of MotionPoint witnesses, TransPerfect implied through its questioning that MotionPoint might have knowledge or information about the alleged trespass; TransPerfect even showed a number of MotionPoint deponents security video footage.  Not only did these witnesses

1    testify under oath that they had no information about the trespass, but TransPerfect lacks any

2    evidence connecting anyone from MotionPoint employees to the alleged trespass.

3            TransPerfect questioned a number of deposition witnesses about a security videotape taken

4    at its offices in West Palm Beach, Florida.  *See, e.g.*, Ex. 1,[1] Birdsey Tr. at 237:10-239:6; Ex. 2,

5    Rubenstein Tr. at 105:11-112:9.  The video allegedly showed footage of someone who came into

6    TransPerfect's office, impersonated Matthew Hauser of TransPerfect, and left in a red Mustang

7    convertible.  *See id.*  None of the MotionPoint representatives that TransPerfect questioned could

8    identify this person, nor is there any evidence whatsoever to suggest that this person was a

9    MotionPoint employee, agent, or otherwise affiliated with MotionPoint.

10           This allegation is unsupported by fact and wholly irrelevant to the alleged infringement of

11   TransPerfect's patents.  TransPerfect has not suggested, nor could it, that the alleged trespass

12   related to its patented technology.  Moreover, the alleged trespass, if it happened at all, occurred

13   long after MotionPoint and TransPerfect developed their patented technologies at issue in this

14   case.  Therefore, this line of questioning and any related evidence or testimony should be excluded

15   under Federal Rule of Evidence 402 because it is not relevant and will mislead the jury.

16           Furthermore, TransPerfect's bare allegation that a MotionPoint employee might have

17   broken into one of TransPerfect's offices is highly prejudicial in and of itself.  It is also prejudicial

18   to the extent that it might suggest to the jury that MotionPoint is more likely to have copied

19   TransPerfect's technology or infringed TransPerfect's patents.  Accordingly, this evidence should

20   be excluded under Federal Rule of Evidence 403.

21   **III.    MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE SUGGESTING THAT
             MOTIONPOINT ATTEMPTED TO LEARN ABOUT ITS COMPETITORS**
22   **     THROUGH SUBTERFUGE**

23           Based on TransPerfect's questioning of multiple MotionPoint witnesses, TransPerfect may

24   attempt to suggest at trial that MotionPoint learned about TransPerfect's infringing products

25   through treachery and duplicity.  For example, TransPerfect repeatedly questioned MotionPoint's

26   _____

27       [1]  Unless otherwise noted, citations to Exhibits in this pleading refer to the exhibits to the
     Declaration of Meghan E. Bordonaro, filed concurrently herewith.

28

officers about alleged efforts to anonymously obtain information from TransPerfect about its products, implying that MotionPoint was acting in bad faith because it did not advertise the fact that it was MotionPoint when seeking the relevant information.  (*See generally* Ex. 3, TransPerfect's Interrogatory No. 24; *see also* Ex. 4, Fleming Tr. at 201:20-206:9, 207:2-211:19 (questioning Mr. Fleming about a phone call made by a non-MotionPoint employee and Mr. Adam Rubenstein to Translations.com); Ex. 5, Travieso Tr. at 214:3-220:13 (questioning Mr. Travieso about MotionPoint employees registering for webinars using non-MotionPoint email addresses)).  MotionPoint moves to exclude evidence or references suggesting MotionPoint tried to learn about its competitors through subterfuge.

Evidence of the manner in which MotionPoint attempted to gain information about TransPerfect's infringing product is irrelevant to this matter.  This evidence does not tend to prove or disprove whether MotionPoint infringed TransPerfect's patents-in-suit, or whether those patents are invalid.  Further, this evidence is irrelevant to TransPerfect's willfulness claim.  The relevant efforts to gain information about TransPerfect occurred *prior to* TransPerfect's purchase of the patents that it now asserts.  Accordingly, the Court should exclude this evidence under Federal Rule of Evidence 402.

Moreover, any inference that MotionPoint improperly sought to obtain information about TransPerfect's products, especially an untrue inference such as here, is prejudicial to MotionPoint and should be excluded.  Fed. R. Evid. 403.

## IV.   MOTION *IN LIMINE* NO. 4 TO PRECLUDE EVIDENCE AND ARGUMENT RELATING TO WIZTOM FOR THE WEB VERSION 4 WHITE PAPER BECAUSE IT DOES NOT QUALIFY AS A "PRINTED PUBLICATION" UNDER 35 U.S.C. §§ 102(B) OR (A)

TransPerfect should be precluded from offering the WizArt Company's "WizTom For The Web Version 4 White Paper" (Ex. 6) as 35 U.S.C. §§ 102(b) or 102(a) prior art at trial.  There is no evidence the Version 4 White Paper was ever publically available, much less publically available prior to the filing date of MotionPoint's patents.  Indeed, TransPerfect's own sponsoring witness for this document testified that it contains inaccuracies and could have been a draft that would not have been distributed to customers.  Ex. 7, Senegas Tr. at 227:21-22; 228:16-19.

1  Further, the document is suspect on its face.  It bears a copyright year (1999) inconsistent with the

2  version of WizTom (Version 4) indicated on its cover, deepening the mystery of whether this

3  document ever saw the light of day.  *Compare* Ex. 6 (1999 copyright) *with* Ex. 7 at 224:4-17

4  (testifying that Version 4 of WizTom was released after January 2005).  Because TransPerfect

5  cannot show that this document was publically available prior to the filing date of MotionPoint's

6  patents, it should be excluded.

7       Whether a document is a printed publication under 35 U.S.C. §§ 102(a) or (b) is a question

8  of law.  *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1331 (Fed. Cir. 2004).  In order for

9  TransPerfect to establish that the Version 4 White Paper is a "printed publication," it must show

10  by *clear and convincing evidence* that the paper was accessible to the public prior to the filing date

11  of the MotionPoint patents, February 21, 2003.  *Id*.  This it cannot do.

