ROBERT W. STONE (Bar No. 163513)
robertstone@quinnemanuel.com
MEGHAN BORDONARO (Bar No. 269236)
meghanbordonaro@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Tel: (650) 801-5000; Fax: (650) 801-5100

AMY H. CANDIDO (Bar No. 237829)
amycandido@quinnemanuel.com
EMMA E. MANN-MEGINNISS (Bar No. 286656)
emmamann-meginniss@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Tel: (415) 875-6600; Fax: (415) 875-6700

RICHARD W. ERWINE (*pro hac vice*)
richarderwine@quinnemanuel.com
MATTHEW D. ROBSON (*pro hac vice*)
matthewrobson@quinnemanuel.com
GREGORY C. WYCKOFF (*pro hac vice*)
gregorywyckoff@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel: (212) 849-7000

Attorneys for Defendant/Counterclaim-Plaintiff
MotionPoint Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| TRANSPERFECT GLOBAL, INC., TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC., AND TRANSLATIONS.COM, INC., <br><br> Plaintiffs/Counterclaim-Defendants, <br><br> vs. <br><br> MOTIONPOINT CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | CASE NO. CV 10-02590 CW (JCS) <br><br> **MOTIONPOINT CORPORATION'S OPPOSITION TO TRANSPERFECT'S MOTION FOR REVIEW OF CLERK'S TAXATION OF COSTS [DKT. 521]** |

1  TransPerfect originally sought more than $400,000 in costs even though the jury only awarded $1,006,009 in "total damages." (Dkt. 478 at 2). On January 2, 2014, following briefing by the parties, the Clerk of the Court issued an order awarding TransPerfect $131,636.46 in costs. (Dkt. 516). TransPerfect now objects and seeks the Court's review of this order, claiming that certain categories "were calculated and taxed erroneously." (Dkt. 521 at 1). But TransPerfect ignores that the Clerk and the Court have wide discretion in determining costs, particularly in a case, such as this, where each party prevailed on a set of claims. TransPerfect alternatively seeks increased costs because it claims MotionPoint "stipulated" to various numbers that should be treated as a floor. (*Id*. at ii). This is nonsense. MotionPoint suggested in the first instance that the Court award no costs based on several discretionary factors, including the closeness of the case and the mixed result. (Dkt. 508 at 2). If anything, MotionPoint's proposal was a ceiling that the Court could adjust downward based on those discretionary factors. In fact, the Clerk's award is close to MotionPoint's overall proposal of $123,133.02 and should be left alone. (Dkt. 485 at 2).

## I. FACTUAL BACKGROUND

On November 29, 2013, TransPerfect filed a Bill of Costs seeking $252,794.47 for categories that included service of subpoenas, reporters' transcripts, deposition copies, reproduction and exemplification, and witness fees. (Dkt. 473 at 2). Seven days later – after the deadline for disclosing "each item of taxable costs claimed" – TransPerfect filed an Amended Bill of Costs seeking an additional $179,026.35 for alleged reproduction and exemplification of discovery documents. (Dkt. 478 at 2; Civ. L. R. 54-1(a)). MotionPoint objected to both sets of invoices (*see* Dkt. 485, 508) and, on January 2, 2014, the Clerk of the Court taxed $131,636.46 in costs. In particular, the Clerk denied as untimely those expenses first identified in TransPerfect's belated amendment, and allowed a portion of TransPerfect's remaining claimed costs. (Dkt. 516). On January 9, 2014, TransPerfect filed a motion for review of the clerk's taxation. (Dkt. 521; Fed. R. Civ. P. 54(d) (seven days to file motion)). A full list of the deficiencies in TransPerfect's invoices can be found in MotionPoint's objections thereto, attached as Exhibits A and B.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(1) provides that costs – other than attorney's fees – may be allowed to the prevailing party. Fed. R. Civ. P. 54(d)(1). Unless otherwise authorized by statute or contract, 28 U.S.C. § 1920 limits costs that may be awarded to the following:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title; and
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*Id*.

