IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANSPERFECT GLOBAL, INC.; TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.; and TRANSLATIONS.COM, INC., | No. C 10-2590 CW |
| | ORDER ON POST-TRIAL MOTIONS (Docket Nos. 439, 440, 444, 445, 486, 489 and 509). |
| Plaintiffs, | |
| v. | |
| MOTIONPOINT CORPORATION, | |
| Defendant. | |
| _____/ | |

Plaintiffs and Counterclaim-Defendants TransPerfect Global, Inc.; TransPerfect Translations International, Inc.; and Translations.com, Inc. (collectively, TransPerfect) seek the following relief in their post-trial motions: (1) an order severing TransPerfect's Lakritz patent claims from the remainder of the case; (2) increased and supplemental damages and pre-judgment interest; (3) an amended permanent injunction against MotionPoint; (4) judgment as a matter of law (JMOL) that MotionPoint indirectly infringes its patent; and (5) attorneys' fees.  Defendant and Counter-Claimant MotionPoint Corporation opposes all of these motions and cross-moves for JMOL that the asserted claims of TransPerfect's Scanlon patent are invalid and not infringed, that TransPerfect's damages award should be reduced, and that its own patents are valid and infringed.  For the reasons set forth below, the Court GRANTS TransPerfect's motion to amend the permanent injunction and its motion for post-

United States District Court
For the Northern District of California

verdict royalties and pre-judgment interest; all other motions are DENIED.

BACKGROUND

TransPerfect and MotionPoint are competing language translation firms which brought claims against each other for patent infringement. Prior to trial, the Court granted summary adjudication that MotionPoint did not infringe TransPerfect's Lakritz patents. The Court held a three-week jury trial on the remaining claims in July 2013.

With respect to TransPerfect's infringement claims, the jury returned a verdict finding that MotionPoint's accused product, called the TransMotion system, directly infringed six claims of TransPerfect's Scanlon patent. The jury also found, however, that MotionPoint was not liable for inducing infringement or contributory infringement.

With respect to MotionPoint's infringement claims, the jury found that TransPerfect had not infringed any claims of MotionPoint's three patents-in-suit. In addition, it found that the asserted claims of all three of MotionPoint's patents-in-suit were invalid as obvious, anticipated, and statutorily barred.

The jury awarded TransPerfect total damages of $1,002,006. It found and used a reasonable royalty rate of four percent to calculate these damages. Docket No. 415, Verdict Form.

In August and September 2013, the parties filed a series of post-trial, pre-judgment motions. Both parties renewed the motions for JMOL that they had made during trial. In addition, TransPerfect moved for a permanent injunction and to sever, from the claims that went to trial, its Lakritz patent claims, upon

which the Court earlier granted summary judgment of non-
infringement by MotionPoint.  The parties pointed out that they
planned to file additional post-trial motions after the Court
entered judgment and determined whether to issue a permanent
injunction.  The Court deferred its decision on the parties' post-
trial motions, entered judgment, and issued a permanent
injunction, but stayed its injunction pending resolution of the
post-trial and post-judgment motions.

DISCUSSION

I.   TransPerfect's Post-Trial Motions (Docket Nos. 439, 440,
     445, 489, and 509)

   A.   TransPerfect's Motion to Sever Lakritz Patent Claims
        (Docket No. 445)

   In May 2013, the Court granted summary judgment of non-
infringement to MotionPoint on all of TransPerfect's claims based
on its Lakritz patents.  TransPerfect moves to sever these claims
for a separate appeal from the claims that were decided at trial.

   Federal Rule of Civil Procedure 21 provides, "On motion or on
its own, the court may at any time, on just terms, add or drop a
party.  The court may also sever any claim against a party."  The
court may sever the claims against a party in the interest of
fairness and judicial economy and to avoid prejudice, delay or
expense, and has "broad discretion" in determining when severance
is appropriate.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296-
97 (9th Cir. 2000).