12       Mr. Senegas's deposition testimony confirms that he does not know whether or when the

13  Version 4 White Paper became publically available.  Mr. Senegas testified that the Version 4

14  White Paper contains an inaccurate version number and may have actually been a draft document:

15       Q.    Could it be that this document Exhibit 28 was just a draft of the WizTom
             for the Web white paper and that the final version actually specified the
16             correct version of WizTom for the Web?
       A.    ***That's one possibility***.
17       . . .
       Q.    Okey
18       A.    So that's a possibility.  ***Maybe it was a draft*** and this was a mistake.

19  Ex. 7 at 226:16-227:22.  This admission dooms the Version 4 White Paper's viability as a 102(a)

20  or (b) printed publication because, as Mr. Senegas also testified, WizArt did ***not*** distribute draft

21  white papers to customers.  Ex. 7 at 228:16-19 ("Q.  But is it true that WizArt wouldn't distribute

22  draft copies of their white papers to customers?  ***A. That's true***.").  To remove all doubt, Mr.

23  Senegas testified that he did not know whether WizArt actually gave the Version 4 Whitepaper to

24  customers.  Ex. 7 at 227:24-228:5 ("A. The other possibility is that we actually gave that to

25  customers and then fixed that later, okay.  Q.  But sitting here today, you don't know which of

26  those possibilities is what happened with respect to this document?  A.  ***No, I don't know*** . . . .").

27       In light of Mr. Senegas's testimony, TransPerfect cannot prove by clear and convincing

28  evidence that the Version 4 Whitepaper was publically available prior to the filing date of the

MotionPoint patents.  Accordingly, this Court should preclude TransPerfect from relying on this reference as 102(a) or 102(b) prior art.  *See In re Omeprazole Patent Lit.*, 536 F.3d 1361, 1381 (Fed. Cir. 2008) (upholding finding that defendant failed to prove that brochures were printed publications where employee of the company that printed the brochures could not provide information about the availability of the brochures prior to the critical date.)

**V.     MOTION *IN LIMINE* NO. 5 TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING THE JUJITSU PRESENTATION BECAUSE IT FAILS TO QUALIFY AS PRIOR ART UNDER ANY SUB-SECTION OF 35 U.S.C. § 102**

The Court should preclude all evidence and argument relating to the Jujitsu presentation, *see, e.g.,* Ex. 8, because that presentation is dated after the conception date of the asserted MotionPoint patents, and does not qualify as prior art under any sub-section of 35 U.S.C. section 102.  TransPerfect seeks to rely on the Jujitsu presentation, dated ***September, 2003***, to support its invalidity defenses.  As set forth in detail in MotionPoint's Trial Brief, filed herewith, the claimed MotionPoint inventions were conceived of at least as early as ***February, 2003***; thus, the Jujitsu presentation post-dates the priority dates for the asserted claims and does not qualify as prior art under any section of 35 U.S.C. § 102.  Because the Jujitsu presentation does not constitute prior art, it is not relevant and should be excluded.[2]  Fed. R. Evid. 401, 402.  To the extent the Jujitsu presentation has any probative value to the other issues in the case, evidence relating to it should nevertheless be precluded to prevent jury confusion and to avoid wasting time.  Fed. R. Evid. 403.

**VI.    MOTION *IN LIMINE* NO. 6 TO PRECLUDE EVIDENCE OR SUGGESTIONS THAT MOTIONPOINT FAILED TO DISCLOSE PRIOR ART TO THE PATENT OFFICE**

The Court should preclude TransPerfect from offering evidence or argument that MotionPoint did not disclose certain prior art references to the Patent Office because such

---

[2]  TransPerfect's expert Dr. Clark claims that the Jujitsu presentation "describes features of the WizTom Software that were on sale and/or in public use in the United States prior to February 24, 2003, and thus supports that disclosure," Ex. 9, but the deposition testimony of Tex Texin and Frederic Senegas of WizTom confirms that WizTom never used automated crawling as described in the asserted claims. Ex. 10, Texin Tr. at 100:21-101:9, 164:23-165:1, 165:15-23; Ex. 7, Senegas Tr. 208:19-211:5; 171:25-172:17.  Accordingly, TransPerfect lacks basis to offer Jujitsu as evidence of features of the WizTom Software on sale or in public use prior to February 24, 2003.

evidence lacks probative value and is unduly prejudicial and confusing under Federal Rules of Evidence 402 and 403.  Although evidence of a patent holder's deliberate failure to disclose prior art to the Patent Office is relevant where the infringer has raised a defense that the patent is unenforceable due to inequitable conduct, *see, e.g., 1ˢᵗ Medial, LLC v. Electronic Arts, Inc.*, 694 F.3d 1367, 1372-73 (Fed. Cir. 2012), here TransPerfect has raised no such defense.  Dkt. 102 (TransPerfect's Answer to MotionPoint's Second Amended Counterclaims).  Accordingly, evidence that certain prior art references were not provided to the Patent Office by MotionPoint is not relevant to the claims and defenses at issue under Federal Rule of Evidence 402.

Moreover, to the extent such evidence has any probative value, it is far outweighed by the potential for prejudice and jury confusion.  First, references to MotionPoint's purported failure to disclose prior art to the Patent Office may unfairly prejudice MotionPoint and raise the specter of fraud where no such fraud has actually been alleged by TransPerfect.  Indeed, even in cases where inequitable conduct defenses are at issue, there is no right to have those defenses tried to the jury, and they are often the subject of a separate bench trial.  *See, e.g., Afga Corp. v. CREO Prods. Inc.*, 451 F.3d 1366, 1375 (Fed. Cir. 2006); *Myspace, Inc. v. Graphon Corp.*, 732 F. Supp. 2d 915, 917 (N.D. Cal. 2010) (citing numerous examples where inequitable conduct defenses were the subject of an early bench trial).  Accordingly, any reference to MotionPoint's purported failure to disclose prior art to the Patent Office should also be precluded under Federal Rule of Evidence 403.