The party submitting a bill of costs must verify "that each requested cost is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and ***necessarily performed***." 28 U.S.C. § 1924 (emphasis added). Furthermore, Local Rule 54 requires that the bill "state separately and specifically each item of taxable costs claimed," and be supported by a certificate of counsel that "the costs are correctly stated, were necessarily incurred, and are allowable by law." Civ. L. R. 54-1(a). "The burden is on the prevailing party to establish the amount of compensable costs and expenses to which they are entitled. ***Prevailing parties necessarily assume the risks inherent in a failure to meet that burden***." *In re Ricoh Co., Ltd. Patent Litigation*, 661 F.3d 1361, 1367 (Fed. Cir. 2011) (emphasis added) (applying Ninth Circuit law). "[A] list of costs and expenses must be adequately detailed, identifying the purpose of each expenditure, and not filled with generic references such as transcripts, publication, and document production." *Id*. at 1367 (citing Civ. L. R. 54-1(a)) (internal citations omitted); *See Duhn Oil Tool, Inc. v. Cameron Int'l Corp.*, 2012 WL 4210104, *6 (E.D.Cal. Sept. 19, 2012) (denying over $180,000 in requested costs where invoices did not show specificity sufficient to determine cost was taxable); *Oracle Am., Inc. v. Google Inc.*, 2012 WL 3822129, at *3 (N.D.Cal. Sept. 4, 2012) (denying nearly three million dollars in requested costs, in part, because requesting party did not meet its "burden of providing an itemized list with sufficient specificity").

Although district courts have discretion in awarding costs under 28 U.S.C. § 1920, that

discretion does not permit a broad interpretation of taxable costs. The Supreme Court "has never held that Rule 54(d) creates a presumption in favor of the broadest possible reading of the costs enumerated in § 1920." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S.Ct. 1997, 2006 (2012) ("the 'discretion granted by Rule 54(d) is not a power to evade' the specific categories of costs set forth by Congress"). Thus, courts have held certain categories of costs are not taxable under 28 U.S.C. § 1920. *See*, *e.g.*, *id.* at 2007 (document translation costs not taxable); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 170-71 (3d Cir. 2011) (metadata extraction costs not taxable, permitting only scanning, TIFF conversion, and VHS to DVD conversions as taxable copying costs); *City of Alameda v. Nuveen Mun. High Income Opportunity Fund*, 2012 WL 177566, at *3 (N.D.Cal. Jan. 23, 2012) (deposition transcript rough drafts, miniscripts, and expedited fees not taxable); *Computer Cache Coherency Corp. v. Intel Corp.*, 2009 WL 5114002, at *4 (N.D.Cal. Dec. 18, 2009) (OCR processing and metadata extraction not taxable); *Affymetrix, Inc. v. Multilyte Ltd.*, 2005 WL 2072113, at *2 (N.D. Cal. Aug. 26, 2005) (denying costs for "extra" deposition fees).

Furthermore, a district court has discretion to deny costs. *Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F.3d 572, 591-92 (9th Cir. 2000). Examples of reasons that can justify denial of costs include a partial recovery and whether the issues in the case were close or difficult. *See id.; see also Quan v. Computer Sciences Corp.*, 623 F.3d 870, 888-89 (9th Cir. 2010). Thus, inflated costs often result in "diminished award[s]" or the denial of taxable costs altogether. *See, e.g., Jansen v. Packaging Corp. of Am.*, 898 F.Supp. 625, 629 (N.D.Ill. 1995).

### III. THE COURT IS NOT BOUND BY ANY EITHER PARTY'S PROPOSALS

TransPerfect focuses its strongest criticism on the Clerk's alleged failure to consider so-called "stipulated recoverable expenses." (Mtn. at ii). That is, TransPerfect argues that the Court should not tax costs below "the costs the parties have agreed are recoverable." *Id*. at 5. On that basis, TransPerfect asks the Court to tax an additional $36,304.06 as set forth in the table below:

| Category of Expense | Clerk's Taxation | TransPerfect's Requested Taxation |
|---|---|---|
| Reporters' Transcripts | $0.00 | $11,234.67 |
| Depositions | $47,379.96 | $67,977.79 |
| Witness Expenses | $1,100.80 | $5,572.36 |
| **Total** | **$48,480.76** | **$ 84,784.82** |

*Id*. at 1.  As an initial matter, the Court is not bound by either party's proposed taxation.  Instead, the Court is "free to interpret" the scope and meaning of allowable costs enumerated in 28 U.S.C. § 1920.  *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 177 (9th Cir. 1990).  Indeed, district courts enjoy "**broad discretion**" under Fed. R. Civ. P. 54(d) to award or deny costs as they see fit.  *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996) (noting a "broad discretion as to how much to award, if anything."); *K-S-H Plastics, Inc. v. Carolite, Inc.*, 408 F.2d 54, 60 (9th Cir. 1969) (finding "wide discretion" in determining costs).  Accordingly, the Clerk was fully entitled to conduct an independent analysis irrespective of either party's filings.