   TransPerfect seeks severance of its claims of infringement of
its Lakritz patents in order to allow for separate appeals of

United States District Court
For the Northern District of California

those claims and the claims decided at trial, arguing that doing so would avoid certain possible undesirable future outcomes resulting from the Federal Circuit's decision in Fresenius USA, Inc. v. Baxter International, Inc., 721 F.3d 1330 (Fed. Cir. 2013).

The Court is not persuaded. This case has been adjudicated in full and can be appealed to the Federal Circuit in a single appeal. There is no good reason to divide the case in two and proceed with two separate appeals. Consequently, Plaintiffs' motion to sever Lakritz patent claims is DENIED.

B. Motion for JMOL on Marking Defense or New Trial on Damages (Docket No. 439)

At trial, MotionPoint argued that TransPerfect's damages claim should be limited because neither it nor the predecessor owner of its Scanlon patent had marked the products they produced embodying the patent, and that they were required to do so. As a result, MotionPoint argued, damages could be awarded only from October 13, 2011, the date TransPerfect added claims based on the Scanlon patent to this case.

The jury was instructed that if a patent holder does not sell a tangible product that is capable of being marked, then damages commence on the date that the infringer began infringing an issued patent. If the patent holder does sell a tangible product that is capable of being marked, then damages commence on the date that the alleged infringer has both infringed and been notified of the

**United States District Court**
For the Northern District of California

patent.  The jury was further instructed that the patent holder must prove by a preponderance of the evidence the date on which it gave notice and that the matter was for the jury to decide.

As noted above, the jury returned a verdict for TransPerfect of $1,002,006, indicating that it had used a four percent royalty rate in calculating that amount.  The verdict amount is four per cent of about twenty-five million dollars, which is not a number put forward by either side.  TransPerfect speculates that the jury reached this number by finding that TransPerfect's products, and those of its predecessor, had not been marked.  TransPerfect argues that such a finding was incorrect as a matter of law.

However, it is not at all clear how the jury reached the damage award.  The jury was instructed on lost profits damages and on a reasonable royalty.  It was told that if the patent-holder proved its claim for lost profits for only a portion of the infringing sales, then it should be awarded a reasonable royalty for all infringing sales for which it was not awarded lost profits damages.  The verdict form called for a total amount of damages, and then for any reasonable royalty rate it used to calculate these damages.  This does not necessarily mean that all of the damages were based on that royalty.  The jury could have awarded damages consisting in part of lost profits and in part of a four percent royalty on infringing sales for which it did not award lost profits.

Nonetheless, even if the jury did take MotionPoint's marking defense into account, the verdict need not be overturned. There was a dispute of fact as to whether TransPerfect's product could be viewed as a tangible one that could have been marked, on its web pages or on the resulting translations. There was sufficient evidence for the jury to decide the issue and, under proper instructions, it did so.

A motion for judgment as a matter of law after the verdict renews the moving party's prior Rule 50(a) motion for judgment as a matter of law at the close of all the evidence. Fed. R. Civ. P. 50(b). Judgment as a matter of law after the verdict may be granted only when the evidence and its inferences, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion as to the verdict. Josephs v. Pac. Bell, 443 F.3d 1050, 1062 (9th Cir. 2006). Where there is sufficient conflicting evidence, or where reasonable minds could differ over the verdict, judgment as a matter of law after the verdict is improper. See, e.g., Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 775 (9th Cir. 1990); Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 181 (9th Cir. 1989).

TransPerfect's disagreement with the submission of the marking defense to the jury, and the effect its possible finding of failure to mark may have had on its damage award, does not meet this test.

United States District Court
For the Northern District of California

Further, even if the Court were to find that the marking defense should not have been submitted to the jury, or that no reasonable jury could have found as it did, the Court could not simply increase the damage award as TransPerfect suggests.  A new trial on damages would have to be held.  A new trial should be granted only when the verdict is contrary to the clear weight of the evidence, Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007), or errors in the jury instructions as a whole misled the jury, see Experience Hendrix LLC v. Hendrixlicensing.com Ltd, 762 F.3d 829, 847 (9th Cir. 2014).