## VII.   MOTION *IN LIMINE* NO. 7 TO PRECLUDE EVIDENCE AND ARGUMENT RELATING TO WIZTOM AND WEBBUDGET BECAUSE THEY FAIL TO QUALIFY AS PRIOR ART UNDER 35 U.S.C. § 102(G)

TransPerfect should be precluded from offering evidence or argument relating to the WizTom and WebBudget prior art references because those fail to qualify as prior art under 35 U.S.C. section 102(g)(2).  With respect to each of these references, TransPerfect cannot establish the requisite foundation that the invention was made in the United States prior to the invention of the claimed MotionPoint inventions.  Under Section 102(g)(2), a patent may be invalid as anticipated if:

> **(g)(2)**  before [the inventor's] invention thereof, the invention was made **in this country** by another inventor who had not abandoned, suppressed, or concealed it.  In determining priority of invention

1

> under this subsection, there shall be considered not only the
> respective dates of conception and reduction to practice of the
> invention, but also the reasonable diligence of one who was first to
> conceive and last to reduce to practice, from a time prior to
> conception by the other."

(emphasis added.)  It is well-established that prior invention "made in this country by another inventor who had not abandoned, suppressed, or concealed it" refers to inventions conceived of and reduced to practice in the United States.  *See, e.g., Solvay SA v. Honeywell Intern., Inc.*, 622 F.3d 1367, 1375-76 (Fed. Cir. 2010) (citing *Apotex USA, Inc. v. Merck & Co., Inc.*, 254 F.3d 1031, 1036 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1331 (Fed. Cir. 2001); *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1444 (Fed. Cir. 1984)).

### A.    WizTom was not Invented in the United States

WizTom was conceived of and reduced to practice in Belgium and France, not the United States.  WizTom developer Frederic Senegas testified that he first began working on WizTom in 1995, while working on a project for another company in Belgium.  See Senegas Tr. 18:6-20:13. Mr. Senegas further testified that WizTom was developed in France:

> **Q.**    Okay.  And in 1999, are you aware of any U.S.-based customers of
> WizTom for the Web?
>
> **A.**    No.  *We – we started – because you must understand that in '95, so it
> was small company based in France.*  Okay, there was three of us, and
> then it was self-financed, so we are to grow slowly.  So we, after a while,
> we tried to expand to other markets in Europe, and it was Spain, England,
> Italy, Switzerland, and also we tried to have some activities on Germany.

Ex. 7, Senegas Tr. 30:8-18 (emphasis added).  Later, in 2004, Mr. Senegas moved the company to Canada.  *Id.* at 32:24-33:7.  Mr. Senegas did not describe any U.S.-based development activities relating to WizTom.  Thus, because WizTom was conceived of and reduced to practice outside of the United States, WizTom does not qualify as a prior invention in this country under Section 102(g), and TransPerfect should be precluded from arguing defenses based on Section 102(g) at trial.

### B.    WebBudget was not Invented in the United States

WebBudget was conceived of and reduced to practice in Spain, not the United States.  WebBudget was developed by Josep Carreras and Miguel Angel Curras.  Ex. 11, Carreras Tr. 13:24-14:9.  Mr. Carreras testified that he first began working on WebBudget while working on a translation project for a company in Madrid.  Ex. 11 at 14:10-15:15.  Mr. Carreras confirmed that he developed WebBudget in Spain, and that no work on WebBudget was performed in the United States:

> **Q.**    And when you were developing WebBudget, were you located in Spain?
>
> **A.**    Yes.
>
> **Q.**    *Did you ever do any development work on WebBudget in the United States?*
>
> **A.**    *No.*

Ex. 11 at 16:14-19 (emphasis added).  Thus, because WebBudget was conceived of and reduced to practice outside of the United States, WebBudget does not qualify as a prior invention in this country under Section 102(g), and TransPerfect should be precluded from arguing defenses based on Section 102(g) at trial.

## VIII.  MOTION *IN LIMINE* NO. 8 TO PRECLUDE UNCORROBORATED EVIDENCE AND ARGUMENT RELATING TO IDIOM WORLDSERVER

The Court should preclude TransPerfect from offering or relying on uncorroborated oral testimony relating to Idiom WorldServer.  In particular, TransPerfect should be precluded from arguing that (1) Idiom WorldServer did not require the use of WorldTags to crawl a website, and (2) Idiom WorldServer and related references disclosed crawling a website over the Internet, because these claims are based only on the oral testimony of Idiom WorldServer developer Eric Silberstein and lack any other evidentiary foundation.  The Federal Circuit has repeatedly recognized the dubious value of oral testimony as to the issue of anticipation or prior invention, and stated that such testimony is subject to skepticism and should be corroborated to constitute clear and convincing evidence of invalidity.  For example, in *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368 (Fed. Cir. 1998), the Federal Circuit stated that "there is a very heavy burden to be met by one challenging validity when the only evidence is the oral testimony of

interested persons and their friends, particularly as to long-past events.  Corroboration of oral

evidence of prior invention is the general rule in patent disputes." *Id.* at 1371; *accord, Dow*

*Chemical Co. v. Mee Industries, Inc.*, 341 F.3d 1370, 1378 (Fed. Cir. 2003); *Lacks Industries, Inc.*

*v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1349 (Fed. Cir. 2003).

**A.   Claims that WorldServer Did Not Require WorldTags to Crawl a Website are Based on Uncorroborated Oral Testimony and Lack Foundation**

First, the Court should preclude TransPerfect, its experts and witnesses from asserting that

WorldServer did not require the use of WorldTags based on the uncorroborated oral testimony of

WorldServer developer Eric Silberstein.  TransPerfect and its expert Dr. Paul Clark rely on Mr.

Silberstein's deposition testimony to support their claim that WorldTags were an optional feature,

and that WorldServer did not require users to manually add WorldTags to a web site's source code

in order to crawl the web site and retrieve content.  *See* Ex. 12 at ¶ 91 (citing Silberstein Tr. (Ex.

13) 86:19-87:22).  But Mr. Silberstein provided no documentary support to corroborate his claim,

and TransPerfect and Dr. Clark have identified no other support for Mr. Silberstein's claim that

WorldServer did not require the use of WorldTags.  Accordingly, any argument that WorldServer

did not require the use of WorldTags lacks foundation and should be precluded.