Regardless, at no time did the parties agree – much less stipulate – to a minimum level of recoverable costs.  To the contrary, MotionPoint argued that *no costs* should be awarded.  (Ex. B 508 at 2).  In particular, MotionPoint noted the proper grounds for denying costs, including whether (1) the issues were close and difficult; (2) the prevailing party's recovery was partial; (3) the case presented an issue of national importance; and (4) the losing party litigated in good faith.  *See id*. (discussing *Quan*, 623 F.3d at 888-89).[1]

As MotionPoint explained, that is exactly the case here.  Both parties prevailed as to significant aspects of the case: the Court determined on summary judgment that MotionPoint did not infringe the Lakritz '426 and '005 patents and the jury determined that MotionPoint did not indirectly infringe the Scanlan '002 patent; TransPerfect prevailed on other claims.  (Dkt. 307 at 32-34; Dkt. 467).  TransPerfect recovered a small fraction of the $38 million it sought from the Jury.  (Tr. at 2074:6-22; Dkt. 425 at 3 (awarding only $1,002,006)).  The case presented close and difficult legal issues.  (Tr. at 472:2-474:12) (Dr. Clark conceding that he's "not sure as to whether

---

[1] *See also B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc.*, 516 F.3d 18, 28 (1st Cir. 2008) (holding that when a case poses "a close question that require[s] considered balancing," a court is within its discretion to deny costs); *McDonnell v. Am. Leduc Petroleums, Ltd.*, 456 F.2d 1170, 1188 (2d Cir. 1972) ("In view of the necessarily complex and protracted nature of the present litigation, it is the opinion of the Court that costs should not be taxed against any party").

[the '022 patent]'s novel"). And MotionPoint litigated this case in good faith, *e.g.*, having narrowed the issues for trial by dropping various asserted claims and one of its patents entirely.

## IV. TRANSPERFECT FAILED TO PROVE THAT THE COSTS ARE RECOVERABLE

TransPerfect also asks the Court to ignore MotionPoint's written objections and the Clerk's bases for denial, and simply adopt its Bill of Costs (Dkt. 473) in its entirety. (Mtn. at ii). Thus, TransPerfect asks the Court to nearly *triple* the Clerk's award for the categories below:

| Category of Expense | Clerk's Taxation | TransPerfect's Requested Taxation |
|---|---|---|
| Reporter's Transcripts | $0.00 | $20,449.57 |
| Depositions | $47,379.96 | $111,091.83 |
| Witness Expenses | $1,100.80 | $10,418.36 |
| **Total** | **$48,480.76** | **$141,959.76** |

*Id.*; *See* Dkt. 473 at 2. But it is TransPerfect's burden to establish the "the amount of compensable costs and expenses to which it is entitled," and that those costs were "necessarily incurred, and are allowable by law." *City of Alameda*, 2012 WL 177566, at *1. TransPerfect "necessarily assume[s] the risk inherent in a failure to meet that burden." *In re Ricoh*, 661 F.3d at 1367-1368 (denying costs where the "invoices and itemized spreadsheet … were not specific enough to permit the taxation of those costs").

Here, TransPerfect blithely presented a Bill of Costs (and an untimely amendment) for hundreds of thousands of dollars of costs, of which the majority are not permitted under 28 U.S.C. § 1920. TransPerfect also made no attempt to establish that the claimed costs were necessarily incurred for use in the case as required by §1920 and Civil Local Rules 54-1 and 54-3. Instead, TransPerfect improperly seeks to shift onto MotionPoint the burden of making these proofs and even makes *new arguments* not found in TransPerfect's original request. The Court should therefore deny TransPerfect's motion for review of the Clerk's award.

### A. Deposition Costs: Claimed $111,091.83; Clerk $47,379.96

TransPerfect seeks $111,091.83 for what is generally described as "expenses for depositions." (Mtn. at ii). But TransPerfect fails to demonstrate that the claimed costs fall within the scope of § 1920 or the interpretative rules. TransPerfect cites Civ. L. R. 54-3(c) and its general reference to "the cost of an original and one copy of any deposition" as authority for recovering