Again, the Court finds that the marking defense was properly submitted to the jury with correct instructions, and that the jury's damage award was supported by the evidence, whether it was based on a finding of failure to mark or not.  The Court DENIES TransPerfect's motion on this point and declines to order a new trial.

B.   Motion to Amend the Judgment to Award Supplemental Damages, Ongoing Royalties and Pre-Judgment Interest (Docket No. 489)

1.   Supplemental Damages

TransPerfect moves to amend the judgment to grant it supplemental damages under 35 U.S.C. § 284[1] on the theory that the jury failed to award it compensation for infringement that

_____

[1] This statute provides: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284.

occurred after December 31, 2011.  Specifically, TransPerfect contends that the jury's damage award of $1,006,002 failed to account for its post-2011 damages.  During discovery, MotionPoint failed to produce any financial records later than 2011.  As a result, TransPerfect argues, the parties' experts were unable to examine any post-2011 financial information and the jury could not have included these damages in its verdict.

TransPerfect apparently did not move to compel the financial information necessary to calculate the post-2011 damages; therefore, if the jury was not presented with all of the necessary evidence, the fault does not lie exclusively with MotionPoint.

TransPerfect's expert purported to reserve the right to seek post-2011 damages after trial, and TransPerfect argues that it "reserved the right in its complaint and again in its pretrial statement to seek an accounting of all damages."  Docket No. 522, TransPerfect Reply at 2.  TransPerfect's attempts to reserve these rights do not empower it to take the question of damages from the jury.  Damages are part of a trial by jury.  If TransPerfect wished to bifurcate a portion of its damages for a separate, later trial, it would have had to ask the Court to do so, or reached an agreement to that effect with MotionPoint.  Or TransPerfect could have sought to ask the jury to extrapolate post-2012 damages from the pre-2012 financial records and analysis.

In fact, it is not even clear that the jury did not award damages for the full period.  As noted above, the jury returned a verdict for TransPerfect of $1,002,006, indicating that it had used a four percent royalty rate in calculating that amount; the verdict amount is four per cent of about twenty-five million

dollars, a number not argued by either side.  The verdict form asked the jury, "[W]hat total damages do you find for TransPerfect, if any?"  Docket No. 415, Verdict at 3 (emphasis added).  The jury reached a damages verdict within the range propounded by the experts' testimony.  It may have extrapolated MotionPoint's infringing sales for the full period but found them to be less than TransPerfect's expert suggested.  The Court cannot award additional pre-verdict damages on its own at this point.

In similar circumstances, other courts have refused to award supplemental pre-verdict damages.  In Presidio Components Inc. v. American Technical Ceramics Corp., for instance, a court in the Southern District of California found,

> The jury is presumed to have compensated Presidio for all of its lost profits leading up to the trial.  During trial, Presidio could have -- but did not -- argue to the jury that its suggested amount of $1,048,000 should be proportionally increased for the two months not accounted in the sales data.  Under these circumstances, awarding additional amounts of damages incurred before trial would be an improper invasion of the jury's province to determine actual damages and an inappropriate use of 35 U.S.C. § 284 to enhance inadequate compensatory damages.

2010 WL 3070370, at *2 n.1 (S.D. Cal.) (quotation marks and citations omitted), aff'd in relevant part, vacated in part on other grounds 702 F.3d 1351 (Fed. Cir. 2012).

A judge in this district recently relied on Presidio Components in reaching the same conclusion.  Apple Inc. v. Samsung Elecs. Co., Ltd., 926 F. Supp. 2d 1100, 1104 (N.D. Cal. 2013).  The court in that case refused to grant supplemental pre-verdict damages because, "[w]hile it [was] true that the jury did not hear

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   evidence of sales between June 30 and August 24, it [was] also

2   possible that the jury considered this fact in arriving at its

3   ultimate award."  Id.; see also Oscar Mayer Foods Corp. v.