**B.   Claims that WorldServer Performed "Crawling" Over the Internet are Based on Uncorroborated Oral Testimony and Lack Foundation**

The Court should also preclude TransPerfect, its experts and witnesses from asserting that

WorldServer performed "crawling" over the Internet because that argument is likewise based on

Mr. Silberstein's uncorroborated deposition testimony.  TransPerfect and its expert Dr. Clark point

to the article "Live from Japan – an e-commerce site gets a make-over for Asia," which states that

WorldServer's "WorldManager systematically identified items for translation by 'crawling' the 25-

page site." *See, e.g.*, Ex. 9 at ¶ 1047.  TransPerfect and its expert Dr. Clark further rely on

deposition testimony from Mr. Silberstein to argue that this "crawling" occurred over the Internet.

Ex. 12 at ¶ 90 (citing Silberstein Tr. (Ex. 13), 22:13-16, 55:16-56:1).  But this oral testimony is

uncorroborated—nothing in the "Live from Japan" article specifies that the "crawling" function in

WorldServer was performed over the Internet, and Mr. Silberstein admitted at deposition that he is

unaware of any documentary evidence stating that the "crawling" feature of WorldServer 1.0 was

performed over the Internet.  Ex. 13, 56:13-16 (**Q.**  …Are you aware of any documentary evidence stating that the crawling feature of WorldServer 1.0 was performed over the Internet?  **A.**  No.).

Accordingly, any argument that the "crawling" function in WorldServer occurred over the Internet lacks foundation and should be precluded.

## IX.    MOTION *IN LIMINE* NO. 9 TO PRECLUDE UNAUTHENTICATED PRINTOUTS FROM ARCHIVE WEBSITE

TransPerfect has included on its exhibit list print-outs from the Internet Archive website, www.archive.org.  TransPerfect contends that these print-outs represent the content and appearance of various websites at past dates.  For some of these printouts, TransPerfect obtained affidavits from Christopher Butler (Office Manager at the Internet Archive).  Exs. 14, 15.  These affidavits described the print-outs attached thereto as "true and accurate copies of printouts of the Internet Archive's records of the HTML files for the URLs."  *Id*.  On this basis, MotionPoint agreed not to challenge authenticity of the printouts identified therein.  TransPerfect now seeks, however, to introduce into evidence printouts of *additional* websites that were not the subject of Mr. Butler's testimony.[3]  TransPerfect cannot lay any proper foundation or authentication for these exhibits.

Pursuant to Federal Rule of Evidence 901 "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims to be."  Fed.R.Evid. 901(a).  In terms of introducing print-outs from a website, "[a]nyone can put anything on the internet.  No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation….  [H]ackers can adulterate the content on any web-site from any location at any time.  For these reasons, any evidence procurement off the Internet is *adequate for almost nothing*."  *Wady v. Provident Life and Accident Ins. Co. of America*, 216 F.Supp.2d 1060, 1064 (C.D.Cal. 2002) (emphasis added).  To be authenticated, someone with

---

[3] The Butler affidavits do not cover the following webpage printouts: PTX-0024, PTX-0025, PTX-0027, PTX-0028, PTX-0029, PTX-0030, PTX-0031, PTX-0734, PTX-0742, PTX-0873, PTX-0945, PTX-0946 and PTX-0976.

1  knowledge of the accuracy of the contents of the Internet print-outs must testify.  *See In re*

2  *Homestore.com, Inc., Securities Litigation*, 347 F.Supp.2d 769, 782 (C.D.Cal. 2004).

3  Accordingly, any argument that a print out from a website "could be 'authenticated' by the person

4  who went to the website and printed out the home page is unavailing."  *Internet Specialities West,*

5  *Inc. v. ISPWest*, 2006 WL 4568796, *1 (C.D.Cal. 2006).

6        Courts are split as to the type of testimony required to authenticate print-outs from the

7  Internet Archive.  On one hand, the U.S. District Court for the Northern District of Illinois

8  concluded that an affidavit from an employee of the Internet Archive satisfied the Rule 901

9  threshold to authenticate the evidence as a prior version of defendant's website.  *Telewizja Polska*

10  *USA, Inc. v. Echostar Satellite Corp.*, 2004 WL 2367740, at *6 (N.D. I11. Oct. 15, 2004) (order

11  denying motion *in limine* to bar Internet Archive evidence).  The U.S. District Court for the

12  Middle District of Florida has followed a similar approach.  *See St. Luke's Cataract & Laser Inst.,*

13  *P.A. v. Sanderson, M.D., LLC*, 2006 WL 1320242 (M.D. Fla. May 12, 2006) (order denying

14  admission of printouts from the Internet Archive).  The courts in the Second Circuit, however,

15  take a conflicting view, holding testimony by an intermediary with personal knowledge of the

16  archival process insufficient to authenticate archived Web pages.  These courts instead focus on

17  the *original* Web page.  *See Chamilia LLC v. Pandora Jewelry LLC*, 85 U.S.P.Q.2d 1169

18  (S.D.N.Y. 2007); *Novak v. Tucows Inc.*, 2007 U.S. Dist. LEXIS 21269 (E.D.N.Y. Mar. 26, 2007)

19  (order granting motion to bar evidence), *aff'd,* No. 07-2211-cv, 2009 U.S. App. LEXIS 9786 (2d

20  Cir. May 6, 2009).  Under this view, only a party with personal knowledge of the content of the

21  original website, such as the webmaster or content provider, would be sufficient to authenticate the

22  page's digital counterpart stored on the Internet Archive.

23        TransPerfect cannot authenticate the purported webpage print-outs under either standard.

24  Indeed, TransPerfect has set forth no testimony (affidavit or otherwise) laying appropriate

25  foundation or authentication for the print-outs not attached to the Butler affidavits.