-5-                                    Case No. 10-2590
MOTIONPOINT'S OPPOSITION TO TRANSPERFECT'S
MOTION FOR REVIEW OF CLERK'S TAXATION OF COSTS

deposition costs, *see id*. at 3, but the Local Rules do not address a significant portion thereof. For instance, the claimed costs include expenses for "extra" services, such as "Interactive Real-time," "Rough ASCII," and shipping and handling. *See, e.g.,* Dkt. 476-1 at 12; *see also Affymetrix*, 2005 WL 2072113, at *2 (denying "[s]hipping or expedited delivery charges and 'extra' charges"). Likewise, TransPerfect failed to distinguish between depositions that were "necessarily incurred" and those "merely useful for discovery."[2] *In re Ricoh*, 661 F.3d at 1369. Instead, TransPerfect tries to shift its burden by arguing that "MotionPoint presented the Clerk with no facts to even suggest that these depositions were not 'taken in connection with several relevant aspects of the case'…." (Mtn. at 4).[3] MotionPoint has no burden to do so. And contrary to TransPerfect's allegations, MotionPoint highlighted that those certain depositions were never used at trial. (Ex. A at 5-7).

### B.  Reporters' Transcripts: Claimed $20,449.57; Clerk $0

TransPerfect also seeks $20,449.57 in reporters' transcript fees. (Mtn. at 2). Again, however, TransPerfect made no effort to separate out legitimate transcription costs from premium services. For example, TransPerfect improperly includes costs for hourly delivery, "real time" viewing, and duplicative copies of the same transcript. (Ex. A at 4-5). Further, the record lacks any showing that the identified transcripts were "necessarily obtained for an appeal" as required by Civil L. R. 54-3(b)(1). TransPerfect now argues *for the first time* that every transcript listed in its Bill of Costs is somehow necessary merely because "MotionPoint has pledged to appeal the judgment against it." (Mtn. at 2). But TransPerfect cannot challenge the Clerk's award based on a position introduced *after* said taxation. In any event, establishing that MotionPoint intends to appeal certain aspects of the judgment does not establish that TransPerfect is entitled to all premium

---

[2] For instance, MotionPoint identified as exemplary $38,851.54 in fees for witnesses not used at trial or otherwise. (Dkt. 485 at 5-7).

[3] TransPerfect suggests that "*Ricoh* supports that these costs are recoverable" because it found that depositions therein "were taken in connection with several relevant aspects of the case." (Mtn. at 3). TransPerfect misses the point: TransPerfect is required to establish that each deposition relates to a particular aspect of the case, *e.g.*, "from validity to damage issues." *In re Ricoh*, 661 F.3d at 1369-70. Unlike the *Ricoh* defendant, TransPerfect made no such showing.

-6-                                    Case No. 10-2590
MOTIONPOINT'S OPPOSITION TO TRANSPERFECT'S
MOTION FOR REVIEW OF CLERK'S TAXATION OF COSTS

services of its choosing or that specific transcripts are necessary for said appeal.[4]

### C. Witness Fees: Claimed $10,418.36; Clerk $1,100.80

TransPerfect seeks $10,418.36 for "its witnesses' per diem fees, subsistence, and travel expenses." (Mtn. at 4). These witness fees include "meals, mileage, and airfare expenses." *Id*. at 5. As an initial matter, TransPerfect's Bill of Costs conflates fees incurred for fact witnesses with those for expert witnesses. (*See* Ex. A at 13-14). Indeed, $4,846.00 of this amount derives from witness fees paid to TransPerfect's damages expert, Mr. Creighton Hoffman. (Dkt. 474-3 at 20). No authority requires MotionPoint to compensate TransPerfect for expert expenses. Likewise, TransPerfect made no attempt to separate out fees for legitimate expenses and premium services, such as Federal Express fees.

Accordingly, TransPerfect has not met its burden of establishing that it is entitled to costs under § 1920 greater than what was taxed by the Clerk.

## V. CONCLUSION

Thus, for the reasons stated above, MotionPoint respectfully requests that the Court deny TransPerfect's Motion for Review of Clerk's Taxation of Costs (Dkt. 521) or confirm the Clerk's award.

---

[4] TransPerfect claims that MotionPoint "provided no authority suggesting that obtaining transcripts as quickly as possible during trial, so a litigant can ensure as complete a record possible before a promised appeal, is not necessary for appeal." (Mtn. at 2). Setting aside TransPerfect's attempt to once again shift its burden to MotionPoint, TransPerfect's reliance on MotionPoint's intended appeal fails to support TransPerfect's need for premium services. Any appeal would be weeks or months after the Jury's verdict, rendering hourly delivery and real time services unnecessary and inappropriate for an award of costs.

DATED: January 23, 2014
New York, New York

By s/ Gregory C. Wyckoff
Gregory C. Wyckoff