4   Conagra, Inc., 869 F. Supp. 656, 668 (W.D. Wis. 1994) ("The Court

5   finds no justification for awarding additional damages for that

6   period of time prior to trial for which plaintiff offered no

7   evidence of lost profits."), aff'd 45 F.3d 443 (Fed. Cir. 1994).

8          These district court decisions are consistent with Federal

9   Circuit precedent, which holds, "Damages cannot be enhanced to

10  award the patentee additional compensation to rectify what the

11  district court views as an inadequacy in the actual damages

12  awarded."  Beatrice Foods Co. v. New England Printing &

13  Lithographing Co., 923 F.2d 1576, 1579 (Fed. Cir. 1991).  The same

14  principles militate against awarding supplemental pre-verdict

15  damages here.  TransPerfect's request is denied.

16          2.   Post-Verdict Damages

17          However, TransPerfect is entitled to recover its damages for

18  infringement that occurred after the verdict was returned in July

19  2013.  Under recent Federal Circuit case law, the Court could

20  award damages for post-judgment infringement at a royalty rate

21  higher than the one used by the jury.  Amado v. Microsoft Corp.,

22  517 F.3d 1353, 1361 (Fed. Cir. 2008) ("There is a fundamental

23  difference, however, between a reasonable royalty rate for pre-

24  verdict infringement and damages for post-verdict infringement.").

25  TransPerfect's expert has opined that the reasonable post-judgment

26  royalty rate is higher than four percent.  Docket No. 294-3 (filed

27  under seal), Hoffman Declaration at ¶¶ 26-35.  MotionPoint's

28  expert disagrees.

United States District Court
For the Northern District of California

TransPerfect's expert relies largely on the fact that, after judgment, the patent has been determined to be valid and infringed.  However, the jury was instructed that a reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  It was to assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement, and that both parties believed the patent was valid and infringed.  The jury found that a reasonable royalty rate was four percent based on TransPerfect's expert's testimony. The Court is not persuaded by his post-judgment opinion that the rate should be different, and finds that TransPerfect is entitled to a post-verdict royalty calculated at four percent, from the date of the verdict until a permanent injunction goes into effect and the infringement ceases.

> 3.   Pre-Judgment Interest

In addition to compensatory damages, the prevailing party in a patent infringement suit is entitled to recover "interest and costs as fixed by the court."  35 U.S.C. § 284.  Courts are afforded discretion to decide the interest rate to be used. Studiengesellschaft Kohle, m.b.H. v. Dart Indus. Inc., 862 F.2d 1564, 1580 (Fed. Cir. 1988).  MotionPoint does not dispute that TransPerfect is entitled to both pre-judgment and post-judgment interest.  Post-judgment interest was awarded in the judgment and is calculated under 28 U.S.C. § 1961.  MotionPoint disputes TransPerfect's claim that pre-judgment interest should be

**United States District Court**
For the Northern District of California

calculated at the prime interest rate and compounded quarterly. MotionPoint contends that pre-judgment interest should instead be calculated in the same manner as post-judgment interest, based on the (lower) United States Treasury Bill rate, and compounded annually.

Courts are divided on which of these methods is most appropriate for calculating pre-judgment interest in patent infringement suits. Accordingly, because TransPerfect has not presented any compelling reasons to deviate from the method used to calculate post-judgment interest, the parties shall calculate pre-judgment interest based on the Treasury Bill rate and annual compounding.

C. Motions for Entry of Judgment and a Permanent Injunction, and to Amend the Permanent Injunction (Docket Nos. 440 and 489)

In its first set of post-trial briefs, TransPerfect moved for entry of judgment and for a permanent injunction barring MotionPoint from continuing to infringe or supporting infringement of TransPerfect's Scanlon patent. MotionPoint opposed the motion for an injunction on the grounds that it was unwarranted, and that TransPerfect's proposed injunction, which MotionPoint alleges would prevent it from using its entire TransMotion system, was overbroad.