26        One particular exhibit that TransPerfect will not be able to authenticate or lay appropriate

27  foundation for at trial is PX-5447 (Ex. 16), a WebArchive print-out titled "WizArt: BabelGate in

28  French & English" on TransPerfect's exhibit list.  TransPerfect's likely sponsoring witness for this

exhibit, Mr. Senegas, has no personal knowledge as to whether the webpage depicted in it was on the WizArt website at the relevant time (March 2002).  Indeed, at his deposition he testified – in response to TransPerfect counsel's own questioning – that he is not aware of whether the WebArchive print-out of PX-5447 was on the WizArt website:

> Q. And then the other one has been translated using Google Translate to English. The purpose of this line of questioning is not to ask you anything about, specifically about BabelGate, but more to ask you as to whether or not this helps refresh your memory as to whether or not BabelGate was something that was made available – was advertised on the WizArt.com Website at least as of March 28, 2002?
>
> MR. ROBSON: Objection. Form.
>
> A. If it's in the WayBack Machine, then it was advertised, but --
>
> MR. ONYEJEKWE: I'll note for the record that there's no production number for Exhibit 31, and if counsel desires, we can generate one.
>
> THE WITNESS: So because when we started this approach, we actively promoted it, the BabelGate concept, we talked to prospective customers in trade shows and so on.
>
> Again, so I'm not surprised that we had some pages about it on the Website, but *at that time, I was not in charge of the Website, okay, so that's why I was not aware or that clear about what was on it or not.*

Ex. 7, 194:13-195:14.  Mr. Senegas also confirmed unequivocally that he has no personal recollection of having seen the webpage content of  PX-5447 on the WizArt website:

> Q. So my question is you have no personal recollection of having seen this Web page content on the WizArt Website in March of 2002, correct?
>
>  MR. ONYEJEKWE: Objection. Form.
>
> **A. Yes, I have no recollection.**

*Id*. at 214:7-12.  This witness wholly lacks the personal knowledge required to authenticate or lay a foundation for PX-5447.  It should be excluded.

Since no witness can authenticate or lay foundation for the web archive print-outs, TransPerfect should be precluded from introducing these print-outs into evidence and from making any reference to their contents.

**X.     MOTION *IN LIMINE* NO. 10 TO PRECLUDE TRANSPERFECT'S RELIANCE ON THE DOCTRINE OF EQUIVALENTS AS UNTIMELY AND SUBSTANTIVELY DEFICIENT**

TransPerfect should be barred from introducing any evidence or argument of alleged infringement under the doctrine of equivalents.  In particular, TransPerfect failed to articulate any substantive doctrine of equivalents arguments in either its infringement contentions or its expert reports.

First, TransPerfect failed to disclose a doctrine of equivalents analysis in its infringement contentions with the specificity required by the Patent Local Rules.  Patent Local Rule 3-1(e) requires the patentee to state "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality."  The "overriding principle" of the Patent Local Rules is to "articulate *with specificity* the claims and theory of a plaintiff's infringement contentions."  *InterTrust Tech.'s Corp. v. Microsoft Corp.*, 2003 WL 223120174, at *2 (N.D.Cal. 2003) (emphasis added).  Accordingly, courts in this district "have *strictly applied* Patent Local Rule 3-1(e)."  *OptimumPath, LLC v. Belkin Intern., Inc.*, 2011 WL 1399257, *8 (N.D.Cal. 2011) (emphasis added); *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 2004 WL 5363616, *4–6 (N.D.Cal. 2011) ("The patent local rules were adopted by this district in order to give infringement contentions and claim charts more 'bite'").  Where a party fails to comply, courts routinely strike pleadings and expert testimony that incorporate the untimely disclosed theory, and preclude a party from asserting it at trial.  *See*, *e.g.*, *Genentech v. Amgen*, 289 F.3d 761, 773-774 (Fed. Cir. 2002) (precluding plaintiff from asserting DOE arguments not specifically disclosed); *MEMC*, at *4–6 (precluding reliance on the doctrine of equivalents and barring related expert testimony where plaintiff failed to identify such claims in its Rule 3–1 disclosures).

Here, TransPerfect's infringement contentions include only a general statement that any claim found not to literally infringe is, alternatively, infringed under the doctrine of equivalents:

> [T]o the extent any of MotionPoint's accused products or services does not literally meet a limitation, the product or service meets the limitation under the doctrine of equivalents.

Ex. 17 at 4.  TransPerfect's one sentence disclaimer plainly fails to satisfy the requirement that a party articulate with *specificity* its infringement allegations, including those under the doctrine of equivalents.  *See, e.g., Creagri, Inc. v. Pinnaclife Inc., LLC*, 2012 WL 5389775, *5-6  (N.D.Cal. 2012) (Plaintiff "cannot merely add boilerplate language asserting that the doctrine of equivalents has been met as an alternative theory"); *OptimumPath*, at *8 (rejecting plaintiff's "attempt to assert claims under the doctrine of equivalents with blanket statements"); *Rambus Inc. v. Hynix Semiconductor Inc.,* 2008 WL 5411564, *3 (N.D.Cal. 2008) (dismissing claims under the doctrine of equivalents because "[t]he Patent Local Rules require a limitation-by-limitation analysis, not a boilerplate reservation").

In *OptimumPath*, this Court rejected a patentee's similar reliance upon a placeholder in its Rule 3-1 disclosures for the doctrine of equivalents.  There, the patentee contended that the following catch-all statement preserved its claims under the doctrine of equivalents:

> For purposes of infringement of the '281 Patent and the disclosure requirements of L.R. 3–1(c), OptimumPath asserts that the Accused Instrumentalities all function in the same or substantially similar manner and include the same or substantially similar components.

*OptimumPath*, at *8.  Judge Wilken, however, found that this "this language falls short of the requirements of Patent Local Rule 3-1(e)" because it "fails to link those similarities to particular claims or limitations within the '281 patent."  *Id*.  As such, the Court found that "OptimumPath's reliance on the doctrine of equivalents is barred."  TransPerfect should likewise be precluded from relying on the doctrine of equivalents.

TransPerfect's technical expert also provides no support for his conclusory argument that the accused products infringe the asserted claims of TransPerfect's patents under the doctrine of equivalents.

The Federal Circuit has summarized the requirements for expert testimony concerning the doctrine of equivalents, stating that:

> [A] patentee must … provide **particularized testimony** and **linking argument** as to the "insubstantiality of the differences" between the claimed invention and the accused device or process, or with respect to the function, way, result test…. Such evidence must be presented on a limitation-by-limitation basis. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.