The Court entered judgment and a generically-worded injunction on November 15, 2013, Docket Nos. 467, 468. The Court stayed enforcement of the injunction pending resolution of the parties' post-trial motions, which were to include briefing on the language of any permanent injunction. Thus, TransPerfect's pre-

judgment motion for judgment and an injunction, Docket No. 440, has been granted.

Three days after the Court entered and stayed its injunction, the Federal Circuit issued its decision in Apple Inc. v. Samsung Elecs. Co., Ltd., 735 F.3d 1352 (Fed Cir. 2013) (Apple III), making clear that the requirement of a causal nexus between the infringing products and the profits of the infringer applies in the permanent injunction context, as well as on a motion for a preliminary injunction. Id. at 1363-64 ("Accordingly, we reject Apple's arguments and confirm that the district court was correct to require a showing of some causal nexus between Samsung's infringing conduct and Apple's alleged harm."). Quoting an earlier decision in the same case, the Apple III court explained the purpose of the causal nexus requirement:

> Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature. If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product. Thus, a likelihood of irreparable harm cannot be shown if sales would be lost regardless of the infringing conduct.

Id. at 1360 (quoting Apple, Inc. v. Samsung Elecs. Co., Ltd., 678 F.3d 1314, 1324 (Fed. Cir. 2012) (Apple I)).

Thus, the court held, while the patentee need not "show that a patented feature is the exclusive reason for consumer demand," it must nevertheless show "some connection between the patented feature and demand for [the accused] products." Id. at 1364 (emphasis in original) (rejecting the district court's finding

that the patentee must "show that one of the patented features is
the sole reason consumers purchased [the accused product]").

The Federal Circuit offered three examples of evidence that a
patentee might present to establish this connection.  It
mentioned, for instance, "evidence that a patented feature is one
of several features that cause consumers to make their purchasing
decisions," "evidence that the inclusion of a patented feature
makes a product significantly more desirable," and "evidence that
the absence of a patented feature would make a product
significantly less desirable."  Id.

In its post-judgment briefing, TransPerfect moved to amend
the injunction, Docket No. 489, and MotionPoint responded that the
injunction should not have entered, and that it was overbroad.
MotionPoint argues that TransPerfect has failed to establish the
requisite "causal nexus" between the infringing components of
MotionPoint's TransMotion system and the profits MotionPoint
derives from that product.

TransPerfect identifies evidence in the trial record
establishing that such a nexus exists.  TransPerfect highlights
evidence presented at trial to establish a connection between the
infringing components of MotionPoint's TransMotion system and
consumer demand for that product.  In particular, it points to the
testimony of MotionPoint's Director of Software Development,
Eugenio Alvarez, who testified that the "implicit navigation" and
"single-action translation" features of the TransMotion system --
the allegedly infringing components -- were integral parts of the
system.  Trial Tr. 387:13-22; 514:22-23 (noting that the
TransMotion system would be "impossible to use if you didn't have

United States District Court
For the Northern District of California

implicit navigation").  In the context of head-to-head competitors in a crowded field, the Court finds the evidence at trial adequate to establish a causal nexus between the infringing features and the profit to MotionPoint and concomitant harm to TransPerfect.

The traditional requirements for a permanent injunction are also met.  The four factors that the Supreme Court requires a plaintiff to show to justify an injunction in the patent infringement context are

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

Here, TransPerfect and MotionPoint are in direct competition with each other.  Neither TransPerfect nor its predecessor in interest had chosen to license the patent.  The royalty rate that a willing licensor would charge would not be adequate in this situation, and the correct rate would be difficult to calculate and enforce.  TransPerfect has shown irreparable harm from the uncompensated infringement and, while MotionPoint will be harmed by being barred from continuing to use the invention free of charge, the balance of hardships clearly tips in TransPerfect's favor.  The injunction has been stayed for a lengthy period, which should have allowed MotionPoint to design around the patent.  There is no reason to believe that the public would be disserved by an injunction.  Thus, the Court finds that a permanent injunction is appropriate.