*Network Commerce, Inc. v. Microsoft Corp.,* 422 F.3d 1353, 1363 (Fed. Cir. 2005) (emphasis added). In other words, a plaintiff must present testimony not only to establish "*what* the function, way, and result of *both* the claimed device and the accused device are, [but also] *why* those functions, ways, and results are substantially the same." *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1327 n.5 (Fed. Cir. 1991). To the extent that the plaintiff fails to provide such information, it may be barred from offering doctrine of equivalents allegations at trial. *See, e.g. Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1323 (Fed. Cir. 2003); *Smith & Nephew, Inc. v. Arthrex, Inc.,* 2010 WL 457142, 9 (E.D.Tex. 2010); *Honeywell Intern., Inc. v. Universal Avionics Sys. Corp.*, 347 F.Supp.2d 129, 134 (D. Del. 2004).

Here, TransPerfect's expert Dr. Clark fails to provide the necessary substance. Dr. Clark's analysis consists of nothing more than restatements of the claim language, followed by unsupported assertions that the accused products operate in the same "way" as the claimed invention to achieve the same "result."[4] For instance, his treatment of the limitation "detecting when a document, data stream, or non-text file in a master language has been updated," as recited in the '426 and '005 patent claims, is illustrative:

> To the extent it is found that the claim limitation "detecting when a document, data stream, or non-text file in a master language has been updated" is not literally found in the TransMotion, it is my opinion, that TransMotion meets this claim limitation under the doctrine of equivalents.
>
> In my opinion, any differences between this claim element and TransMotion are

---

[4]  *See* Ex. 18, ¶¶ 66-67, 78-79, 89-90, 97-98, 106-107, 114-115, 126-127, 137-138, 144-145, 163-168, 173-174, 181-182, 190-191, 196-197, 202-203, 208-209, 221-222, 227-228, 251-252, 259-260, 265-266, 271-272, 278-279, 285-286, 292, 297, 302, 307, 312, 317, 322, 329, 334, 339, 344, 351, 358, 363, 368, 373, 386, 391, 409, 414, 419, 430, 509, 514, 517, 521-522, 538-539, 603-604, 617-618, 628-629, 641-644, 650-651, 664-665, 671-672, 678-679, 685-686, 692-693, 699-700, 706-707, 715, 720, 724, 729-731, 739-741, 748-749, 756-757, 765-766, 773-774, 782-783, 790-791, 796-797, 803-804, 810, 843-844, 851-852, 860-861, 871-872 (setting forth relevant DOE analysis).

insubstantial.  In particular, TransMotion and this claim element are equivalent because, as discussed above, they perform the same or insubstantially different functions (detecting whether content has been updated), they work in substantially the same ways (monitor whether web site content has changed), to produce substantially the same results (detect when electronic content has been changed).

Ex. 18, pp. 31-32.  Dr. Clark does nothing more than state that there is no substantial difference "between this claim element and TransMotion," followed by a rewording of the particular patent's claim language purportedly setting forth the function/way/result elements.  This analysis fails to explain **why** those functions are allegedly "the same or insubstantially different."  *Id*.  In fact, Dr. Clark never identifies any purported differences between the accused functionality and the function, way, or result of any claim limitation, rendering it impossible for him to opine that differences are insubstantial.[5]  Dr. Clark's conclusory statements are insufficient for a finding of equivalence and, therefore, should be excluded.  *See, e.g. Honeywell*, 347 F.Supp.2d 129, 134 (D. Del. 2004).

Without sufficient infringement contentions or expert testimony regarding the doctrine of equivalents, TransPerfect itself should be precluded at trial from introducing any evidence concerning the theory.  *See Aquatex Ind., Inc. v. Techniche Solutions,* 479 F.3d 1320, 1329 (Fed. Cir. 2007) (rejecting patentee's proffered lay witness testimony because equivalence must be evaluated from the perspective of "a person skilled in the art, typically a qualified expert"); *General Elec. Co. v. Joiner,* 522 U.S. 136 (1997) (excluding opinion "connected to existing data only by the *ipse dixit* of the expert").

## XI.   MOTION *IN LIMINE* NO. 11 TO PRECLUDE DR. CLARK FROM PROVIDING INFRINGEMENT OPINIONS AT TRIAL ON CERTAIN MEANS-PLUS-FUNCTION LIMITATIONS

For several "means-plus-function" limitations, TransPerfect's infringement expert Dr.

---

[5] Dr. Clark's reference back to his literal infringement analysis (*e.g.*, "as discussed above") is unavailing.  It is well settled that "[t]he evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement."  Thus, arguments on literal infringement that may also bear on equivalence" are irrelevant. *Lear Siegler v. Sealy Mattress Co. of Mich., Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989).

Clark offers no infringement opinions, instead alleging that those limitations are not "means-plus-function."  Dr. Clark further alleges *without support* that to the extent those limitations are means-plus-function, they are still infringed.  To the extent those limitations are found to be in means-plus-function format, Dr. Clark should be precluded from offering any opinions of infringement.

To prove infringement of a means-plus-function limitation, there must be a showing that the accused product performs the identical recited function and uses the same or equivalent structure set forth in the specification.  *Odetics v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999).  The specification must also *link* this structure to the recited function.  *See B. Braun Medical Inc., v. Abbott* Laboratories, 124 F.3d 1419, 1424 (Fed. Cir. 1997).  Thus, to the extent that TransPerfect relies upon expert testimony to establish infringement, Dr. Clark must demonstrate that for each means-plus-function limitation, the accused MotionPoint products perform the recited function and use the same or equivalent structure as that set forth and linked in the specification.  *See*, *e.g.*, *Speedplay*, *Inc. v. Behop*, *Inc.*, 211 F.3d 1245, 1257-58 (Fed. Cir. 2000).