United States District Court
For the Northern District of California

TransPerfect moves to amend the injunction by expanding it to (1) bind those in "acting in concert" with MotionPoint; (2) enjoin MotionPoint against indirect infringement, and (3) require MotionPoint to provide notice of the injunction to its customers. MotionPoint opposes an injunction that would affect its existing customers, arguing that only future infringing sales and uses should be enjoined.  The Court has no wish unnecessarily to paint MotionPoint as an infringer in the market, or to worry its customers.  However, MotionPoint's business model involves continuing, remunerative relationships with its customers.  It may not continue to profit from these relationships while still infringing.  MotionPoint has had ample time to design around the Scanlon patent and to provide the new technology to its customers. If it has not already done so, it must desist infringement within fourteen days of the entry of the injunction.

The Court will enjoin those acting in concert with MotionPoint, and will enjoin MotionPoint against indirect infringement.  However, MotionPoint will not at this time be required to notify its customers of its infringement.  If MotionPoint is later found in contempt, the Court will order notice to its customers.

E.   Motion for JMOL that MotionPoint Indirectly Infringes (Docket No. 489)

At trial, TransPerfect prevailed on all of its claims for direct infringement but not on those for indirect infringement. In particular, the jury found for MotionPoint on TransPerfect's claims for inducement of infringement and contributory

United States District Court
For the Northern District of California

infringement.  TransPerfect now moves for JMOL in its favor on these two claims.

The jury was correctly instructed that it could find contributory infringement if MotionPoint supplied an important component of the infringing part of the product or method, not suitable for non-infringing use, with the knowledge that the component was especially made or adapted for use in an infringing manner.  Inducing infringement, the jury was told, similarly requires that MotionPoint knew that it was causing infringing acts.  MotionPoint's state of mind--whether it believed it infringed TransPerfect's patent--was a hotly disputed question of fact that was clearly one for the jury.  The jury heard the evidence and the instructions and reached its verdict.  The Court cannot say that the evidence permitted only the conclusion that MotionPoint knew that it was infringing, or that the jury was unreasonable in finding otherwise.

F.   Motion for Attorneys' Fees (Docket No. 489)

In a patent infringement action, a court may award the prevailing party's attorneys' fees "in exceptional cases."  35 U.S.C. § 285.  The Supreme Court, in construing this section, has held that

> an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.  District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

17

Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S.Ct. 1749, 1756 (2014).[2]

TransPerfect contends that it is entitled to attorneys' fees because MotionPoint engaged in litigation misconduct, asserted objectively baseless counterclaims, and brought those counterclaims in bad faith.  However, the Court is not persuaded that MotionPoint asserted objectively baseless claims against TransPerfect.  TransPerfect initiated this action and, although MotionPoint asserted counterclaims in response, those counterclaims were not objectively baseless.

In alleging litigation misconduct, TransPerfect contends that MotionPoint engaged in abusive discovery tactics, violated this Court's order on motions in limine, violated the parties' confidentiality agreement by disclosing settlement-related communications to the Court, opposed TransPerfect's disqualification motion in bad faith, made false statements and elicited false testimony at trial, and raised frivolous arguments throughout the litigation.  Most of the behavior that TransPerfect has identified falls short of conduct justifying an award of attorneys' fees.

---

[2] In so deciding, the Court observed that, construing similar language in the Copyright Act, it had provided a non-exclusive list of factors that district courts could consider, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  Octane Fitness, 134 S.Ct. at 1756 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)).

United States District Court
For the Northern District of California

MotionPoint's alleged discovery abuses, for instance, do not appear to have been committed in bad faith, and its alleged mis-statements of fact and disclosures of confidential information were relatively minor.  Likewise, MotionPoint's opposition to TransPerfect's disqualification motion was not entirely without merit, and its alleged failure to comply with the Court's order on motions in limine appears to have been inadvertent.  MotionPoint has asserted some frivolous arguments and filed some frivolous motions during this litigation.[3]  Nonetheless, the Court exercises its discretion to DENY the motion for attorneys' fees.