Here, Dr. Clark fails to identify any *function* or *structure* for *any* of the "module" limitations recited in claims 9-16 of the '426 patent.  Instead, Dr. Clark contends that such analysis is irrelevant: "In my opinion the claim elements in the table above are ***not in means-plus-function-format***."  Ex. 18, ¶22.  MotionPoint, on the other hand, provided explicit proposals detailing the function and structure for each limitation as early as April 5, 2012.  *See* Dkt. 120.  MotionPoint's expert himself opined as to these proposals in his report dated January 3, 2013.  *See* Ex. 19.  Yet despite having ample opportunity to provide an opinion in the alternative, Dr. Clark chose not to do so.  Instead, he merely offered the same blanket opinion for each limitation:[6]

> Even if one or more of the claim elements above are found to be means-plus-function elements, it is my opinion that the Accused MotionPoint system contain those claim elements.

---

[6] *See* Ex. 18, ¶¶ 310, 315, 320, 327, 332, 337, 342, 349, 356, 361, 366, 371, 384, 389, 407, 412, 417.

Case No. CV 10-02590 CW (JCS)
MOTIONPOINT'S MOTIONS IN LIMINE

This conclusory opinion is plainly deficient.

Thus, should the Court construe one or more of these claim limitations to be in means-plus-function format, the Court should preclude Dr. Clark from providing any infringement opinions at trial regarding these limitations.

## XII.   MOTION *IN LIMINE* NO. 12 TO PRECLUDE TRANSPERFECT FROM RAISING SECONDARY CONSIDERATIONS OF NON-OBVIOUSNESS

TransPerfect offers several purported secondary considerations of non-obviousness, but makes no effort to prove the required nexus between those considerations and the claimed features of its patents.  Without this nexus, TransPerfect should be barred from offering these secondary considerations at trial.

A patentee may rebut a prime facie case of obviousness by setting forth evidence of "secondary considerations" that objectively support a finding of non-obviousness.  *See Graham v. John Deere Co*., 383 U.S. 1, 17-18 (1965).  But the patentee must establish a nexus between the claimed features of the invention and each secondary consideration.  *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 668 (Fed. Cir. 2000).

Here, TransPerfect's expert has done little more than assert conclusory statements in support of secondary considerations.[7]  He has failed to even remotely link these indicia to specific features of the claimed inventions.  For example, as to the '022 patent, Dr. Clark merely states that:

> In my opinion, the '022 invention's nonobviousness is evidenced in its commercial success as utilized in TransPerfect's OneLink product and as used in MotionPoint's TransMotion products is indicative of the non-obviousness of the invention.

Ex. 20, ¶ 798.  He does not explain how the success of the OneLink product is related to its purported adoption of the '022 technology.  Likewise, with respect to copying, Dr. Clark alleges without any further analysis that "the '022 invention's nonobviousness is evidenced in the copying

---

[7] *See* Ex. 20, ¶¶ 797-800, 1718-1722 (providing Dr. Clark's secondary consideration "analysis").

1   of the invention by others in the market, such as MotionPoint in its TransMotion product." *Id*.,

2   ¶799.  And for the '426 and '005 patents, Dr. Clark asserts, without explanation, that "that Global

3   Sight attempted to copy the features of Language Automation Inc.'s WebPlexer product" and that

4   "this shows that the inventions of these patents were not obvious." *Id*., ¶1721.  Dr. Clark's

5   analysis lacks any showing of a nexus between the claimed inventions and the cited indicia of

6   non-obviousness.  Accordingly, TransPerfect's contentions are insufficient as a matter of law and

7   should be excluded.

8

9   **XIII.   MOTION *IN LIMINE* NO. 13 TO PRECLUDE EVIDENCE OR REFERENCE TO**
10  **THE RELATIVE WEIGHT OF VARIOUS METHODS OF MEASURING A**
    **REASONABLE ROYALTY RATE FOR PURPOSES OF PATENT DAMAGES**

11         MotionPoint moves to preclude TransPerfect's damages expert, Mr. Creighton G.

12  Hoffman, from offering opinions on legal issues.  These opinions are inappropriate because they

13  misstate the law and because Mr. Hoffman is not a legal expert.

14         During his deposition, Mr. Hoffman testified that he used both the *Georgia-Pacific*

15  framework and the analytical approach under *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895 (Fed.

16  Cir. 1986) to determine a reasonable royalty rate.  Ex. 21, Hoffman Tr., 44:14-45:23; 46:7-14.

17  Mr. Hoffman suggested that a complete reasonable royalty analysis would require an expert to use

18  both approaches.  Ex. 21, Hoffman Tr. 51:15-52:16.

19         Any line of questioning that implies that a damages expert should use one particular

20  method or methods to calculate a reasonable royalty rate should be excluded because it is contrary

21  to established Federal Circuit precedent.  The Federal Circuit has said that there are many

22  acceptable methods to calculate a reasonable royalty rate, including the hypothetical negotiation

23  approach under *Georgia-Pacific* and the analytical approach under *TWM Mfg. Co. v. Dura Corp.*

24  *See, e.g.*, *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)

25  ("Litigants routinely adopt several approaches for calculating a reasonable royalty" including "the

26  analytical method" and the "more common … 'willing licensor-willing licensee' approach'" under

27

28

*Georgia-Pacfic*).[8]  Any inference that one method is superior to another would be contrary to law, irrelevant, and likely to mislead the jury.  Accordingly, this Court should preclude such inferences under Federal Rule of Evidence 402.

In addition, such an inference would be prejudicial to MotionPoint.  MotionPoint's damages expert, Mr. Ned Barnes, used only the widely-accepted hypothetical negotiation approach under *Georgia-Pacific*.

### XIV.    MOTION *IN LIMINE* NO. 14 TO PRECLUDE ARGUMENT BY TRANSPERFECT AS TO WILLFUL INFRINGEMENT

TransPerfect lacks sufficient evidence to warrant presenting the prejudicial issue of willful infringement to the jury.  Accordingly, the Court should preclude TransPerfect from doing so pursuant to Federal Rule of Evidence 403.