II.  MotionPoint's Motion for JMOL (Docket No. 486)

MotionPoint moves for JMOL on all of the claims that it lost at trial, including TransPerfect's claims of direct infringement and invalidity, as well as its own counterclaims for infringement and invalidity against TransPerfect.  The Court is not persuaded that the jury's verdict should be set aside.

A.   Claims 26 and 27

MotionPoint first argues that claims 26 and 27 of TransPerfect's Scanlon patent are invalid and that this requires that the jury's damages award must be vacated.  MotionPoint argues that these means-plus-function claims are indefinite because the required structure is not adequately disclosed.  MotionPoint would "need[] to prove, by clear and convincing evidence, that the specification lacks adequate disclosure of structure to be

---

[3] See, e.g., Docket No. 502, Motion to Strike (moving to strike TransPerfect's motion for attorneys' fees as untimely even though the Court had specifically extended TransPerfect's deadline to file this motion); Docket No. 504, Motion to Shorten Time (moving to shorten time on frivolous motion to strike).

19

**United States District Court**
For the Northern District of California

1 understood by one skilled in the art as able to perform the

2 recited functions." Intel Corp. v. VIA Techs., Inc., 319 F.3d

3 1357, 1366 (Fed. Cir. 2003).  This theory was belatedly disclosed

4 and TransPerfect argues that MotionPoint's motion should be denied

5 for this reason alone.

6      Be that as it may, the Court finds that MotionPoint has not

7 met its burden to show that the claims are indefinite, and that

8 TransPerfect points to sufficient structure to support these

9 claims.[4]  Furthermore, even if these claims were indefinite, the

10 jury found infringement of four additional claims and there would

11 be no reason to set aside the damages verdict or the injunction on

12 this ground.

13      B.   Claims 11, 17, 23, and 24

14      MotionPoint next argues that it does not directly infringe

15 the asserted claims of the Scanlon patent.

16      First, it raises a claim construction argument: that the

17 patentee disavowed all "single action translation components" that

18 do not remain visible before, during and after an electronic

19 communication is translated.  TransPerfect responds that this

20 argument too is untimely.  Nonetheless, the Court is not persuaded

21 by MotionPoint's argument.  No such disavowal was made, and

22 substantial evidence supported the jury's implicit finding that

23

24

25      [4] The recent United States Supreme Court case on
indefiniteness does not affect this analysis.  See Nautilus, Inc.
26 v. Biosig Instruments, Inc., 134 S.Ct. 2120 (2014).  Its new
teaching on non-patentable subject matter might be on point but
27 that issue was not raised in this case.  See Alice Corp. Pty. Ltd.
v. CLS Bank Int'l et al., 134 S.Ct. 2347 (2014).

28

United States District Court
For the Northern District of California

1   MotionPoint's single action translation component infringed the

2   Scanlon patent.

3       Second, MotionPoint disputes the jury's verdict of direct

4   infringement, other than by its own website.  TransPerfect points

5   to adequate evidence to support the jury's verdict.  MotionPoint

6   provides translated webpages that contain single action

7   translation components to be displayed to users.  This satisfies

8   the "displaying" limitation of the claims.  MotionPoint also

9   performed the "clicking" step by testing and demonstrating the

10  single action translation component for customers.  Further,

11  MotionPoint uses the system claims to make, use and sell its

12  TransMotion product.  TransPerfect provides numerous record cites

13  to this evidence.  In particular, MotionPoint contractually binds

14  its customers to place hyperlinks of the single action translation

15  component on their web sites.  Trial Tr. 745:15-746:14.

16  MotionPoint also controls the implicit navigation component of the

17  system, in that its servers "automatically redirect all links in a

18  page to the [TransMotion] servers as the page is being translated.

19  This has the effect of automatically translating any link page

20  when a user clicks on its link on the translated page."  Trial Tr.

21  387:19.  Substantial evidence demonstrated that MotionPoint

22  "obtains benefits" in the form of revenues from the system.