For TransPerfect to show that MotionPoint willfully infringed, it must prove at least "objective recklessness."  *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 2010 WL 583960, at *9 (N.D.Cal. Feb. 16, 2010).  In particular, TransPerfect must prove with "***clear and convincing evidence*** that [MotionPoint] acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  *In re Seagate Techs., Inc.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  Whereas a preponderance-of-the evidence standard requires only that something be "more probable than not," *Verlander v. Garner*, 348 F.3d 1359, 1376 (Fed. Cir. 2003), the clear-and-convincing standard excludes instances where "a 'reasonable litigant could realistically expect' [its] defenses to succeed."  *Bard*, 682 F.3d at 1003; *see iLOR LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011).  That is, willful infringement requires a showing of "objective baselessness."  *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1006-07 (Fed. Cir. 2012).  Thus, TransPerfect must prove with *specificity* what MotionPoint allegedly knew or should have known about the alleged existence, validity, and infringement of each of TransPerfect's three patents.  Here, the question is not close.

---

[8]  Mr. Hoffman suggested in his deposition that "the law tells us to use both."  Ex. 21, Hoffman Dep. Tr. at 47:14-15).  To the extent that Mr. Hoffman would attempt to offer testimony about which framework the case law demands or accepts, his testimony should be excluded under *Daubert* because Mr. Hoffman is not a legal expert.  Ex. 21, 27:3-4 ("I've never matriculated in a law school.").

1    In "ordinary circumstances" the inquiry focuses on defendant's pre-suit knowledge because

2    patentees "should not be allowed to accrue enhanced damages based solely on the infringer's post-

3    filing conduct"; the usual remedy for alleged post-filing willful infringement is a preliminary

4    injunction.  *Seagate*, 497 F.3d at 1374; *Cordis Corp. v. Boston Scientific Corp.*, 2010 WL 331792,

5    at *2 (D.Del. 2010) ("[G]enerally only evidence regarding the prelitigation landscape of the

6    dispute will be admitted).  Of course, TransPerfect never sought a preliminary injunction as to the

7    TransPerfect patents.  In fact, TransPerfect did not even acquire its asserted patents until a year

8    into the litigation, rendering pre-trial notice of TransPerfect's claims impossible.

9    As to any pre-suit knowledge on MotionPoint's part that TransPerfect's specific patents

10   were extant, valid, and infringed, the evidence is silent.  TransPerfect can *only* establish the date

11   on which MotionPoint learned about the asserted patents; this is plainly insufficient.  *See*, *Bard* at

12   1007.  For instance, MotionPoint knew about the '022 patent on January 14, 2011—6 months *after*

13   this case began.  Likewise, the record shows that the Lakritz patents were listed among 10 other

14   patents in PTO office actions during prosecution of certain MotionPoint patents.  There is no

15   proof, however, that they were ever discussed.  Such cursory knowledge is insufficient as a matter

16   of law.  For instance, in *Cordance Corp. v. Amazon*, 623 F.Supp.2 406 (D.Del. 2009), the court

17   granted defendant Amazon's motion for summary judgment on no willfulness.  In doing so, the

18   court noted that, though Amazon's patent counsel knew of Cordance's patents when prosecuting

19   Amazon's own patents, Cordance failed to provide notice of its patents or infringement claims

20   prior to the commencement of the lawsuit.  *Id*.  The same is true here.

21   In any event, MotionPoint's defenses as to both validity and infringement are at least

22   reasonable.  *See Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed.

23   Cir. 2010); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1310 (Fed. Cir. 2011).  Indeed,

24   the parties' summary judgment briefings demonstrate that MotionPoint had *numerous* legitimate

25   and credible defenses to TransPerfect's infringement allegations, such that TransPerfect cannot

26   come close to satisfying the objective prong of the willful infringement test.  Accordingly,

27   TransPerfect should be precluded from arguing willful infringement to the jury.

28

**XV.   MOTION *IN LIMINE* NO. 15 TO PRECLUDE EVIDENCE OF OR REFERENCE TO ELIZABETH ELTING**

MotionPoint moves to exclude evidence regarding Elizabeth Elting at trial, other than that she is co-founder and co-CEO of TransPerfect.  The Court did not permit MotionPoint to depose Ms. Elting.  Thus, TransPerfect should not be permitted to refer to or introduce evidence regarding Ms. Elting at trial.

Ms. Elting is co-founder of TransPerfect, along with Phil Shawe.  TransPerfect refused to make Ms. Elting available for deposition.  MotionPoint moved to compel the deposition; TransPerfect opposed MotionPoint's motion.  Magistrate Judge Spero denied MotionPoint's motion, finding that it had not been shown that "Ms. Elting has personal non-repetitive knowledge relevant to the facts and issues in this case sufficient to justify this apex deposition."  5/24/12 Order, Dkt. No. 133.  Thus, having successfully opposed MotionPoint's request to depose Ms. Elting, TransPerfect should not now be allowed to introduce evidence concerning Ms. Elting for its alleged benefit.

This would be particularly prejudicial to MotionPoint, considering Magistrate Judge Spero denied MotionPoint the opportunity to depose Ms. Elting or to collect discovery from her.  At a minimum, if TransPerfect is allowed to introduce evidence about Ms. Elting, MotionPoint should be afforded the opportunity to depose her.

**XVI.   AGREED MOTION IN LIMINE NO. 16 TO PRECLUDE ALL REFERENCE TO THE DISQUALIFICATION OF MCDERMOTT, WILL & EMERY LLP**

The parties agree that neither side shall directly or indirectly reference the disqualification of MotionPoint's prior counsel, McDermott, Will & Emery LLP ("McDermott"), which was disqualified by this Court's Order on June 20, 2012.  Dkt. 198.  The parties agree and request that the Court order that no party shall reference or otherwise seek to introduce evidence at trial relating to McDermott's disqualification or Quinn Emanuel Urquhart & Sullivan, LLP's replacement of McDermott as counsel for MotionPoint.

QUINN EMANUEL URQUHART & SULLIVAN LLP


/s/ Meghan E. Bordonaro
_____
CHARLES K. VERHOEVEN
AMY H. CANDIDO
ROBERT W. STONE
MEGHAN E. BORDONARO
RICHARD W. ERWINE (*pro hac vice*)
MATTHEW ROBSON (*pro hac vice*)
GREGORY C. WYCKOFF (*pro hac vice*)


*Attorneys for Defendant/Counterclaim Plaintiff MotionPoint Corporation*

Case No. CV 10-02590 CW (JCS)
MOTIONPOINT'S MOTIONS IN LIMINE