23      MotionPoint need not exercise physical or direct control over

24  each individual element of the system in order to bear vicarious

25  liability for direct infringement.  Instead, TransPerfect's

26  evidence supported that MotionPoint used the system by putting the

27  invention into service, controlling the system as a whole and

28

obtaining benefit from it.  Cf. Centillion Data Sys., LLC v. Qwest Comm'n Int'l, Inc., 631 F.3d 1279 (Fed. Cir. 2011).

C.   Sufficiency of Evidence of Damages

MotionPoint argues that the damages awarded against it are excessive.  Its trial expert proposed a lump sum royalty based upon the sale price of the patent at issue.  TransPerfect's expert proposed a four percent running royalty and supported it with his analysis.  MotionPoint now essentially raises an untimely Daubert-type challenge to TransPerfect's expert's methodology.  See Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993).

Even had it been timely, MotionPoint's challenge is unavailing.  Having heard his full testimony and cross-examination, as well as that of MotionPoint's opposing expert, the Court finds that TransPerfect's expert's testimony was sufficiently reliable and relevant to present to the jury.  His testimony also provided substantial evidence from which the jury could have made its damages award, an amount between those advocated by the two experts.  It was within the jury's province to do so.

D.   MotionPoint's Infringement Claims

In addition, MotionPoint argues that it is entitled to JMOL that, in spite of the jury's findings of anticipation, obviousness and statutory bar, its patents are valid.  The Court will not summarize and analyze all of the evidence and arguments presented on these points.  Suffice it to say that MotionPoint has failed to show that no reasonable jury could have found against it on any of these invalidity claims, much less all of them.  MotionPoint also contends that TransPerfect infringes its patents as a matter of

United States District Court
For the Northern District of California

law.  Given that the patents have been found invalid on multiple
grounds, TransPerfect's claimed infringement would appear to be a
moot point.  Nonetheless, the Court finds sufficient evidence to
support the jury's verdict.

　　　E.   Validity of Scanlon Patent

MotionPoint argues that TransPerfect's Scanlon patent is
invalid as a matter of law because it is obvious in the light of
the Flanagan patent.  MotionPoint needed to prove by clear and
convincing evidence that the Flanagan patent disclosed all of the
limitations of the asserted claims of the Scanlon patent.  Its
expert did not testify to a single action translation component in
Flanagan.  Trial Tr. 1015:22-1016:3.  TransPerfect's expert
testified that the Flanagan patent did not disclose this feature,
or the "implicit navigation" feature.  Trial Tr. 1194:1-1197:19.
There was evidence that the language upon which MotionPoint relied
to argue that it did was added after the priority date for the
Scanlon patent.  The jury properly considered the issue and its
verdict was reasonable.

CONCLUSION

For the reasons set forth above, the Court DENIES
TransPerfect's post-trial motion to sever the Lakritz patent
claims from the remainder of the case.  (Docket No. 445).  The
Court has GRANTED TransPerfect's post-trial motion for entry of
judgment and a permanent injunction (Docket No. 440) and has
entered judgment and a permanent injunction, albeit staying the
injunction.  TransPerfect's post-trial JMOL motion regarding
marking and its alternative request for a new trial on damages
(Docket No. 439) is DENIED.  TransPerfect's post-judgment motions

United States District Court
For the Northern District of California

are GRANTED IN PART with regard to amending the injunction, and post-verdict royalties and pre-judgment interest, although not at the requested rate.  (Docket No. 489).  The Court will enter an amended injunction and the amended injunction will take effect fourteen days from the date it is entered.  TransPerfect's motions are otherwise DENIED.

MotionPoint's Motions for JMOL (Docket Nos. 444 and 486) are DENIED.

Within fourteen days of the date of this order, the parties shall submit joint or separate calculations of the amount of post-verdict royalties due, in accordance with the findings in this order.

IT IS SO ORDERED.


Dated:  November 13, 2014

CLAUDIA WILKEN
United States District Judge